E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TRISHA McFADDEN and RELAX INVESTMENTS, L.L.C., <br><br>     Plaintiffs, <br><br> vs. <br><br> MASSAGE HEIGHTS FRANCHISING, L.L.C., <br><br>     Defendants. | CASE NO. CL <br><br><br> **PETITION TO ENFORCE ARBITRATION CLAUSE OR IN THE ALTERNATIVE PETITION FOR DECLARATORY JUDGMENT** |

**COME NOW** the Plaintiffs, Trisha McFadden and Relax Investments, L.L.C., and for their Petition to Enforce Arbitration Clause or in the Alternative Petition for Declaratory Judgment, state:

## INTRODUCTION

1.       This is an action by the Plaintiffs Trisha McFadden and Relax Investments L.L.C., against Massage Heights Franchising, the Defendant, alleging that the parties entered into an agreement which requires disputes between them to be arbitrated pursuant to Texas law and tried to an arbitrator in Bexar County, Texas.  Defendant initiated an arbitration with the American Arbitration Association on July 18, 2018, demanding that it take place in Texas and be tried pursuant to Texas law.  Plaintiffs believe the arbitration agreement is governed by Iowa law, and as such, the Plaintiffs ask the court to enter an order staying the current arbitration in Texas and order that the arbitration should occur if at all in the state of Iowa and be governed by Iowa law.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## JURISDICTION and VENUE

2.      Trisha McFadden is a resident of Warren County, Iowa and she is the sole member of Relax Investments L.L.C., which is a limited liability corporation organized pursuant to the laws of the State of Iowa and with its principal place of business in Des Moines, Polk County, Iowa.

3.      Defendant Massage Heights Franchising, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas.

4.      This Court has jurisdiction over this subject matter and these parties and the value exceeds the small claims jurisdictional amount.

## FACTS

5.      The parties entered into a Regional Developer Agreement ("RDA" or "the Agreement") on or about July 9, 2007. A true and correct copy of the RDA is attached as Exhibit A (including all relevant amendments).

6.      The parties have been in a continuous business relationship with one another since 2007.

7.      The RDA and several amendments to the RDA governs the parties' relationship.

8.      As a Regional Developer, McFadden recruits new franchise owners to her area (Iowa/Nebraska) and then supports the franchisees she has recruited.

9.      In addition to being a Regional Developer, McFadden has also operated her own Massage Heights franchises in the region and currently owns and operates one location in Des Moines.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

10.     Pursuant to the RDA, McFadden was to place a certain number of locations in her region by a specific date.

11.     While the number of specific locations McFadden was to develop changed pursuant to amendments to the RDA, her responsibilities to support the franchises in her area did not substantially change over the term of the relationship.

12.     The last amendment to the RDA occurred on May 1, 2015 requiring Plaintiffs to have 12 units (locations) in place by May 1, 2017.

13.     The RDA requires Defendant to give notice to Plaintiffs six months prior to the expiration of the term of any deficiencies in performance.

14.     Defendant sent notice of default pursuant to the RDA alleging that Plaintiffs did not meet the requirement that they have 12 locations open by May 1, 2017, and initiated a "correction period" for Plaintiffs to come into compliance.

15.     At all times during this RDA, McFadden has worked hard not only to meet the development schedule but also support the other franchise owners in her region.

16.     McFadden has not only worked hard to meet the goals set out in the RDA, and support other owners, she has been a loyal supporter of the brand and of the people who started the concept and operate the company from San Antonio, Texas.

17.     McFadden is one of the most successful, if not the most successful Regional Developer in the company's history.

18.     It should be noted that although Plaintiffs have not yet fully complied with the number (12) of units pursuant to the development schedule, the RDA requires only "substantial compliance" with the terms of the Agreement. Plaintiffs were and currently are in substantial compliance with the RDA.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

19.     It should also be noted that while McFadden has operated her franchise and as Regional Developer always in good faith, Defendant has not always returned the benefit of acting in good faith by unreasonably withholding consent for the development of at least one location that would have put Plaintiffs at number 12 on schedule.

20.     In September 2017 Defendant extended the development schedule with Plaintiffs to December 31, 2017.

21.     After multiple exchanges of offers and counter-offers to extend the development schedule, the parties were unable to reach an agreement and ultimately, Defendant demanded arbitration on July 18, 2018 through the American Arbitration Association.

22.     While the Agreement has venue and choice of law clauses stating that Texas is to be the governing law of the matter and the locale of the arbitration, Plaintiff believes that Iowa law governs the parties' rights in this RDA because it involves an Iowa franchise and Iowa franchise agreement.

## COUNT I

## PETITION TO ENFORCE ARBITRATION AGREEMENT OR FOR DECLARATORY JUDGMENT

23.     Plaintiffs reallege paragraphs 1 through 22 of this Petition as though fully alleged herein.

24.     The parties entered into a Regional Developer Agreement in 2007.

25.     Plaintiffs, citizens or domiciles of the State of Iowa were the "Franchise Owner" or "Regional Developer" in the Agreement.

26.     The Agreement was entered into in the State of Iowa.

27.     The Agreement was to be performed mostly in Iowa by Iowa residents and citizens that would be developing franchises pursuant to Iowa law.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

28.    Iowa Code §537A.10 governs franchise agreements such as the one which is the subject of this case.

29.    More specifically, Iowa Code §537A.10(3)(a) states: "A provision in a franchise agreement restricting jurisdiction to a forum outside this state is void with respect to a claim otherwise enforceable under this section."

30.    Iowa Code §537A.10(7)(a) states:

"Except as otherwise provided by this section, a franchisor shall not terminate a franchise prior to the expiration of its term except for good cause. For purposes of this subsection, "good cause" is cause based upon a legitimate business reason. "Good cause" includes the failure of the franchisee to comply with any material lawful requirement of the franchise agreement, provided that the termination by the franchisor is not arbitrary or capricious. The burden of proof of showing that the action of the franchisor is arbitrary or capricious shall rest with the franchisee.

31.    Iowa Code §537A.10(8)(a) states:

"A franchisor shall not refuse to renew a franchise unless both of the following apply:(1) The franchisee has been notified of the franchisor's intent not to renew at least six months prior to the expiration date or any extension of the franchise agreement.

(2) Any of the following circumstances exist:

(a) Good cause exists, provided that the refusal of the franchisor to renew is not arbitrary or capricious. For purposes of this subsection, "good cause" means cause based on a legitimate business reason.

(b) The franchisor and franchisee agree not to renew the franchise.

(c) The franchisor completely withdraws from directly or indirectly distributing its products or services in the geographic market served by the franchisee, provided that upon expiration of the franchise, the franchisor agrees not to seek to enforce any covenant of the nonrenewed franchisee not to compete with the franchisor or franchisees of the franchisor."

32.    Iowa Code §537A.10(11)(a) states:

"A franchise imposes on the parties a duty of good faith in performance and enforcement of the franchise agreement.  "Good faith" means honesty

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

in fact and the observance of reasonable commercial standards of fair dealing in the trade."

33.     Iowa Code §537A.10(14) states:

Choice of law. A condition, stipulation, or provision requiring the application of the law of another state in lieu of this section is void.

34.     Plaintiffs do not contest the arbitration clause in the RDA but do contest locale and choice of law.

35.     Plaintiff requests the Court order the parties to arbitration in Iowa and order a stay of the arbitration in Texas.

36.     Alternatively, Plaintiffs request a declaratory judgment recognizing Iowa code §537.10A as the law governing the case and arbitration and therefor ordering the arbitration moved to Iowa and that the arbitrator apply Iowa law to the dispute.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an order that arbitration of this dispute occur in Iowa, that the Texas arbitration is stayed judgment, and that the chosen arbitrator apply Iowa law. Alternatively, Plaintiffs request a declaratory judgment that the contract at issue and any amendments to that contract are, pursuant to Iowa Code §537A.10, governed by Iowa law and that any arbitration of the parties and regarding the RDA must occur in Iowa and the arbitrator must apply Iowa law and such other and further relief as the Court deems equitable.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Respectfully submitted,


/s/ Michael J. Carroll
Michael J. Carroll, AT0001311
Coppola, McConville, Carroll,
Hockenberg & Flynn, P.C.
2100 Westown Parkway, Suite 210
West Des Moines, Iowa  50265
Telephone:  (515) 453-1055
Facsimile:  (515) 453-1059
E-mail:     michael@wdmlawyers.com


ATTORNEYS FOR PLAINTIFFS

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### MASSAGE HEIGHTS® CORPORATE, LLC

### REGIONAL DEVELOPER AGREEMENT

This Regional Developer Agreement ("Agreement") is being entered as of *July 9th* 20_07_(the "Agreement Date").   The parties to this Agreement are us, Massage Heights® Corporate, LLC, a Texas limited liability company ("we," "us," or "Massage Heights®"); you, **Relax Investments, LLC**as Franchise Owner ("you," "Franchise Owner," or "Regional Developer"), and if you are a partnership, corporation, or limited liability company, your "Principal Owners" (defined below).

### 1.   INTRODUCTION.

This Agreement has been written in an informal style in order to make it more easily readable, and to be sure that you become thoroughly familiar with all of the important rights and obligations the Agreement covers before you sign it.  This Agreement includes several exhibits, which are legally binding and an integral part of the complete Agreement.  If you are a corporation, partnership, or limited liability company, then you will notice certain provisions of that are applicable to your principal shareholders, partners, or members (as the case may be) upon whose business skill, financial capability and personal character we are relying in entering into this Agreement.  Those individuals will be referred to in this Agreement as "Principal Owners."

Through the expenditure of considerable time, effort, and money, we and our affiliates have devised a system for the establishment and operation of Massage Heights®'s business model that that offers a membership-based professional therapeutic massage business and other related services and products (all of which we refer to in this Agreement as the "System").  This business model includes a single retail business offering all of our franchised services and products (individually, a "Clinic" and collectively, the "Clinics").  We identify the System by the use of certain trademarks, service marks, and other commercial symbols, including the mark "Massage Heights®" and certain associated designs, artwork and logos, which we may change or add to from time to time (the "Marks").

From time to time, we may grant to persons who meet our qualifications ("Franchisees") franchises to own and operate a Clinic in accordance with the System in a specified geographic territory (individually, a "Clinic," and collectively, the "Clinics").

03-MH- Regional Developer Agreement                                          Massage Heights® Corporate, LLC



EXHIBIT

**A**

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

To further expand and develop the establishment of the Franchises, we also sell to certain persons who meet our standards and qualifications and are willing to undertake special efforts (individually, a "Regional Developer," and collectively, the "Regional Developers") the right, within a defined geographic area (the "Regional Territory"), to (i) recruit, solicit, screen, and recommend prospective franchisees to own and operate Massage Heights® Franchises located in the Regional Territory (the "Prospective Franchisees") (collectively, these responsibilities are referred to hereinafter as "Sales Services"); (ii) fulfill our ongoing duties to provide certain training and assistance (the "Support Services") to Franchises located in the Regional Territory; and (iii) establish and operate one (1) "Pilot Clinic" that operates as both a regular Clinic and training facility (collectively, the elements of this right comprise the "Regional Developer Franchise," or "Regional Developer Clinic").

This Agreement is being presented to you because of the desire you have expressed to obtain the right to develop, own and be franchised to operate a Regional Developer Franchise. In signing this Agreement, you acknowledge that you have conducted an independent investigation of the Regional Developer Business, and recognize that: like any other business, the nature of it may evolve and change over time; an investment in a Massage Heights® Regional Developer Franchise involves business risks, and the success of this business venture is primarily dependent on your business abilities and efforts.

We expressly disclaim making, and you acknowledge that you have not received or relied upon, any guarantee, express or implied, as to the revenues, profits, or likelihood of success of the Regional Developer Franchise venture contemplated by this Agreement. You acknowledge that there have been no representations by us or our officers, directors, members, employees, or agents, that are inconsistent with the statements made in our current Uniform Franchise Offering Circular ("UFOC") concerning the Regional Developer Business, or the provisions of this Agreement. You further represent to us, as an inducement to our entering into this Agreement with you, that you have made no misrepresentations to us in your application for the rights granted by this Agreement, or in the financial information provided by you and your Principal Owners.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

2.    **GRANT OF FRANCHISE.**

2.1    **Grant of Franchise.** For the Term set forth in Paragraph 2.4 below, and subject to your full compliance with the terms and conditions of this Agreement, we hereby grant to you, and you hereby accept, a Regional Developer Franchise for the Regional Territory described in Paragraph 2.3 of this Agreement.  In doing so, (a) we grant to you the aforementioned right to establish and operate a Pilot Clinic, perform Sales Services to solicit and recruit Prospective Franchisees on our behalf, and render the Support Services described in this Agreement, to Massage Heights® Franchisees whose Franchises are located in your Regional Territory; and (b) you agree to devote your full time and attention, and to utilize your best efforts, to enhancing the sale and operation of the Franchises located in your Regional Territory, and fulfilling your other obligations under this Agreement.

2.2    **License.** As part of our foregoing grant of a Regional Developer Franchise to you, we also grant to you the non-exclusive right and license to use the Marks and receive the other benefits of the System, subject to the terms of this Agreement, in connection with your fulfillment of your duties under this Agreement.

2.3    **Regional Territory**.  You acknowledge that the Regional Developer Franchise granted by this Agreement gives you the right to operate a Regional Developer Franchise only in the geographic area of the Regional Territory described in Exhibit 1.  You and we will mutually designate your Regional Territory upon or after the signing of this Agreement.  Our foregoing grant of a Regional Developer Franchise shall be exclusive in your Regional Territory for the Term of this Agreement for so long as (i) you are in full compliance with the terms of this Agreement (and any other Massage Heights® Franchise Agreement and/or any other agreement between you and us and/or any affiliate of ours); and (ii) this Agreement has not been terminated pursuant to Section 15 or any other provision of this Agreement.  The term "exclusive" means that during the Term, neither we nor any affiliates we may have will open or operate a Massage Heights® Regional Developer Franchise, or grant any such Franchise to another Regional Developer, in any part of your Regional Territory.  Except as otherwise provided in this Paragraph 2.3, we retain all rights with respect to Massage Heights® Clinics and Regional Developer Franchises, the Marks, and the System, including (by way of example only and not as a limitation) the right to operate, or grant to others the right to operate, Massage Heights®

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Clinics and Regional Developer Franchises located outside your Regional Territory on such terms and conditions we deem appropriate; to sell and license the sale of products and services under the Marks, within and outside of the Regional Territory, through electronic communications or the use of the Internet; and to operate other outlets or franchise or enter into other lines of business offering similar or dissimilar products or services under trademarks or service marks other than the Marks, both within or outside of the Regional Territory.

    2.4    **Term; Renewal of Franchise.**

    (a)    **Initial Term**.  Unless terminated earlier pursuant to Section 15 or any other provision of this Agreement, the initial term of this Agreement shall commence on the Agreement Date, and shall extend for a period of ten (10) consecutive years (the "Term"), subject to the renewal rights set forth below in subparagraph (b).

    (b)    **Franchise Owner's Right to Renew**.  Subject to the provisions of subparagraph (c) below, and if you have substantially complied with all provisions of this Agreement and all other agreements between us, upon the expiration of the initial Term of this Agreement, you will have the right to renew your Franchise for one (1) additional Term of ten (10) years, provided you must modify your Pilot Clinic and any Regional Office (as defined herein) that we require you to open, in compliance with specifications and standards then applicable for new or renewed Massage Heights® Clinics and Regional Developer Franchises, respectively.

    (c)    **Notice of Deficiencies and Other Requirements**.  At least six (6) months before the expiration of the initial Term of your Regional Developer Franchise, we agree to give you written notice of any deficiencies in your operation or the historical performance of the Regional Developer Franchise that could cause us not to renew the Regional Developer Franchise.  If we will permit you to renew your Regional Developer Franchise, then our notice will state what actions, if any, you must take to correct the deficiencies in your operation of your Regional Developer Franchise (including the operation of your Pilot Clinic), and will specify the time period in which those deficiencies must be corrected or other requirements satisfied.  Renewal of your Regional Developer Franchise will be conditioned on your continued compliance with all the terms and conditions of this Agreement up to the date of expiration of the expiring Term.  If we send you a notice of non-renewal, the notice will state the reasons for our refusal to renew.

Ex. 4, Pls.' State Petition and Exhibits

(d)    **Renewal Agreement; Releases.**  To renew your Regional Developer Franchise, we, you, and your Principal Owners must execute the form of Regional Developer Agreement, Massage Heights® Franchise Agreement (for renewal of your Pilot Clinic), and any ancillary agreements we are then customarily using in the grant or renewal of franchises for the operation of Massage Heights® Regional Developer Franchises (with appropriate modifications to reflect the fact that the agreement relates to the grant of a renewal franchise), except that no Development Fee (as defined herein) or initial franchise fee for your Pilot Clinic will be payable upon renewal.  However, you must pay to us a renewal fee in an amount of $3,000 for each Franchise operating in your Regional Territory as of the date of expiration of the expiring Term. You and your Principal Owners and your and their spouses must also execute general releases, in a form satisfactory to us, of any and all claims against us and our affiliates, and our and their respective officers, directors, employees, and agents.

2.5    **Owners' Guaranty.**   In exchange for our foregoing grant of a Regional Developer Franchise to you, each person holding an ownership interest in you (including both Principal Owners and minority owners, as defined herein) and his or her spouse must sign an Owner's Guaranty and Assumption of Obligations ("Guaranty") in the form attached as Exhibit 2 to this Agreement, and must deliver the signed Guaranty to us concurrently with your signing of this Agreement, or if the ownership interest is acquired after the Agreement Date, within ten (10) days after obtaining the interest as an owner.

3.    **DEVELOPMENT AND OPENING OF THE FRANCHISE.**

3.1    **Pilot Clinic.**  During any Term of this Agreement, you must at all times own and operate a Pilot Clinic located in your Regional Territory.  Accordingly, upon signing this Agreement, you must also execute a "Massage Heights® Franchise Agreement" in the form attached to the UFOC currently used by us to offer and sell Clinic Franchises, and shall thereafter establish and operate your Pilot Clinic in accordance with the Franchise Agreement. The Pilot Clinic shall function as a Massage Heights® Clinic offering such services and products as may be required in accordance with your Franchise Agreement, and as a training facility where you will provide training-related and other Support Services as required under this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

3.2     **Development of the Regional Developer Franchise**.   You agree to do the following at your own expense within a reasonable time after you have signed this Agreement, but in no event more than one-hundred eighty (180) days after the Agreement Date: (i) acquire from us or our approved supplier, for our or their then-applicable fee, a demographic analysis of your Regional Territory; (ii) secure all financing required to fully develop your Regional Developer Franchise, including your Pilot Clinic; (iii) obtain all required building, utility, sign, health, sanitation and business permits and licenses and any other required permits and licenses required for the operation of the Regional Developer Franchise and Pilot Clinic; (iv) construct your Pilot Clinic according to the construction plans and specifications we have approved; (v) purchase and install at your Pilot Clinic all required equipment, furniture, furnishings and signs; (vi) cause the training requirements set forth in Section 4 to be completed; (vii) purchase an opening inventory of products and other supplies and materials required for the operation of your Regional Developer Franchise and Pilot Clinic, including all marketing materials for your grand opening advertising campaign; (viii) provide proof, in a form satisfactory to us, that you are legally authorized, and have all licenses necessary to operate your Regional Developer Franchise as provided under this Agreement, and that your organizational structure is consistent with all legal requirements; (ix) do any other acts necessary to open your Regional Developer Franchise and Pilot Clinic for business; (x) obtain our approval to open your Regional Developer Franchise and Pilot Clinic for business; and (xi) open the Regional Developer Franchise and Pilot Clinic for business.

3.3     **Computer System.**  You agree to use in the development and operation of your Regional Developer Franchise, including in particular your Pilot Clinic, any computer terminals and operating software ("Computer System") that we specify from time to time.   You acknowledge that we may modify such specifications and the components of the Computer System from time to time.  As part of the Computer System, we may require you to obtain specified computer hardware and/or software, including without limitation a license to use proprietary software developed by us or others.  Our modification of such specifications for the components of the Computer System may require you to incur costs to purchase, lease, and/or license new or modified computer hardware and/or software, and to obtain service and support for the Computer System during the Term of this Agreement.  You acknowledge that we cannot estimate the future costs of the Computer System (or additions or modifications thereto) and that

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

the cost to you of obtaining the Computer System (including software licenses) and/or additions or modifications thereto may not be fully amortizable over the remaining Term of this Agreement.   Nonetheless, you agree to incur such costs in connection with obtaining the computer hardware and software comprising the Computer System (or additions or modifications thereto).   Within sixty (60) days after you receive notice from us, you agree to obtain the components of the Computer System that we designate and require.   You further acknowledge and agree that we and our affiliates have the right to charge a reasonable systems fee for software or systems installation; modifications, maintenance, and enhancements specifically made for us or our affiliates that are licensed to you; and other Computer System-related maintenance and support services that we or our affiliates furnish to you.   You will have sole responsibility for: (1) the acquisition, operation, maintenance, and upgrading of your Computer System; (2) the manner in which your Computer System interfaces with our computer system and those of third parties; and (3) any and all consequences that may arise if your Computer System is not properly operated, maintained, and upgraded.

3.4     **Equipment, Furniture, Fixtures, Furnishings and Signs.**   You agree to use in the development and operation of your Regional Developer Franchise and Pilot Clinic only those brands, types, and/or models of equipment, furniture, fixtures, furnishings, and signs we have approved.

3.5     **Regional Developer Franchise Opening.**   You agree not to open your Regional Developer Franchise for business until: (i) all of your obligations with respect to your Regional Developer Franchise under the foregoing Paragraphs of this Section 3 have been fulfilled; (ii) you and any of your Regional Developer Franchise employees whom we may require have completed our pre-opening Initial Training (as defined herein) to our satisfaction; (iii) the Development Fee (as defined herein) and all other amounts due to us have been paid; (iv) you comply with any disclosure and/or registration obligations you may have under Paragraph 10.5 of this Agreement in order to offer Sales Services to Prospective Franchisees; (v) you have furnished us with copies of all insurance policies required by Paragraph 10.13 of this Agreement, or have provided us with appropriate alternative evidence of insurance coverage and payment of premiums as we have requested; and (vi) we have approved any marketing, advertising, and promotional materials you desire to use in marketing the franchise sales opportunities available through the Regional Developer Franchise, as provided in Paragraph 11.1 of this Agreement.   In

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

addition to our other pre-opening duties under this Agreement, we will provide you with such additional guidance and assistance as we deem appropriate in connection with the opening of your Regional Developer Franchise.

4.      **INITIAL TRAINING.**

   4.1      **Regional Developer Franchise Initial Training Program.**  Before you may open your Regional Developer Franchise for business, we will provide to you initial training regarding the fundamentals of operating a Regional Developer Franchise (the "Initial Training"). This Initial Training shall be in addition to any initial training program to be provided to you under the Massage Heights® Franchise Agreement for your Pilot Clinic.  This Initial Training will last for five (5) days at our corporate office or another location to be designated by us in our sole and absolute discretion.

   4.2      **Attendees; Costs.**  We will provide the Initial Training at no cost to you for up to two (2) persons, including the following persons: you (in an individual), at least one of your Principal Owners (if you are a corporation, partnership, or limited liability company), and your Clinic Director (as defined herein), if any.  Not less than seven (7) days before your Regional Developer Franchise opens for business, you (if an individual), at least one Principal Owner (if you are a corporation, partnership, or limited liability company), and the person who has been employed by you as your Clinic Director, if any, must attend and complete the Initial Training program to our satisfaction.  Additional personnel of yours may attend the Initial Training if you pay to us a daily attendance fee in an amount to be determined by us.  You will remain solely responsible for all travel, transportation, lodging, meals, and other personal costs for, and wages and compensation owed to, all of your attendees.  Each person who attends the Initial Training must complete the program to our satisfaction, and any attendee who fails to complete the program to our satisfaction will be required to be retrained at the time, place, and cost to be set by us, and at your sole expense.

5.      **OUR OBLIGATIONS.**

   5.1      **Establishment of Regional Office.**  In addition to performing our other obligations other set forth in this Agreement, we will assist you in establishing any regional sales, administrative, and training office ("Regional Office") we may require you to open under Paragraph 10.15 of this Agreement by providing to you, within thirty (30) days of notifying you

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

of your obligation to open a Regional Office, any written specifications (including blueprints) that we may have for the construction or remodeling of your Regional Office, and a list of all required equipment, inventory and supplies.  We will also, to the extent we deem necessary or appropriate, advise you about conforming the Regional Office location to local ordinances and building codes, and obtaining required health, building, and sign permits for the location.  You will be solely liable for its compliance with all applicable business ordinances and building codes, and for obtaining all necessary health, building, sign, and other permits, licenses and bonds, as may be required for the operation of the Regional Office.

     **5.2**    **Additional Training.**  In addition to providing the Initial Training described in Section 4, we reserve the right to offer and hold such additional ongoing training programs and franchise owners meetings regarding such topics and at such times and locations as we may deem necessary or appropriate.  We also reserve the right to make any of these training programs mandatory for you and/or designated owners, employees, and/or representatives of yours.  We may charge you a daily attendance fee in an amount set by us for each attendee of yours who attends any mandatory or optional training program or owners meeting.  You will be solely responsible for the wages and travel, lodging, and living expenses for each attendee of yours who attends any additional training program or franchise owners meeting offered and held by us.  If we offer any such mandatory training programs, you or your designated personnel must attend a minimum of seventy-five percent (75%) of the programs offered on an annual basis.  At your request, we may, but do not have to, agree to also furnish additional training, guidance, and assistance to you at per diem fees and charges established by us from time to time.  If you request this guidance or assistance or special training of your personnel, and the training or assistance must take place at your Pilot Clinic or any Regional Office that we require you to open, then you must pay a per diem fee to be set by us, and all expenses for our personnel, including all travel, lodging, meal, and living expenses.

     **5.3**    **Guidance and Assistance.**  During any Term of this Agreement, we may from time to time furnish you guidance and assistance with respect to: (i) specifications, standards, and operating procedures used by Regional Developer Franchises; (ii) purchasing approved equipment, furniture, furnishings, signs, materials and supplies; (iii) development and implementation of advertising and promotional programs; (iv) general operating and management procedures; (v) establishing and conducting employee training programs at your

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Pilot Clinic and/or any Regional Office that we require you to open; and (vi) changes in any of the above that occur from time to time.  This guidance and assistance may, in our discretion, be furnished in the form of bulletins, written reports and recommendations, operations manuals, and other written materials (the "Regional Developer Manual"), and/or telephone consultations and/or personal consultations at our offices or at your Pilot Clinic and/or any Regional Office that we require you to open.  If you request additional, special on-premises training of your personnel or other assistance in operating your Regional Developer Franchise and/or Pilot Clinic, you agree to pay for all expenses for that training or assistance, including any per diem charges assessed by us and any wages or compensation owed to, and travel and living expenses incurred by, our personnel.

   **5.4**     **Regional Developer Manual.**  We will lend to you one (1) copy of our Regional Developer Manual containing mandatory and suggested specifications, standards, and operating procedures that we prescribe from time to time for Regional Developer Franchises, as well as information relative to other obligations you have in the operation of your Regional Developer Franchise.  The Regional Developer Manual may be composed of or include audiotapes, videotapes, computer disks, compact disks, and/or other written or intangible materials.  We may make all or part of the Manual available to you through various means, including the Internet.  A previous edition of the Manual or part thereof may be superseded from time to time with replacement materials to reflect changes in the specifications, standards, operating procedures, and other obligations in operating a Regional Developer Franchise.  You must keep your copy of the Regional Developer Manual current, and if you and we have a dispute over the contents of the Manual, then our master copy of the Manual will control.  You agree that you will not at any time, without our permission, copy any part of the Regional Developer Manual, permit it to be copied, disclose it to anyone not having a need to know its contents for purposes of operating your Regional Developer Franchise, or remove it from your Pilot Clinic or any Regional Office that we require you to open.  If your copy of the Regional Developer Manual is lost, destroyed, or significantly damaged, then you must obtain a replacement copy for us at our then-applicable charge.

   **5.5**     **Modifications to Regional Developer Franchises**.  We will continually be reviewing and analyzing developments with respect to the development and operation of our Regional Developer Franchises, based upon our evaluation of this information, we may make

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

changes in your Regional Developer Business.  Moreover, changes in laws regulating Regional Developer Franchises and the offering and sale of Franchises may (i) require us to restructure our franchise program, (ii) require you and/or your officers, directors, employees, and/or agents to obtain additional licenses or certifications, or (iii) require you to modify your ownership or organizational structure.  You agree, at our request, to modify the operation of your Regional Developer Franchise to comply with all such changes, and to be solely responsible for all related costs.

    5.6    **Marketing Materials.**  We will provide to you any master forms of advertising, informational brochures, operational forms, videotapes, training manuals, photographs, graphic design templates, statistical analysis models, and other sales documents and tools that we deem may be helpful to you in the operation of the Regional Developer Franchise and promotion of the Franchises for sale in the Regional Territory.

    5.7    **Advisory Councils**.  You agree to participate in, and, if required, become a member of any advisory councils or similar organizations we form or organize for Massage Heights® franchises.

## 6.    FEES AND COMPENSATION.

    6.1    **Development Fee**.  You agree to pay us an initial franchise fee (the "Development Fee") of $162,900 when you sign this Agreement.  You agree and acknowledge that your Development Fee is based on the number of Massage Heights® Franchises that must be established in your Regional Territory as provided in Paragraph 10.3 of this Agreement, and includes the initial franchise fee otherwise due and payable for your Pilot Clinic.  You further agree and acknowledge that the Development Fee is non-refundable, is fully earned by us upon the signing of this Agreement, and must be paid in full by cashier's check or bank draft upon your signing of this Agreement.

    6.2    **Additional Fees**.  Beginning on the Agreement Date and continuing for the duration of any Term of this Agreement, you must pay to us all fees and other amounts that you are required to pay to us under this Agreement, the Massage Heights® Franchise Agreement for your Pilot Clinic, and any other franchise or other agreement between you and us.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

6.3  **Compensation**.  We will pay to you the following amounts as compensation for your services under this Agreement:

(a)  Fifty percent (50%) of any initial franchise fees paid to us by those Massage Heights® Franchisees who purchase Franchises in your Regional Territory; and

(b)  Fifty percent (50%) of each continuing royalty paid us by those Franchisees who purchase a Franchise in your Regional Territory.  The amount of the continuing royalty owed by each such Franchisee is defined in the Massage Heights® Franchise Agreement(s) executed by the Franchisee.

You agree that (i) our duty to pay the above compensation shall arise only upon our actual receipt in our bank account of the initial franchise or royalty payment to which the compensation owed to you corresponds; (ii) your compensation shall be calculated based on the actual amount paid to and received from a Franchisee by us at any one time, rather than the total amount owed under such Franchisee's Franchise Agreement; and (iii) all payments of compensation to you shall be made in our general payroll payment schedule within thirty (30) days of the date that the payment to which such compensation corresponds clears our bank account.

6.4  **Advertising Fee**.  Recognizing the value of advertising to the goodwill and public image of Massage Heights® Regional Developer Franchises, Clinic Franchises, and the Marks, we may, in our sole discretion, establish, maintain and administer an advertising fund (the "Ad Fund") for such advertising as we may deem necessary or appropriate for the benefit of our Regional Developer Franchises and Regional Developers.  If we establish an Ad Fund, you agree to contribute to the Ad Fund an amount to be set by us ("Advertising Fee").  We will provide you with at least thirty (30) days' advance notice of the establishment of an Ad Fund and the amount of your required Advertising Fee, which will be payable within such time periods and by such deadlines as we may deem necessary or appropriate.  A further description of the Ad Fund and your obligations with respect to advertising and promoting your Franchise is found in Section 11.2 of this Agreement.

6.5  **Interest on Late Payments**.  Any payment payable to us by you under this Section 6, amounts due from you for purchases from us or our affiliates, and other amounts that you may owe to us or our affiliates (unless otherwise provided for in a separate agreement

03-MH- Regional Developer Agreement                    Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

between us or our affiliates) will begin to accrue interest after their respective due dates at the greater of (i) the highest commercial contract interest rate permitted by state law, or (ii) the rate of eighteen percent (18%) per annum.  (You acknowledge that the inclusion of this Paragraph in this Agreement does not mean we agree to accept or condone late payments, nor does it indicate that we have any intention to extend credit to, or otherwise finance your operation of your Franchise.)  We have the right to require that any payments due us or our affiliates be made by certified or cashier's check in the event that any payment by check is not honored by the bank upon which the check is drawn.  We also receive the right to charge you a fee of $100.00 for any payment by check that is not honored by the bank upon which it is drawn.  Payments due us or our affiliates will not be deemed received until such time as funds from the deposit of any check by us or our affiliates is collected from your account.  The imposition of interest under this Paragraph shall be in addition to any other remedies that we may have under this Agreement or at law, including termination of this Agreement as provided in Section 15.

     **6.6**    <u>**Electronic Funds Transfer**</u>.  We have the right to require you to participate in an electronic funds transfer program under which any amounts payable to us by you under this or any other Agreement are deducted or paid electronically from your bank account (the "Account").  In the event you are required to authorize us to initiate debit entries, you agree to make the funds available in the Account for withdrawal by electronic transfer no later than the due date for payment. Our use of electronic funds transfers as a method of collecting any amounts owed by you to us does not constitute a waiver of any of your obligations to provide us with periodic reports as provided in Section 12, and shall not be deemed a waiver of any of the rights and remedies available to us under this Agreement.

     **6.7**    <u>**Application of Payments; Set-off**</u>.  When we receive a payment from you, we have the right in our sole discretion to apply it as we see fit to any past due indebtedness of yours due to us or our affiliates, whether for any amount due under this Agreement or any other agreement between you and us and/or our affiliates, regardless of how you may designate a particular payment to be applied.  We may also charge against and deduct from any compensation owed to you under Paragraph 6.3 above any amounts that you may owe to us or our affiliates (including without limitation any interest or other late payments owed by you) at the time the compensation is payable to you.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

7.    **MARKS.**

  7.1    **Ownership and Goodwill of Marks**.  You acknowledge that your right to use the Marks is derived solely from this Agreement and the Massage Heights® Franchise Agreement for your Pilot Clinic, and is limited to your operation of your Regional Developer Franchise and Pilot Clinic pursuant to and in compliance with this Agreement, the Massage Heights® Franchise Agreement for your Pilot Clinic, and all applicable standards, specifications, and operating procedures we prescribe from time to time during the term of the Master Regional Franchise.  You understand and acknowledge that our right to regulate the use of the Marks includes, without limitation, any use of the Marks in any form of electronic media such as Websites (as defined herein) or web pages, or as a domain name or electronic media identifier. If you make any unauthorized use of the Marks, it will constitute a breach of this Agreement and an infringement of our rights in and to the Marks.  You acknowledge and agree that all your usage of the Marks and any goodwill established by your use will inure exclusively to our benefit and the benefit of our affiliates, and that this Agreement does not confer any goodwill or other interests in the Marks on you (other than the right to operate a Massage Heights® Regional Developer Franchise in compliance with this Agreement).  All provisions of this Agreement applicable to the Marks will apply to any additional trademarks, service marks, commercial symbols, designs, artwork and logos we may authorize and/or license you to use during the term of this Agreement.

  7.2    **Limitations on Franchise Owner's Use of Marks**.  You agree to use the Marks as the sole trade identification of your Master Regional Franchise and Pilot Clinic, except that you will display at your Pilot Clinic and any Regional Office that we require you to open, a written notice, in the form we prescribe, stating that you are the independent owner of the Master Regional Franchise pursuant to this Agreement, and of the Pilot Clinic pursuant to your Massage Heights® Franchise Agreement.  You agree not to use any Mark as part of any corporate or trade name or with any prefix, suffix, or other modifying words, terms, designs, or symbols (other than logos and additional trade and service marks licensed to you under this Agreement), or in any modified form, nor may you use any Mark or any commercial symbol similar to the Marks, in connection with the performance or sale of any unauthorized services or products or in any other manner we have not expressly authorized in writing.  You agree to display the Marks in the manner we prescribe at your Pilot Clinic and any Regional Office that we require you to open

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

and in connection with advertising and marketing materials, and to use, along with the Marks, notices of trade, and service mark registrations as we specify.  You further agree to obtain any fictitious or assumed name registrations as may be required under applicable law.

       7.3    **Notification of Infringements and Claims**.  You agree to immediately notify us in writing of any apparent infringement of or challenge to your use of any Mark, or claim by any person of any rights in any Mark or similar trade name, trademark or service mark of which you become aware.  You agree not to communicate with anyone except us and our counsel in connection with any such infringement, challenge, or claim.  We have the sole right to exclusively control any litigation or other proceeding arising out of any actual or alleged infringement, challenge, or claim relating to any Mark.  You agree to sign any documents, render any assistance, and do any acts that our attorneys say is necessary or advisable in order to protect and maintain our interests in any litigation or proceeding related to the Marks, or to otherwise protect and maintain our interests in the Marks.

       7.4    **Discontinuance of Use of Marks**.  If it becomes advisable at any time in our sole judgment for your Regional Developer Franchise and/or Pilot Clinic to modify or discontinue the use of any Mark, or to use one or more additional or substitute trade or service marks, including the Marks used as the name of the Regional Developer Franchise and/or Pilot Clinic, then you agree to comply, at your sole expense, with our directions to modify or otherwise discontinue the use of the Mark, or use one or more additional or substitute trade or service marks, within a reasonable time after our notice to you.

       7.5    **Indemnification of Franchise Owner**.  We agree to indemnify you against, and to reimburse you for, all damages for which you are held liable in any trademark infringement proceeding arising out of your use of any Mark pursuant to and in compliance with this Agreement, and for all costs you reasonably incur in the defense of any such claim in which you are named as a party, so long as you have timely notified us of the claim and have otherwise complied with this Agreement.

8.    **RELATIONSHIP OF THE PARTIES; INDEMNIFICATION.**

       8.1    **Independent Contractor; No Fiduciary Relationship**.  Both you and we understand and agree that this Agreement does not create a fiduciary relationship between you and us, that you and we are independent contractors, and that nothing in this Agreement is

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

intended to make either party a general or special agent, joint venturer, partner, or employee of the other for any purpose whatsoever.  You agree to conspicuously identify yourself in all your dealings with customers, suppliers, public officials, your employees and independent contractors, and others as the owner of the Regional Developer Franchise pursuant to a Regional Developer Agreement with us, and to place any other notices of independent ownership on your forms, business cards, stationery, advertising, and other materials as we may require from time to time.

8.2     **No Liability, No Warranties**.  We have not authorized or empowered you to use the Marks except as provided by this Agreement, and you agree not to employ any of the Marks in signing any contract, check, purchase agreement, negotiable instrument or legal obligation, application for any license or permit, or in a manner that may result in liability to us for any indebtedness or obligation of yours.  Except as expressly authorized by this Agreement, neither you nor we will make any express or implied agreements, warranties, guarantees or representations, or incur any debt, in the name of or on behalf of the other, or represent that your and our relationship is other than that of franchisor and franchisee.

8.3     **Indemnification**.  We will not assume any liability or be deemed liable for any agreements, representations, or warranties you make that are not expressly authorized under this Agreement, nor will we be obligated for any damages to any person or property directly or indirectly arising out of the operation of the business you conduct pursuant to this Agreement, whether or not caused by any negligent or willful action or failure to act by you or your Principal Owners, officers, directors, employees, independent contractors, agents, or successors or assigns. We will have no liability for any sales, use, excise, income, gross receipts, property, or other taxes levied against you or your assets or on us in connection with the business you conduct, or any payments you make to us pursuant to this Agreement (except for our own income taxes). You agree to indemnify, defend and hold us, our affiliates, and our and their respective owners, directors, officers, employees, agents, and assignees (individually, an "Indemnified Party," and collectively, the "Indemnified Parties") harmless against, and to reimburse such Indemnified Parties for, all such obligations, damages, and taxes for which any Indemnified Party is held liable, and all costs that the Indemnified Party reasonably may incur in the defense of any such claim brought against the Indemnified Party, or in any such action in which the Indemnified Party may be named as a party, including without limitation actual and consequential damages; reasonable attorneys', accountants', and/or expert witness fees; cost of investigation and proof of

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

facts; court fees and costs; other litigation expenses; and travel and living expenses.   Each Indemnified Party has the right to defend any such claim against the Indemnified Party.   You further agree to hold us harmless and indemnify and defend us for all costs, expenses, or losses we incur in enforcing the provisions of this Agreement, defending our actions taken relating to this Agreement, or resulting from your breach of this Agreement, including without limitation reasonable arbitrator's and attorneys' fees (including those for appeal), unless, after legal proceedings are completed, you are found to have fulfilled and complied with all of the terms of this Agreement.   Your indemnification obligations described above will continue in full force and effect after, and notwithstanding, the expiration or termination of this Agreement.

9.     **CONFIDENTIAL INFORMATION; NON-COMPETITION.**

9.1     **Types of Confidential Information.**   We possess certain unique confidential and proprietary information and trade secrets consisting of the following categories of information, methods, techniques, products, and knowledge developed by us including but not limited to: (i) services and products offered and sold at Massage Heights® Franchises; (ii) knowledge of sales and profit performance of any one or more Massage Heights® Clinics and Regional Developer Franchises; (iii) knowledge of sources of products sold at Massage Heights® Clinics, advertising and promotional programs, image, and decor; (iv) methods, techniques, formats, specifications, procedures, information, systems, and knowledge of and experience in the development, operation, and franchising of Massage Heights® Clinics and Regional Developer Franchises; and (v) the selection and methods of training technicians and other employees.   We will disclose much of the above-described information to you in advising about site selection, providing training to you, the Regional Developer Manual, the Operations Manual for your Pilot Clinic, and providing guidance and assistance to you under this Agreement.   In addition, in the course of the operation of your Regional Developer Franchise and Pilot Clinic, you or your employees or independent contractors may develop ideas, concepts, methods, and techniques of improvement, relating to the Regional Developer Franchise and/or Pilot Clinic that you agree to disclose to us, and that we may then authorize you to use in the operation of your Regional Developer Franchise and/or Pilot Clinic, and may use or authorize others to use in other Massage Heights® franchises owned or franchised by us or our affiliates.   (Any such information disclosed to or developed by you will be referred to in this Agreement as "Confidential Information".)

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

9.2     **Non-Disclosure Agreement**. You agree that your relationship with us does not vest in you any interest in the Confidential Information other than the right to use it in the development and operation of your Regional Developer Franchise and Pilot Clinic, and that the use or duplication of the Confidential Information in any other business would constitute an unfair method of competition. You acknowledge and agree that the Confidential Information belongs to us, may contain trade secrets belonging to us, and is disclosed to you or authorized for your use solely on the condition that you agree, and you therefore do agree, that you (i) will not use the Confidential Information in any other business or capacity; (ii) will maintain the absolute confidentiality of the Confidential Information during and after the Term of this Agreement; (iii) will not make unauthorized copies of any portion of the Confidential Information disclosed in written form or any other form that may be copied or duplicated; and (iv) will adopt and implement all reasonable procedures, including but not limited to those we may prescribe from time to time, to prevent unauthorized use or disclosure of the Confidential Information, including without limitation restrictions on disclosure to your employees, independent contractors, and agents, and the use of non-disclosure and non-competition agreements we may prescribe or approve for your shareholders, partners, members, officers, directors, employees, independent contractors, or agents who have access to the Confidential Information.

9.3     **Non-Competition Agreement**. You agree that we would be unable to protect the Confidential Information against unauthorized use or disclosure, or encourage a free exchange of ideas and information among Massage Heights® franchises, if franchise owners of our Massage Heights® Franchises and Regional Developer Franchises were permitted to hold interests in any competitive businesses (as described below). Therefore, during the Term of this Agreement, neither you, nor any Principal Owner, officer, director, employee, or independent contractor of yours, nor any member of your immediate family or of the immediate family of any Principal Owner, shall perform services for, or have any direct or indirect interest as a disclosed or beneficial owner, investor, partner, director, officer, employee, manager, consultant, representative or agent, in any business then in existence or approved, that (i) offers or sells franchises or other business opportunities offering products or services the same as or similar to those offered or sold by us or our Regional Developer Franchises; or (ii) offers or sells products or services the same as or similar to those offered or sold at Massage Heights® Franchises. (The

Ex. 4, Pls.' State Petition and Exhibits

ownership of one percent (1%) or less of a publicly traded company will not be deemed to be prohibited by this paragraph).

10.   **FRANCHISE OBLIGATIONS AND STANDARDS.**

10.1   **Condition and Appearance** .  You agree that:

(a)   you will develop, and operate your Pilot Clinic in accordance with, and subject to our rights as set forth in, the Massage Heights® Franchise Agreement for your Pilot Clinic.

(b)   if we require you to open a Regional Office under Section 10.15, your Regional Office will no be used for any purpose other than the operation of your Regional Developer Franchise in compliance with this Agreement;

(c)   if we require you to open a Regional Office under Section 10.15, you will maintain the condition and appearance of your Regional Office, its equipment, furniture, furnishings, signs, and premises in accordance with our standards and consistent with the image of a Massage Heights® Regional Developer Franchise as an efficiently operated business offering high quality services and observing the highest standards of cleanliness, and in that connection will take, without limitation, the following actions during any Term of this Agreement: (1) thorough cleaning, repainting and redecorating of the interior and exterior of the Regional Office at reasonable intervals; (2) interior and exterior repair of the Regional Office; and (3) repair or replacement of damaged, worn out or obsolete equipment, furniture, furnishings and signs;

(d)   if we require you to open a Regional Office under Section 10.15, you will not make any material alterations to the Regional Office, or to the appearance of the Regional Office, as originally developed, without our advance written approval.  If you do so, we have the right, at our option and at your expense, to rectify alterations we have not previously approved;

(e)   if we require you to open a Regional Office under Section 10.15, you will replace or add new equipment when we reasonably specify in order to meet changing standards or new methods of service;

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(f)     if we require you to open a Regional Office under Section 10.15, on notice from us, you will engage in remodeling, expansion, redecorating and/or refurbishing of the Regional Office to reflect changes in the operations of Massage Heights® Regional Developer Franchises that we prescribe and require of new Regional Developers, provided that no material changes will be required unless there are at least two (2) years remaining on the then-current Term of the Regional Developer Franchise (all actual changes will be subject to our approval), and that we have completed the proposed change in at least twenty-five percent (25%) of all similarly situated Regional Developer Franchises owned by us or our affiliates, and have undertaken a plan to make the proposed change in the balance of such Regional Developer Franchises;

(g)     if we require you to open a Regional Office under Section 10.15, you will place or display at the Regional Office (interior and exterior) those signs, emblems, designs, artwork, lettering, logos, and display and advertising materials that we from time to time approve; and

(h)     if we require you to open a Regional Office under Section 10.15, in the event that, in our reasonable judgment, the general state of repair, appearance or cleanliness of the premises of the Regional Office or its fixtures, equipment, furniture or signs do not meet our standards, we have the right to notify you, specifying the action you must take to correct the deficiency. If you do not initiate action to correct such deficiencies within ten (10) days after receipt of our notice, and then continue in good faith and with due diligence, a bona fide program to complete any required maintenance or refurbishing, then we have the right, in addition to all other remedies, to enter the Regional Office and do any required maintenance or refurbishing on your behalf, and you agree to reimburse us on demand.

**10.2    Products and Services**. You agree that (i) your Regional Developer Franchise and Pilot Clinic will offer only those services and products that we have approved, and only in the manner we have prescribed; (ii) you will not offer for sale any services or products we have not approved; (iii) you will not use the Regional Developer Franchise, the Pilot Clinic, or any Regional Office that we require you to open, for any purpose other than the operation of the

Ex. 4, Pls.' State Petition and Exhibits

Regional Developer Franchise; and (f) you will discontinue selling and offering for sale any services or products that we at any time decide (in our sole discretion) to disapprove in writing.

10.3    **Minimum Development Obligation**.    As your "Minimum Development Obligation," you agree that your rights under this Agreement shall remain contingent upon the establishment and operation of the minimum number of Massage Heights® Clinic Franchises required to be established and in operation during each of the time periods set forth in this Paragraph (individually, a "Development Period," and collectively, the "Development Periods") as provided below:

(a)    You must meet the following minimum development quota within in the indicated Development Period(s):  Accumulatively and within 5 years of execution of this agreement a total development of 17 units and scheduled as follows: _____

| | | |
|---|---|---|
| | Year 1 | 3 units operating |
| | Year 2 | 6 units operating |
| | Year 3 | 10 units operating |
| | Year 4 | 13 units operating |
| | Year 5 | 17 units operating |

(b)    Each Pilot Clinic or other Clinic Franchise established and operating in the Regional Territory as of the end of each Development Period shall be counted in determining your compliance with your Minimum Development Obligation for the Development Period.  In the event that any Clinic Franchise in your Regional Territory terminates or closes during a Development Period, that Franchise shall not be counted for purposes of your Minimum Development Obligation.

(c)    You must ensure that each Clinic Franchise established in your Regional Territory signs a Massage Heights® Franchise Agreement, in the form attached to the UFOC then used by us to offer and sell Massage Heights® Clinic Franchises in your Regional Territory.

10.4    **Sales Services**.  You will be responsible for providing Sales Services to advertise for, solicit, and screen Prospective Franchisees to purchase Franchises in your Regional Territory in accordance with the following:

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(a)    You will evaluate the qualifications of each Prospective Franchisee, as well as the suitability of the Prospective Franchisee's proposed Franchise location, in accordance with our standards, policies, and procedures relating to the qualification of Prospective Franchisees and our Franchises as defined in the Regional Developer Manual.  You must obtain from the Prospective Franchisee all information and documentation required by us of Prospective Franchisees.

(b)    After you ensure that a Prospective Franchisee and proposed Franchise location meet our standards, you may recommend to us the approval of the Prospective Franchisee and its proposed Franchise location.  Upon making such a recommendation, you must furnish to us all information and documentation concerning the Prospective Franchisee and proposed Franchise location that you have obtained, as well as any additional information that we may require in our sole and absolute discretion.

(c)    We may, in our sole and absolute discretion, approve or disapprove a Prospective Franchisee and/or proposed Franchise location for any reason.  We may seek any additional information about the Prospective Franchisee and/or the proposed Franchise location that we deem appropriate in our sole and absolute discretion, and may conduct or obtain any credit report or background check on the Prospective Franchisee that we may deem appropriate.  You must cooperate with us to obtain any additional information required by us from or with respect to the Prospective Franchisee.

(d)    We will notify you in writing of our approval or rejection of each Prospective Franchisee and/or proposed Franchise location.  If we reject a Prospective Franchisee and/or Franchise location, then we will include in our written notice a written explanation of our reasons for the rejection.

(e)    In the event that we approve a Prospective Franchisee and proposed Franchise location, we will furnish the Prospective Franchisee with a copy of our then-current Massage Heights® Franchise Agreement for the Prospective Franchisee to sign. You will deliver the agreement signed by the Prospective Franchisee, together with all fees and amounts then owed to us by the Prospective Franchisee, to us for us to sign. You must not sign any Franchise Agreement or other agreement on our behalf, and must not modify any such agreement or exhibit thereto in any way.

03-MH- Regional Developer Agreement                           Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(f)      You must not accept payment of any fee or other amount owed to us by an approved Prospective Franchisee.

**10.5**      <u>**Disclosure and Registration Obligations**</u>.  You acknowledge and agree to the following provisions related to your obligation to provide Sales Services on our behalf:

(a)      You acknowledge that the offer and sale of Massage Heights® Clinic Franchises by us is subject to federal and state franchise or business opportunity laws and regulations that may require the preparation, amendment, registration, or filing of certain documentation and disclosures relating to the Franchises (the "Documentation").  If we have not prepared, amended, registered, or filed any Documentation that is specific or limited to the type or types of Franchises to be offered in your Regional Territory, then you must prepare, amend, register, or file at your sole cost all such Documentation that may be necessary to comply with all federal and state disclosure requirements.  You must review and become fully familiar with all Documentation related to the Franchises to be sold in your Regional Territory, whether prepared by us or you.  If you prepare any Documentation, you must submit it to us for our review and approval before you use it to solicit Prospective Franchisees.  You must ensure that any Documentation that you prepare remains current and complies with all applicable disclosure requirements.  We may, in our sole and absolute discretion, modify or amend, in whole or in part, at any time, without notice or obligation to you, any Documentation prepared by us, but will promptly send such modifications or amendments to you for your review and use.  You must not make any changes, additions, or deletions of any kind to any Documentation prepared by us.

(b)      If federal, state, or local laws and regulations in any jurisdiction in your Regional Territory require the preparation, amendment, registration, or filing of any Documentation or other documents for you to solicit Prospective Franchisees or perform any other duty required under this Agreement, then you must not solicit any Potential Franchisees or perform any such other duty until after the required Documentation has been prepared, amended, registered, and/or filed with the appropriate governmental agency or authorities in accordance with the provisions of subparagraph (a) above. In the event that we or you learn that any required registration is not in effect, or that any

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

required Documentation or document does not comply with applicable law, you must stop soliciting Prospective Franchisees immediately upon acquiring such knowledge or receiving notice from us about the non-registration or non-compliance of the Documentation, and will resume soliciting Prospective Franchisees only upon receiving notice from the appropriate governmental authority or us that the required registration is in effect, or the non-compliance of the Documentation has been cured.

(c)     You must comply with all applicable federal, state, and local laws and regulations governing the offering of Franchises in the Regional Territory.  Accordingly, you must:

(1)     Furnish to Prospective Franchisees only such Documentation as we may designate or approve, including any then-current form of UFOC for Clinic Franchises, if any, that we have authorized for your use in the Regional Territory, and such promotional materials that we have previously approved;

(2)     Comply with all applicable requirements governing the timing of delivery of the Documentation, and obtaining and delivering to us any original receipt executed by a Prospective Franchisee to whom any Documentation is delivered;

(3)     Make no representations or other statements that conflict with the information contained in the Documentation delivered to a Prospective Franchisee;

(4)     Make no earnings claims or projections concerning any Massage Heights® Clinic Franchise, or provide any information concerning actual sales, revenues, incomes, costs, or expenses related to any Massage Heights® Clinic Franchise, unless such information is contained in the Documentation provided to Prospective Franchisees; and

(5)     Promptly notify us of any material information or event that may require disclosure in any Documentation prepared by us.

(d)     Throughout any Term of this Agreement, you (and, if necessary, your Principal Owners, directors, officers, employees, independent contractors, and agents, if

03-MH- Regional Developer Agreement                    Massage Heights® Corporate, LLC

24

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

any) must, at your expense, register and/or obtain licensure as a franchise broker, business broker, or otherwise as required under the laws and regulations of any state or locality in the Regional Territory. You must not solicit any Prospective Franchisees in any such state or locality until all required registration or license obtained by you becomes effective, and you provide to us documentary proof of such effective registration and/or licensure.

10.6    **Support Services**. Before providing any Support Services required under this Agreement, you must ensure that you and your employees and independent contractors have obtained all licenses, certifications, and other authorizations that may be required by law or us to provide any such Services. As part of the Support Services you must render pursuant to this Agreement, you will provide to each Clinic Franchisee in your Regional Territory all initial and other training that we may be required to provide to the Franchisee pursuant to the Franchisee's Franchise Agreement, except as we may provide in our sole and absolute discretion. Unless we otherwise agree in writing, all such training shall take place at your Pilot Clinic, and you will be solely responsible for all costs and expenses that you may incur in providing such training.

Notwithstanding the foregoing, we may, in our sole and absolute discretion, choose to provide any training or other Support Services that would otherwise be your sole responsibility under this Paragraph 10.6. In the event that we exercise this right, or that you request that we provide any training or other Support Services that would otherwise be your responsibility hereunder, you must pay to us as compensation a fee in an amount to be set by us, plus all travel, lodging, and living expenses incurred by our personnel in providing such training or Support Services.

10.7    **Participation in the Franchise**. Unless we approve your employment of a Clinic Director (other than the owner) to operate the Regional Developer Franchise ("Clinic Director"), you must actively participate in the actual, day-to-day operation of the Regional Developer Franchise, and devote as much of your time as is reasonably necessary for the efficient operation of the Regional Developer Franchise. If you are other than an individual, then at least one (1) Principal Owner, director, officer, or other employee of you approved by us must comply with

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

the this requirement.  If we agree that you may employ a Clinic Director to supervise the day-to-day operation of the Regional Developer Franchise, then you must not hire any Clinic Director or successor Clinic Director without first receiving our written approval of the Clinic Director's qualifications.  Your Clinic Director must attend and complete our Initial Training as described in Section 4 of this Agreement.  Any successor Clinic Directors must also attend the Initial Training, which we will provide at your sole expense for our then-current additional training fee. The term "Clinic Director" means the individual with primary day-to-day responsibility for the Regional Developer Franchise's operations, and may or may not be a Principal Owner of you. Each Clinic Director must sign a written agreement, in a form approved by us, to maintain confidential our Confidential Information described in Paragraph 9.1, and to abide by the covenants not to compete described in Paragraph 9.3.  You must forward to us a copy of each such signed agreement.

10.8    **Approved Products, Distributors and Suppliers**.  We have developed or may develop various unique products or services that may be prepared according to our formulations. We have approved, and will continue to periodically approve, specifications for suppliers and distributors (which may include us and/or our affiliates) for products and services required to be purchased by, or offered and sold at, Massage Heights® franchises that meet our standards and requirements, including without limitation standards and requirements relating to product quality, prices, consistency, reliability, and customer relations.  You agree that you will: (i) purchase any required products or services in such quantities as we designate; (ii) utilize such formats, formulae and packaging for products as we prescribe; and (iii) purchase all products and services only from distributors and other suppliers we have approved.

We may approve a single distributor or other supplier (collectively, "supplier") for any product or service, and may approve a supplier only as to certain products or services.  We may concentrate purchases with one or more suppliers to obtain lower prices or the best advertising support or services for any group of Massage Heights® franchises sold to third parties or operated by us.  Approval of a supplier may be conditioned on requirements relating to the frequency of delivery, concentration of purchases, standards of service, including prompt attention to complaints, or other criteria and may be temporary, pending our continued evaluation of the supplier from time to time.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

If you would like to purchase any items from any unapproved supplier, then you or the supplier must submit to us a written request for approval of the proposed supplier. We have the right to inspect the proposed supplier's facilities, and to require product samples from the proposed supplier to be delivered at our option either directly to us or to any independent, certified laboratory that we designate for testing. We may require you or the proposed supplier requesting the evaluation to pay us a fee (not to exceed the reasonable cost of the inspection and the actual cost of the test) to make the evaluation. We reserve the right to periodically re-inspect the facilities and products of any approved supplier, and revoke our approval if the supplier does not continue to meet any of our criteria.

We and/or our affiliates may be an approved supplier of certain products to be purchased by you for use or sale by you. We and our affiliates reserve the right to charge any licensed manufacturer engaged by us a royalty to manufacture products for us, or to receive commissions or rebates from vendors that supply goods or services to you. We and/or our affiliates may also derive income from our and/or their sale of products to you, and may sell these items at prices exceeding our or their costs in order to make a profit on the sale.

**10.9  Hours of Operation**. You agree to keep your Franchise open for business at such times and during such hours as we may prescribe from time to time.

**10.10  Specifications, Standards and Procedures.** You agree to comply with all mandatory specifications, standards, and operating procedures relating to the appearance, function, cleanliness, sanitation and operation of a Massage Heights® Regional Developer Franchise. Any mandatory specifications, standards, and operating procedures that we prescribe from time to time in the Regional Developer Manual, or otherwise communicated to you in writing, will constitute provisions of this Agreement as if fully set forth in this Agreement. All references to "this Agreement" include all such mandatory specifications, standards, and operating procedures.

**10.11  Compliance with Laws and Good Business Practices**. You agree to secure and maintain in force in your name all required licenses, permits and certificates relating to the operation of your Regional Developer Franchise. You also agree to operate your Regional Developer Franchise in full compliance with all applicable laws, ordinances, and regulations, including, without limitation, all government regulations relating to worker's compensation

03-MH- Regional Developer Agreement                                        Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

insurance, unemployment insurance, and withholding and payment of federal and state income taxes, social security taxes and sales taxes.

All advertising you employ must be completely factual, in good taste (in our judgment), and conform to the highest standards of ethical advertising and all legal requirements.  You agree that in all dealings with us, your customers, your suppliers, and with public officials, you will adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct.  You further agree to refrain from any business or advertising practice that may be harmful to our business and the goodwill associated with us, the Regional Developer Franchise, the Marks, and other Massage Heights® franchises.

You must notify us in writing within five (5) days of (1) the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental unit, that may adversely affect your operation, financial condition or reputation or that of your Regional Developer Franchise, and/or (2) any notice of violation of any law, ordinance, or regulation relating to health or safety.

**10.12  Franchise Employees**.   You must hire such employees and/or independent contractors for the Regional Developer Franchise as may be necessary or appropriate to staff the Regional Developer Franchise and any Regional Office that we require you to open.  You will ensure that all of your employees and independent contractors have any licenses as may be required by law, and hold or are pursuing any licenses, certifications, or degrees required by law or by us in the Regional Developer Manual, as updated from time to time.   You will be exclusively responsible for the terms of your employees' employment and compensation, and for the proper training of your employees and independent contractors in the operation of the Regional Developer Franchise.   You must establish training programs for all employees and independent contractors meeting the standards we prescribe in writing.  You must require all employees and independent contractors to maintain a neat and clean appearance and to conform to the standards of dress that we specify for Regional Developer Franchises in the Regional Developer Manual, as updated from time to time.   Each of your employees and independent contractors must sign a written agreement, in a form approved by us, to maintain confidential our proprietary information and trade secrets as described in Paragraph 9.1, and to abide by the covenants not to compete described in Paragraph 9.3.   You must forward to us a copy of each

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

such signed agreement.   All employees and independent contractors must render prompt, efficient and courteous service to all customers of the Regional Developer Franchise.  You agree not to recruit or hire, either directly or indirectly, any employee (or a former employee, for six (6) months after his or her employment has ended) of any Massage Heights® Clinic or Regional Developer Franchise operated by us, our affiliates, or another Massage Heights® franchise owner without first obtaining the written consent of us or the franchise owner that currently employs (or previously employed) such employee.  (If you violate this provision, in addition to any other right or remedy we may have, you agree to pay the employee's current or former employer twice the employee's annual salary, plus all costs and attorneys' fees incurred as a result of the violation.  This amount is set at twice the employee's annual salary because it is a reasonable estimation of the damages that would occur from such a breach, and it will almost certainly be impossible to calculate precisely the actual damages from such a breach.)

   **10.13**   **Insurance**.  During any Term of this Agreement, you must maintain in force, under policies of insurance written on an occurrence basis issued by carriers with an A.M. Best rating of A-VIII or better approved by us, and in such amounts as we may determine from time to time: (i) comprehensive public, professional, product and motor vehicle liability insurance against claims for bodily and personal injury, death and property damage caused by or occurring in conjunction with the operation of any Regional Office that we require you to open or otherwise in conjunction with your conduct of the Regional Developer Business pursuant to this Agreement, under one or more policies of insurance containing minimum liability coverages as set forth in the Regional Developer Manual; (ii) general casualty insurance, including theft, cash theft, fire and extended coverage, vandalism and malicious mischief insurance, for the replacement value of the Regional Office and its contents, and any other assets of the Regional Developer Franchise; (iii) worker's compensation and employer's liability insurance as required by law, with limits equal to or in excess of those required by statute; (iv) business interruption insurance for a period adequate to reestablish normal business operations, but in any event not less than six (6) months; (v) any other insurance required by applicable law, rule, regulation, ordinance or licensing requirements; and (vi) umbrella liability coverage with limits of not less than $1,000,000/$3,000,000 or such other amounts that we may set in the Regional Developer Manual.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Each insurance policy must name us and our officers, directors, and employees as additional insureds, and must provide for thirty (30) days' prior written notice to us of any material modification, cancellation, or expiration of the policy. Deductibles must be in reasonable amounts and are subject to review and written approval by us. You must provide us with copies of policies evidencing the existence of such insurance concurrently with execution of this Agreement and prior to each subsequent renewal date of each insurance policy, along with certificates evidencing such insurance.

Prior to the expiration of the term of each insurance policy, you must furnish us with a copy of a renewal or replacement insurance policy and appropriate certificates of insurance. If you at any time fail or refuse to maintain any insurance coverage required by us or to furnish satisfactory evidence thereof, then we, at our option and in addition to our other rights and remedies under this Agreement, may, but need not, obtain such insurance coverage on your behalf, and you shall reimburse us on demand for any costs or premiums paid or incurred by us.

Notwithstanding the existence of such insurance, you are and will be responsible for all loss or damage and contractual liability to third persons originating from or in connection with the operation of the Regional Developer Franchise and/or Pilot Clinic, and for all claims or demands for damages to property or for injury, illness or death of persons directly or indirectly resulting therefrom; and you agree to defend, indemnify and hold us harmless of, from, and with respect to any such claims, loss or damage, which indemnity shall survive the termination or expiration and non-renewal of this Agreement.

In addition to the requirements of the foregoing paragraphs of this Paragraph 10.13, you must maintain any and all insurance coverage in such amounts and under such terms and conditions as may be required in connection with your lease or purchase of the premises for your Pilot Clinic and/or any Regional Office that we require you to open.

Your obligation to maintain insurance coverage as described in this Agreement will not be reduced in any manner by reason of any separate insurance we maintain on our own behalf, nor will our maintenance of that insurance relieve you of any obligations under Section 7 of this Agreement.

10.14  **Compliance with Agreements**. You must comply with all terms and conditions of, and prevent a default from occurring under, any agreement between you and us.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

10.15   **Lease or Purchase of Regional Office.**  During any Term of this Agreement, we may, based on the growth of your Regional Developer Franchise, require you to open and operate a Regional Office located in your Regional Territory in accordance with the following:

(a)     Within ninety (90) days after receiving notice from us that you must open a Regional Office, you must locate a mutually acceptable location for your Regional Office.  You will select a site for your Regional Office, and must submit the proposed site for our approval.  We may, but are not required to, consult with and assist you in selecting your Regional Office site.  The proposed site must be at least 1,000 square feet in area, and must meet any specifications we provide to you.  You specifically agree to abide by the specifications and requirements we may provide to you relative to the Regional Office location, and that you must obtain our written approval of the proposed site and lease terms prior to executing a lease or purchasing the location.  You must provide to us any and all maps, surveys, photographs, and other information and materials that we may request in evaluating your proposed site.  We will approve or disapprove your proposed Regional Office site location within thirty (30) days of receiving all of the information and materials that we request from you.

(b)     Unless otherwise agreed by us in writing, you must commence operation of your Regional Office within six (6) months of receiving notice from us of your obligation to open a Regional Office.

## 11.   ADVERTISING.

11.1   **By Franchise Owner**.  You may prepare your own advertising and marketing programs and materials, but must obtain our prior written approval of all such programs and materials (including without limitation all related graphics, copy, and scripts).  We will provide written notice to you of our approval or disapproval of your proposed advertising program or materials within thirty (30) days of their submission by you, and will not unreasonably withhold our approval.   If you do not receive our written approval or disapproval within the aforementioned thirty (30) day period, the materials submitted will be deemed approved.  You agree not to use any materials that we have disapproved.  You have no minimum expenditure or amount of advertising with which you must comply.  You will be solely responsible and liable to ensure that all advertising, marketing, and promotional materials and activities you prepare

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

comply with applicable federal, state, and local law, and the conditions of any agreements or orders to which you may be subject.

 **11.2** <u>Ad Fund</u>. As stated in Paragraph 6.4, you acknowledge and agree that due to the value of advertising and the importance of promoting the public image of Massage Heights® Regional Developer Franchises, we may establish, maintain and administer a Regional Developer Ad Fund to support and pay for national, regional, or local marketing programs that we deem necessary, desirable, or appropriate to promote the good will and image of all Massage Heights® Regional Developer Franchises.  If an Ad Fund is created, you will contribute to it the Ad Fee as defined in Section 6.4.  We agree that any Regional Developer Franchises owned by us or our affiliates will contribute to the Ad Fund on at least the same basis as you do.  Any Advertising Fund that we create under this Agreement will be separate from, and in addition to, any Ad Fund created pursuant to the Massage Heights® Franchise Agreement for your Pilot Clinic.

 We will be entitled to direct all advertising programs financed by the Ad Fund, with sole discretion over the creative concepts, materials, and endorsements used in them, and the geographic, market, and media placement and allocation of the programs.  You agree that the Ad Fund may be used to pay the costs of preparing and producing video, audio, and written advertising materials; administering multi-regional advertising programs; and providing advertising and marketing materials to Regional Developer Franchises.  The Ad Fund will furnish you with approved advertising materials at its direct cost of producing those advertising materials.  The amounts you contribute to the Ad Fund will not be used for placement of advertising in television, radio, newspaper or other media.  Rather, any collective media placement will be conducted through the local and regional advertising cooperatives described in Paragraph 11.3.

 The Ad Fund will be accounted for separately from our other funds, and will not be used to defray any of our general operating expenses, except for any reasonable salaries, administrative costs and overhead we may incur in activities reasonably related to the administration of the Ad Fund and its advertising programs (including without limitation conducting market research, preparing advertising and marketing materials, and collecting and accounting for contributions to the Ad Fund).  We may spend in any fiscal year an amount

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

greater or less than the total contributions to the Ad Fund in that year. We may cause the Ad Fund to borrow from us or other lenders to cover deficits of the Ad Fund, or to invest any surplus for future use by the Ad Fund. You authorize us to collect for remission to the Ad Fund any advertising monies or credits offered by any supplier to you based upon purchases you make. We will prepare an annual statement of monies collected and costs incurred by the Ad Fund and will make it available to you on written request.

You understand and acknowledge that the Ad Fund will be intended to maximize recognition of the Marks and advertising of franchises offered by Massage Heights® Regional Developer Franchises. Although we will endeavor to use the Ad Fund to develop advertising and marketing materials, and to place advertising in a manner that will benefit all Massage Heights® Regional Developer Franchises, we undertake no obligation to ensure that expenditures by the Ad Fund in or affecting any geographic area are proportionate or equivalent to contributions to the Ad Fund by Regional Developer Franchises operating in that geographic area, or that any Regional Developer Franchise will benefit directly or in proportion to its contribution to the Ad Fund from the development of advertising and marketing materials or the placement of advertising. Except as expressly provided in this Paragraph, we assume no direct or indirect liability or obligation to you with respect to the maintenance, direction, or administration of the Ad Fund.

We will have the right to terminate the Ad Fund by giving you thirty (30) days' advance written notice of termination. All unspent monies on date of termination will be divided between us and the contributing Regional Developer Franchises in proportion to our and their respective contributions. At any time thereafter, we will have the right to reinstate the Ad Fund under the same terms and conditions as described in this Paragraph (including the rights to terminate and reinstate the Ad Fund) by giving you thirty (30) days' advance written notice of reinstatement.

**11.3    Local and Regional Advertising Cooperatives.** You agree that we may, in our sole discretion, designate any geographic area for purposes of establishing an area of dominant influence advertising cooperative (an "ADI Cooperative"), and determine whether an ADI Cooperative is applicable to your Regional Developer Franchise. We may also require that any ADI Cooperative be changed, dissolved or merged. You agree to participate in the ADI Cooperative with other Franchisees and/or Regional Developers of ours if we establish an ADI

Ex. 4, Pls.' State Petition and Exhibits

Cooperative that includes all or a majority of your Regional Territory.  In such an event, you must execute any ADI Membership Agreement that we may require, which will be consistent for each ADI Cooperative member.  You agree that the following provisions will apply to each ADI Cooperative:

    (a)    We may, but have no obligation to, require that the ADI Cooperative operate from written governing documents;

    (b)    Each Cooperative will be administered by Franchisees and/or Regional Developers who are members of the Cooperative as duly elected by participating franchisees;

    (c)    No promotional or advertising plans may be used by an ADI Cooperative without our prior written approval.  All plans and materials must be submitted to us in the process described in this Agreement;

    (d)    Each ADI Cooperative will have the right to require its members to make contributions to the ADI Cooperative in an amount the ADI Cooperative solely determines; and

    (e)    Each Cooperative must prepare annual financial statements that are available for review by us and the members of the Cooperative.

**11.4**  **Websites**.  You acknowledge and agree that any Website (as defined below) will be deemed "advertising" under this Agreement, and will be subject to, among other things, the need to obtain our prior written approval in accordance with Paragraph 11.1, plus all other application provisions of this Agreement.  As used in this Agreement, the term "Website" means an interactive electronic document, contained in a network of computers linked by communications software, that you operate or authorizes others to operate and that refers to your Regional Developer Franchise; any Massage Heights® Clinic Franchise to be offered and sold in your Regional Territory; the Marks; and/or the System.  The term "Website" includes, but is not limited to, Internet and World Wide Web home pages.  In connection with any Website, you agree to the following:

    (a)    Before establishing any Website, you will submit to us a sample of the Website format and information in the form and manner we may require.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(b)      You will not establish or use any Website without our prior written approval.

(c)      In addition to any other applicable requirements, you will comply with our standards and specifications for Websites as we prescribe in the Regional Developer Manual or otherwise in writing.  If we require, you will establish your Website as part of our Website and/or establish electronic links to our Website.

(d)      If you propose any material revision to the Website or any of the information contained in the Website, you will submit each such revision to us for our prior written approval.

12.      **ACCOUNTING, REPORTS AND FINANCIAL STATEMENTS.**

You agree to establish and maintain at your own expense a bookkeeping, accounting, and recordkeeping system conforming to any requirements, data processing and cash register systems and formats that we prescribe from time to time.  These systems may include the capability of being polled by our central computer system, which you agree to permit.  With respect to the operation and financial condition of your Regional Developer Franchise, you agree to furnish us, in the form we prescribe from time to time, (i) any reports or data that we may require, by the deadline that we may specify; and (ii) within ninety (90) days after the end of each fiscal year, a fiscal year-end balance sheet, statement of cash receipts and disbursements and statement of changes in financial position for the Regional Developer Franchise for the fiscal year, reflecting all year-end adjustments, and audited by a certified public accountant.  If we do not receive any report by the established deadline, then you must pay to us a non-refundable late fee of $100.00, payable together with the Continuing Franchise Fees and Advertising Fees due the week after the deadline by which you failed to timely submit the required report.  Additional late fees of $100.00 per week will be assessed for each week thereafter that the report is not submitted, and shall be paid with the Continuing Franchise Fees and Advertising Fees due after the week the additional late fee is assessed.  In addition, you must, at your expense, furnish to us or our agents for inspection or audit, such other forms, reports, records, financial statements, and information as we may require.  You also agree to maintain and furnish complete copies of all federal and state income tax returns and any amendments that you file with the Internal Revenue Service and state tax departments reflecting sales and income of the Regional Developer Franchise.  You will

03-MH- Regional Developer Agreement                                Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

keep these records at your Pilot Clinic or any Regional Office we require you to open.

13.   **INSPECTIONS AND AUDITS.**

   **13.1   Inspection of Franchise.**   To determine whether you and your Regional Developer Franchise are complying with this Agreement and any other specifications, standards, and operating procedures we prescribe for the operation of Massage Heights® Regional Developer Franchises, we or our agents have the right, at any reasonable time and without advance notice to you, to: (i) inspect your Pilot Clinic and/or any Regional Office we require you to open; (ii) observe the operations of the Pilot Clinic and/or any Regional Office we require you to open, for such consecutive or intermittent periods as we deem necessary; (iii) interview personnel of the Pilot Clinic and/or any Regional Office we require you to open; (iv) interview clients of the Regional Developer Franchise and/or Pilot Clinic; and (v) inspect and copy any books, records and documents relating to the operation of the Regional Developer Franchise. You agree to fully cooperate with us in connection with any of those inspections, observations and interviews.   You agree to present to your customers any evaluation forms we periodically prescribe and agree to participate and/or request your customers to participate in any surveys performed by or on our behalf.

   **13.2   Right to Audit**.   We have the right at any time during business hours, and without advance notice to you, to inspect and audit, or cause to be inspected and audited, the business records, bookkeeping and accounting records, sales and income tax records and returns and other records of the Franchise, and the books and records of any corporation, limited liability company, or partnership that holds any ownership interest in the Regional Developer Franchise or Franchise Owner.   You agree to fully cooperate with our representatives and independent accountants we may hire to conduct any inspection or audit.   If the inspection or audit is made necessary by your failure to furnish any reports, supporting records, or other information or financial statements required by this Agreement, or to furnish those reports, records, information or financial statements on a timely basis, you agree to pay us all monies owed, plus interest, and reimburse us for the cost of such inspection or audit, including without limitation any attorneys' fees, accountants' fees, and travel expenses, room and board and applicable per diem charges for our employees or agents.   The above remedies are in addition to all our other remedies and rights under this Agreement and applicable law.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

14.     **TRANSFER REQUIREMENTS.**

14.1     **Organization**.  If you are a corporation, partnership, or limited liability company (or if this Agreement is Transferred (as defined herein) to a corporation, partnership or limited liability company with our approval), you represent and warrant to us that you are, and will continue to be throughout any Term of this Agreement, (i) duly organized and validly existing in good standing under the laws of the state of your incorporation, registration, or organization, (ii) qualified to do business in all states in which you are required to qualify, (iii) you have the authority to execute, deliver, and carry out all of the terms of this Agreement, and (iv) the only business you (i.e., the corporation, partnership, or limited liability company) will conduct will be the development, ownership, and operation of the Franchise and its corresponding Pilot Clinic.

14.2     **Interests in Franchise Owner; Reference to Exhibit A**.  You and each Principal Owner represent, warrant and agree that all "Interests" in Franchise Owner are owned in the amount and manner described in Exhibit 1.  No Interests in Franchise Owner will, during the term of this Agreement, be "public" securities (i.e., securities that require, for their issuance, registration with any state or federal authority).  (An "Interest" is defined to mean any shares, membership interests, or partnership interests of Franchise Owner and any other equitable or legal right in any of Franchise Owner's stock, revenues, profits, rights or assets.  When referring to Franchise Owner's rights or assets, an "Interest" means this Agreement, Franchise Owner's rights under and interest in this Agreement, any Massage Heights® franchise, or the revenues, profits or assets of any Massage Heights® franchise.)  You and each Principal Owner also represent, warrant, and agree that no Principal Owner's Interest has been given as security for any obligation (i.e., no one has a lien on a Principal Owner's Interest), and that no change will be made in the ownership of an Interest other than as expressly permitted by this Agreement or as we may otherwise approve in writing.  You and each Principal Owner agree to furnish us with such evidence as we may request from time to time to assure ourselves that the Interests of Franchise Owner and each of your Principal Owners remain as permitted by this Agreement, including a list of all persons or entities owning any Interest, as defined above.

14.3     **Transfer by Company**.  This Agreement is fully transferable by us and will inure to the benefit of any person or entity to whom it is transferred, or to any other legal successor to our interests in this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**14.4**    **No Transfer Without Approval**.   You understand and acknowledge that the rights and duties created by this Agreement are personal to you, and that we have entered into this Agreement in reliance on the individual or collective character, skill, aptitude, attitude, business ability, and financial capacity of you and your Principal Owners.   Accordingly, neither this Agreement, any part of your interest in it, nor any Interest (as defined in Paragraph 14.2) of Franchise Owner or a Principal Owner, may be Transferred (as defined below) without our advance written approval.   Any Transfer that is made without our approval will constitute a breach of this Agreement and convey no rights to or interests in this Agreement, in you, or the Regional Developer Franchise or Pilot Clinic.

As used in this Agreement the term "Transfer" means any voluntary, involuntary, direct or indirect assignment, sale, gift, exchange, grant of a security interest, or occurrence of any other event that would or might change the ownership of any Interest, and includes without limitation:  (i) the Transfer of ownership of capital stock, partnership interest or other ownership interest;  (ii) merger or consolidation, or issuance of additional securities representing an ownership interest in Franchise Owner;  (iii) sale of common stock of Franchise Owner sold pursuant to a private placement or registered public offering;  (iv) Transfer of an Interest in a divorce proceeding or otherwise by operation of law; or (v) Transfer of an Interest by will, declaration of or transfer in trust, or under the laws of intestate succession.

We will not unreasonably withhold consent to a Transfer of an Interest by a Principal Owner to a member of his or her immediate family, or to your key employees, so long as all Principal Owners together retain a "controlling Interest" (i.e., the minimum ownership percentage listed in Exhibit I), although we reserve the right to impose reasonable conditions on the Transfer as a requirement for our consent.

Interests owned by persons other than the Principal Owners ("minority owners") may be Transferred without our advance consent unless the Transfer would give that transferee and any person or group of persons affiliated or having a common interest with the transferee more than a collective twenty-five percent (25%) Interest in Franchise Owner, in which case our advance written approval of the Transfer must be obtained.   Your formal partnership, corporation or other formation documents and all stock certificates, partnership units or other evidence of ownership must recite or bear a legend reflecting the transfer restrictions of this Paragraph 14.4.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**14.5**    **Conditions for Approval of Transfer**.  If you and your Principal Owners are in full compliance with this Agreement, we will not unreasonably withhold our approval of a Transfer that meets all the applicable requirements of this Section 14.  The person or entity to whom you wish to make the Transfer, or its principal owners ("Proposed New Owner"), must be individuals of good moral character and otherwise meet our then applicable standards for Massage Heights® Regional Developers.   If you propose to Transfer this Agreement, the Regional Developer Franchise or its assets, or any Interest, or if any of your Principal Owners proposes to Transfer a controlling Interest in you or make a Transfer that is one of a series of Transfers which taken together would constitute the Transfer of a controlling Interest in you, then all of the following conditions must be met before or at the time of the Transfer:

(a)     the Proposed New Owner must have sufficient business experience, aptitude, and financial resources to operate the Regional Developer Franchise;

(b)     you must pay any amounts owed for purchases from us and our affiliates, and any other amounts owed to us or our affiliates which are unpaid;

(c)     the Proposed New Owner (if an individual), at least one of its owners, officers, or directors (if a corporation, partnership, or limited liability company), or Clinic Director (if any) has successfully completed our Initial Training, and be legally authorized and have all licenses necessary to perform the Sales Services and Support Services required to be provided by the Regional Developer Franchise.  The Proposed New Owner shall be responsible for the travel and living expenses (including all transportation costs, room, board and meals) of all attendees incurred during the Initial Training program;

(d)     if your lease for the Pilot Clinic or any Regional Office we require you to open requires it, the lessor must have consented to the assignment of the lease to the Proposed New Owner;

(e)     you must pay us a transfer fee in an amount equal to the greater of (i) $25,000, or (ii) ten percent (10%) of the initial Development Fee paid for the Regional Developer Franchise, and reimburse us for any reasonable expenses incurred by us in investigation and processing any Proposed New Owner where the Transfer is not consummated for any reason;

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(f)     you and your Principal Owners and your and their spouses must execute a general release (in a form satisfactory to us) of any and all claims against us, our affiliates, and our and our affiliates' respective officers, directors, employees, and agents;

(g)     we must approve the material terms and conditions of the proposed Transfer, including without limitation that the price and terms of payment are not so burdensome as to adversely affect the operation of the Franchise;

(h)     the Franchise shall have been placed in an attractive, neat, and sanitary condition.

(i)     you and your Principal Owners (or, in the case of Principal Owners making any such Transfer, those Principal Owners) must execute a non-competition agreement in favor of both us and the Proposed New Owner agreeing that for a period of one (1) year from the date of the Transfer neither of you will have any direct or indirect interest as a disclosed or beneficial owner, investor, partner, director, officer, manager, employee, consultant, representative, or agent, or in any other capacity, in any business (1) offering or selling products or services the same as or similar to those offered or sold by the Regional Developer Franchise, or a Massage Heights® Clinic, and (2) located within a fifteen (15) mile radius of your Regional Developer Franchise, any other Massage Heights® Franchises then in existence, or any site for which a Massage Heights® Franchise has been approved.

(j)     you and your Principal Owners must enter into an agreement with us providing that all obligations of the Proposed New Owner to make installment payments of the purchase price (and any interest accrued on it) to you or your Principal Owners will be subordinate to the obligations of the Proposed New Owner to pay any amounts payable under this Agreement or any new Regional Developer Agreement that we may require the Proposed New Owner to sign in connection with the Transfer.

(k)     the Regional Developer Franchise, Pilot Clinic, and any Regional Office we require you to open shall have been determined by us to contain all equipment and fixtures in good working condition, as were required when opened for business.  The Proposed New Owner shall have agreed, in writing, to make such reasonable capital expenditures to remodel, equip, modernize and redecorate the interior and exterior of the

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

premises in accordance with our then existing plans and specifications for a Pilot Clinic or Regional Office (as the case may be), and shall have agreed to pay our expenses for plan preparation or review, and site inspection.

(l)     Upon receiving our consent to the Transfer, the Proposed New Owner shall agree to assume all of your obligations under this Agreement in a form acceptable to us, or at our option, shall agree to execute a new Regional Developer Agreement with us in the form then being used by us.  We may, at our option, require that you guarantee the performance, and obligations of the Proposed New Owner.

(m)     You must have properly offered us the opportunity to exercise our right of first refusal as described below, and we must have then declined to exercise it.

**14.6    Right of First Refusal.**  If you or any of your Principal Owners wishes to Transfer any Interest, we will have a right of first refusal to purchase that Interest as follows. The party proposing the Transfer (the "transferor") must obtain a bona fide, executed written offer (accompanied by a "good faith" earnest money deposit of at least five percent (5%) of the proposed purchase price) from a responsible and fully disclosed purchaser, and must submit an exact copy of the offer to us.  You also agree to provide us with any other information we need to evaluate the offer, if we request it within fifteen (15) days of receipt of the offer.  We have the right, exercisable by delivering written notice to the transferor within thirty (30) days from the date of last delivery to us of the offer and any other documents we have requested, to purchase the Interest for the price and on the terms and conditions contained in the offer, except that we may substitute cash for any form of payment proposed in the offer, and will not be obligated to pay any "finder's" or broker's fees that are a part of the proposed Transfer.  We also will not be required to pay any amount for any claimed value of intangible benefits, for example, possible tax benefits that may result by structuring and/or closing the proposed Transfer in a particular manner or for any consideration payable other than the bona fide purchase price for the Interest proposed to be transferred.  (In fact, we may in our sole and absolute discretion withhold consent to any proposed Transfer if the offer directly or indirectly requires payment of any consideration other than the bona fide purchase price for the Interest proposed to be transferred.)  Our credit will be deemed equal to the credit of any other proposed purchaser, and we will have at least sixty (60) days to prepare for closing.  We will be entitled to all customary representations and

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

warranties given purchasers in connection with such sales.  If the proposed Transfer includes assets not related to the operation of the Regional Developer Franchise, we may purchase only the assets related to the operation of the Regional Developer Franchise or may also purchase the other assets.  (An equitable purchase price will be allocated to each asset included in the Transfer.)

If we do not exercise our right of first refusal, the transferor may complete the sale to the Proposed New Owner pursuant to and on the terms of the offer, as long as we have approved the Transfer as provided in this Section 14.  You must immediately notify us of any changes in the terms of an offer.  Any material change in the terms of an offer before closing will make it a new offer, revoking any previous approval or previously made election to purchase and giving us a new right of first refusal effective as of the day we receive formal notice of a material change in the terms.  If the sale to the Proposed New Owner is not completed within one hundred twenty (120) days after we have approved the Transfer, our approval of the proposed Transfer will expire.  Any later proposal to complete that proposed Transfer will be deemed a new offer, giving us a new right of approval and right of first refusal effective as of the day we receive formal notice of the new (or continuing) proposal.  We will not exercise a right of first refusal with respect to a proposed Transfer of less than a controlling interest to a member of a Principal Owner's immediate family, or your key employees.

14.7   **Death and Disability**.  Upon the death or permanent disability of you or a Principal Owner, the executor, administrator, conservator or other personal representative of the deceased or disabled person must Transfer the deceased or disabled person's Interest within a reasonable time, showing due diligence, not to exceed twelve (12) months from the date of death or permanent disability, to a person we have approved.  Such Transfers, including without limitation Transfers by a will or inheritance, will be subject to all the terms and conditions for assignments and Transfers contained in this Agreement.  Failure to so dispose of an Interest within the 12-month period of time will constitute grounds for termination of this Agreement.

14.8   **Effect of Consent to Transfer**.  Our consent to a proposed Transfer pursuant to this Section 14 will not constitute a waiver of any claims we may have against you or any Principal Owner, nor will it be deemed a waiver of our right to demand exact compliance with any of the terms or conditions of this Agreement by the Proposed New Owner.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

14.9   **Termination of the Franchise.** We have the right to terminate this Agreement effective upon delivery of notice of termination to you, if: (i) you do not develop or open the Regional Developer Franchise as provided in this Agreement; (ii) you abandon, surrender, transfer control of, lose the right to occupy the Pilot Clinic and/or any Regional Office we require you to open; or do not actively operate the Regional Developer Franchise and/or the Pilot Clinic; or the lease for the location of the Pilot Clinic and/or any Regional Office we require you to open is terminated for any reason; (iii) you or your Principal Owners assign or Transfer this Agreement, any Interest, or any assets of the Regional Developer Franchise without compliance with the provisions of Section 14; (iv) you are adjudged a bankrupt, become insolvent or make a general assignment for the benefit of creditors; (v) you use, sell, distribute or give away any unauthorized services or products; (vi) you or any of your Principal Owners are convicted of or plead no contest to a felony, or are convicted or plead no contest to any crime or offense that, in our sole and absolute discretion, is likely to adversely affect the reputation of the Regional Developer Franchise and/or Pilot Clinic and the goodwill associated with the Marks; (vii) you or any of your employees violate any law, ordinance or regulation, or otherwise operate the Regional Developer Franchise and/or Pilot Clinic in a manner that presents a health or safety hazard to your customers or the public; (viii) you do not pay when due any monies owed to us or our affiliates and do not make such payment within ten (10) days after written notice is given to you; (ix) you or any of your Principal Owners fail to comply with any other provision of this Agreement or any mandatory specification, standard or operating procedure within twenty (20) days after written notice of such failure to comply is given to you; or (x) you or any of your Principal Owners fail on three (3) or more separate occasions within any twelve (12) consecutive month period to submit when due financial statements, reports or other data, information or supporting records, to pay to us any amounts when due, or otherwise fail to comply with this Agreement, whether or not such failures to comply are corrected after notice is given to you or your Principal Owners.

In addition, if, in the opinion of our legal counsel, any provision of this Agreement is contrary to law, you and we agree to negotiate in good faith an amendment that would make this Agreement conform to the applicable legal requirements. If we are unable to reach an agreement or if fundamental changes to this Agreement are required to make it conform to the legal

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

requirements, then we reserve the right to terminate this Agreement upon written notice to you, in which case all of post-termination obligations set forth in Section 16 shall apply.

In the event that we terminate this Agreement under this Section or other applicable provisions of this Agreement, we shall be entitled to recover all costs, including attorneys' fees, incurred in connection with the termination.

15.    **RIGHTS AND OBLIGATIONS OF COMPANY AND FRANCHISE OWNER UPON TERMINATION OR EXPIRATION OF THE FRANCHISE.**

15.1    **Payment of Amounts Owed to Company**.  You agree to pay us within five (5) days after the effective date of termination or expiration of the Regional Developer Franchise, or any later date that the amounts due to us are determined, all amounts payable to us or our affiliates that are then unpaid.

15.2    **Marks**.  You agree that after the termination or expiration of the Regional Developer Franchise you will:

(a)    not directly or indirectly at any time identify any business with which you are associated as a current or former Massage Heights® franchisee;

(b)    not use any Mark or any colorable imitation of any Mark in any manner or for any purpose, or use for any purpose any trademark or other commercial symbol that suggests or indicates an association with us;

(c)    return to us or destroy (whichever we specify) all customer lists, forms and materials containing any Mark or otherwise relating to the Regional Developer Franchise or Pilot Clinic;

(d)    remove all Marks affixed to uniforms or, at our direction, cease to use those uniforms; and

(e)    take any action that may be required to cancel all fictitious or assumed name or equivalent registrations relating to your use of any Mark.

15.3    **De-Identification**.  If you retain possession of the premises of the Pilot Clinic and/or any Regional Office we require you to open, then you agree to completely remove or modify, at your sole expense, any part of the interior and exterior decor that we deem necessary to disassociate the premises with the image of a Massage Heights® Pilot Clinic or Regional

03-MH- Regional Developer Agreement                                    Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Office (as the case may be), including any signage bearing the Marks.  If you do not take the actions we request within thirty (30) days after receiving written notice from us, then we shall have the right to enter the premises and make the required changes at your expense, and you agree to reimburse us for those expenses on demand.

**15.4**   **Confidential Information**.   You agree that on termination or expiration of the Regional Developer Franchise, you will immediately cease to use any of the Confidential Information, and agree not to use it in any business or for any other purpose.  You further agree to immediately return to us all copies of the Regional Developer Manual and any Confidential Information or other confidential materials that we have lent or provided to you.

**15.5**   **Covenant Not to Compete**.   Upon the termination or expiration of this Agreement, you and your Principal Owners agree that for a period of five (5) years after the later of (i) the effective date of termination or expiration of this Agreement, and (ii) the date on which you stop operating the Regional Developer Franchise, neither you nor your Principal Owners will be employed by or have any direct or indirect interest (through a member of your immediate family, that of a Principal Owner, or otherwise) as a disclosed or beneficial owner, investor, manager, or consultant, in any business (1) offering products or services the same as or similar to those offered or sold by your Regional Developer Franchise or Massage Heights® Clinic Franchise, and (2) located at or within a radius of one hundred (100) miles of your Regional Territory, any other Massage Heights® Franchise then in existence, or a site for which a Massage Heights® Franchise has been approved.

**15.6**   **Company's Option to Purchase Franchise Assets**.   Upon the termination or expiration of the Regional Developer Franchise, we will have the option, but not the obligation, exercisable for thirty (30) days upon written notice of you, to (i) purchase at fair market value all of the assets of the Regional Developer Franchise, including all approved equipment, fixtures, furniture and signs and all supplies, materials and other items imprinted with any Mark; and (ii) take an assignment of the lease for the premises of the Pilot Clinic and/or any Regional Office we require you to open, and any other lease or concession agreement necessary for the operation of the Regional Developer Franchise.  If we cannot agree on the fair market value of the assets of the Regional Developer Franchise within a reasonable time, the value shall be determined by an average of the appraisals of two (2) independent appraisers, one of whom will be selected by you

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

and one whom will be selected by us.  If the appraisals differ by more than ten percent (10%), then you and we will either mutually agree on a value, or if you and we cannot agree, our appraisers will select a third appraiser whose determination of market value will be final.  We shall not assume any liabilities, debts or obligations of the Regional Developer Franchise in connection with any such transfer, and you will indemnify us from any and all claims made against us arising out of any such transfer of the assets of the Regional Developer Franchise.  All parties will comply with all applicable laws in connection with any such transfer, and you agree to cooperate with us in complying with all such requirements.

The closing shall occur within thirty (30) days after we exercise our option to purchase the assets or such later date as may be necessary to comply with applicable bulk sales or similar laws.  At the closing, you and we both agree to execute and deliver all documents necessary to vest title in the purchased assets and/or real property in us free and clear of all liens and encumbrances, except those assumed by us and/or to effectuate the lease of the premises of the Pilot Clinic and/or any Regional Office we require you to open.  You also agree to provide us with all information necessary to close the transaction.  We reserve the right to assign our option to purchase the Regional Developer Franchise or designate a substitute purchaser.  By signing this Agreement, you irrevocably appoint us as your lawful attorney-in-fact with respect to the matters contemplated by this Paragraph 16.6, with full power and authority to execute and deliver in your name all documents required to be provided by you under this Paragraph in the event you do not provide them in a timely and proper manner.  You also agree to ratify and confirm all of our acts as your lawful attorney-in-fact, and indemnify and hold us harmless from all claims, liabilities, losses or damages suffered by us in so doing.

Once we give notice that we will purchase the Regional Developer Franchise assets, we will have the right to immediately take over the operations of the Regional Developer Franchise and/or Pilot Clinic.  From the date we take over the Regional Developer Franchise and/or Pilot Clinic to the date of closing of the purchase of the Regional Developer Franchise assets, we will be entitled to use any compensation payable to you under this Agreement and any gross revenues of the Pilot Clinic to operate the Regional Developer Franchise or Pilot Clinic, as the case may be, and to retain as a management fee up to ten percent (10%) of the balance of such compensation and gross revenues after operating expenses are paid.  The term "gross revenues" shall, for purposes of this Agreement, mean the total of all revenue and receipts derived from the

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

operation of the Regional Developer Franchise, including all amounts received as compensation under this Agreement, or through the business the Regional Developer Franchise conducts (such as revenue derived from products sales, whether in cash or by check, credit card, debt card, barter or exchange, or other credit transactions); and excludes only any sales taxes collected from customers and paid to the appropriate taxing authority, and any customer refunds and credits the Regional Developer Franchise actually makes.

### 15.7  Continuing Obligations

All obligations of this Agreement (whether yours or ours) that expressly or by their nature survive the expiration or termination of this Agreement will continue in full force and effect after and notwithstanding its expiration or termination until they are satisfied in full or by their nature expire.

### 15.8  Management of the Franchise

In the event that we are entitled to terminate this Agreement in accordance with Section 15 above or any other provision of this Agreement, and in addition to any other rights or and remedies available to us in the event of such termination, we may, but need not, assume the Regional Developer Franchise's management. All gross revenues from the Regional Developer Franchise's operation while we assume its management will be kept in a separate account, and all of the Regional Developer Franchise's expenses will be charged to this account. We may charge you a reasonable management fee in an amount that we may specify, up to ten percent (10%) of the Regional Developer Franchise's gross revenues, plus our direct out-of-pocket costs and expenses, if we assume management of the Regional Developer Franchise under this Paragraph. We have a duty to utilize only our reasonable efforts in managing the Regional Developer Franchise, and will not be liable to you for any debts, losses, or obligations the Regional Developer Franchise incurs, or to any of your creditors for any products or services the Regional Developer Franchise purchases, while we manage it pursuant to this Paragraph.

## 16.  ENFORCEMENT.

### 16.1  Invalid Provisions; Substitution of Valid Provisions.

To the extent that the non-competition provisions of Sections 9.3, 14.5, or 16.5 are deemed unenforceable because of their scope in terms of area, business activity prohibited, or length of time, you agree that the

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

invalid provisions will be deemed modified or limited to the extent or manner necessary to make that particular provisions valid and enforceable to the greatest extent possible in light of the intent of the parties expressed in such provisions under the laws applied in the forum in which we are seeking to enforce such provisions.

If any lawful requirement or court order of any jurisdiction (i) requires a greater advance notice of the termination or non-renewal of this Agreement than is required under this Agreement, or the taking of some other action which is not required by this Agreement; or (ii) makes any provision of this Agreement or any specification, standard or operating procedure we prescribed invalid or unenforceable, then the advance notice and/or other action required or revision of the specification, standard or operating procedure will be substituted for the comparable provisions of this Agreement in order to make the modified provision enforceable to the greatest extent possible.  You agree to be bound by the modification to the greatest extent lawfully permitted.

**16.2    Unilateral Waiver of Obligations**.  Either you or we may, by written notice, unilaterally waive or reduce any obligation or restriction of the other party under this Agreement. The waiver or reduction may be revoked at any time for any reason on ten (10) days' written notice to the other party.

**16.3    Written Consents from Us**.  Whenever this Agreement requires our advance approval or consent, you agree to make a timely written request for it.  Our approval or consent will not be valid unless it is in writing.

**16.4    Lien**.  To secure your performance under this Agreement and indebtedness for all sums due us or our affiliates, we shall have a lien upon, and you hereby grant us a security interest in, the following collateral and any and all additions, accessions, and substitutions to or for it and the proceeds from all of the same: (a) all inventory, equipment, furnishings, fixtures, and supplies now owned or after-acquired by you and the Franchise, including but not limited to all inventory, equipment, furnishings, fixtures, and supplies transferred to or acquired by you in connection with this Agreement; (b) all accounts of you and/or the Franchise now existing or subsequently arising, together with all interest in you and/or the Franchise, now existing or subsequently arising, together with all chattel paper, documents, and instruments relating to such accounts; (c) all contract rights of you and/or the Franchise, now existing or subsequently

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

arising; and (d) all general intangibles of you and/or the Franchise, now owned or existing, or after-acquired or subsequently arising.   You agree to execute such financing statements, instruments, and other documents, in a form satisfactory to us, that we deem necessary so that we may establish and maintain a valid security interest in and to these assets.

**16.5**   **No Guarantees**.  If in connection with this Agreement we (i) provide to you any waiver, approval, consent, or suggestion, or (ii) neglect or delay our response or deny any request for any such waiver, approval, consent, or suggestion, then we will not be deemed to have made any warranties or guarantees upon which you may rely, and will not assume any liability or obligation to you.

**16.6**   **No Waiver**.  If at any time we do not exercise a right or power available to us under this Agreement or do not insist on your strict compliance with the terms of the Agreement, or if there develops a custom or practice that is at variance with the terms of this Agreement, then we will not be deemed to have waived our right to demand exact compliance with any of the terms of this Agreement at a later time.  Similarly, our waiver of any particular breach or series of breaches under this Agreement or of any similar term in any other agreement between us and any franchisee will not affect our rights with respect to any later breach.  It will also not be deemed to be a waiver of any breach of this Agreement for us to accept payments that are due to us under this Agreement.

**16.7**   **Cumulative Remedies**.   Except as provided herein, the rights and remedies specifically granted to either you or us by this Agreement will not be deemed to prohibit either of us from exercising any other right or remedy provided under this Agreement or permitted by law or equity.

**16.8**   **Specific Performance; Injunctive Relief**.  Provided we give you the appropriate notice, we will be entitled, without being required to post a bond, to the entry of temporary and permanent injunctions and orders of specific performance (i) to enforce the provisions of this Agreement relating to your use of the Marks and your non-disclosure and non-competition obligations under this Agreement, (ii) to prohibit any act or omission by you or your Principal Owners, officers, directors, employees, independent contractors, or agents that constitutes a violation of any applicable law, ordinance or regulation, constitutes a danger to the public, or may impair the goodwill associated with the Marks or any Massage Heights® franchise, or

Ex. 4, Pls.’ State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(iii) to prevent any other irreparable harm to our interests.  If we obtain an injunction or order of specific performance, you agree to pay us an amount equal to the total of our costs of obtaining it, including without limitation reasonable attorneys' and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, and any damages we incur as a result of the breach of any such provision.  You further agree to waive any claims for damage in the event there is a later determination that an injunction or specific performance order was issued improperly.

You may not make, and hereby waive, any claim for monetary damages, and may not claim any monetary damages by way of set-off, counterclaim, or defense, based upon any claim or assertion by you that we have unreasonably withheld or delayed any consent or approval to a proposed act by you under any provision of this Agreement.  Your sole remedy for any such claim shall be an action or proceeding to enforce any such provision, specific performance, or a declaratory judgment.

16.9    **Arbitration**.  Except insofar as we elect to enforce this Agreement or to seek temporary or permanent injunctive relief as provided above, all controversies, disputes or claims arising between us, our affiliates, owners, officers, directors, agents and employees (in their representative capacity) and you (and your Principal Owners and guarantors) arising out of or related to: (i) this Agreement or any provision thereof or any related agreement (except for any lease or sublease with us or any of our affiliates); (ii) the relationship of the parties hereto; (iii) the validity of this Agreement or any related agreement, or any provision thereof; or (iv) any specification, standard or operating procedure relating to the establishment or operation of the Regional Developer Franchise, shall be submitted for arbitration to be administered by the office of the American Arbitration Association.  Such arbitration proceedings shall be conducted in Bexar County, Texas, and, except as otherwise provided in this Agreement, shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association then in effect.  The arbitrator shall have the right to award or include in his award any relief which he or she deems proper in the circumstances, including without limitation, money damages (with interest on unpaid amounts from date due), specific performance, injunctive relief, attorneys' fees and costs.  The award and decision of the arbitrator shall be conclusive and binding on all parties to this agreement and judgment on the award may be entered in any court of competent jurisdiction.  Each party waives any right to contest the validity or enforceability of such an

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

award.  The provisions of this Paragraph are intended to benefit and limit third party non-signatories and will continue in full force and effect subsequent to and notwithstanding expiration or termination of this agreement.  The parties agree that arbitration shall be conducted on an individual, not a class-wide basis, and that any such arbitration shall not be consolidated with any other arbitration proceeding.

16.10  **Waiver of Punitive Damages and Jury Trial; Limitation of Actions**.  Except with respect to your obligations to indemnify us and claims that we may bring under Sections 7, 9, 15, or 16 of this Agreement, and except for claims arising from your non-payment or underpayment of any amounts owed to us or our affiliates, (1) any and all claims arising out of or related to this Agreement or the relationship between you and us shall be barred, by express agreement of the parties, unless an action or proceeding is commenced within two (2) years from the date the cause of action accrues; and (2) you and we hereby waive to the fullest extent permitted by law, any right to or claim for any punitive or exemplary damages against the other, and agree that, except to the extent provided to the contrary in this Agreement, in the event of a dispute between you and us, each party will be limited to the recovery of any actual damages sustained by it.  You and we irrevocably waive trial by jury in any action, proceeding or counterclaim, whether at law or in equity, brought by either you or us.

16.11  **Governing Law/Consent To Jurisdiction**.  Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §§ 1051 et seq.) and except for all issues relating to arbitrability or the enforcement or interpretation of the agreement to arbitrate set forth in Section 17.9 that will be governed by the United States Arbitration Act (9 U.S.C. § 1 et seq.) and the federal common law relating to arbitration, this Agreement and the Regional Developer Franchise will be governed by the internal laws of the State of Texas (without reference to its choice of law and conflict of law rules), except that the provisions of any Texas law relating to the offer and sale of business opportunities or franchises or governing the relationship of a franchisor and its franchisees will not apply unless their jurisdictional requirements are met independently without reference to this Paragraph.  You agree that we may institute any action against you arising out of or relating to this Agreement (which is not required to be arbitrated hereunder or as to which arbitration is waived) in any state or federal court of general jurisdiction in Bexar County, Texas, and you irrevocably submit to the jurisdiction of

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

such courts and waive any objection you may have to either the jurisdiction or venue of such court.

**16.12 Binding Effect**. This Agreement is binding on, and will inure to the benefit of, our successors and assigns, and, subject to the transfers provisions contained in this Agreement, will be binding on and inure to the benefit of your successors and assigns, and if you are an individual, on and to the benefit of your heirs, executors and administrators.

**16.13 No Liability to Others; No Other Beneficiaries**. Except as specifically stated elsewhere in this Agreement, we will not, because of this Agreement or by virtue of any approvals, advice or services provided to you, be liable to any person or legal entity who is not a party to this Agreement, and no other party shall have any rights because of this Agreement.

**16.14 Construction**. All headings of the various Sections and Paragraphs of this Agreement are for convenience only and do not affect the meaning or construction of any provision. All references in this Agreement to masculine, neuter or singular usage will be construed to include the masculine, feminine, neuter or plural, wherever applicable. Except where this Agreement expressly obligates us to reasonably approve or not unreasonably withhold our approval of any of your actions or requests, we have the absolute right to refuse any request by you or to withhold our approval of any action or omission by you. The term "affiliate" as used in this Agreement is applicable to any company directly or indirectly owned or controlled by you or your Principal Owners, or any company directly or indirectly owned or controlled by us that sells products or services to, or otherwise transacts business with, you.

**16.15 Joint and Several Liability**. If two (2) or more persons are the Regional Developer under this Agreement, their obligation and liability to us shall be joint and several.

**16.16 Multiple Originals**. This Agreement will be executed using multiple copies, each of which will be deemed an original.

**16.17 Timing Is Important**. Time is of the essence of this Agreement. ("Time is of the essence" is a legal term that emphasizes the strictness of time limits. In this case, it means it will be a material breach of this Agreement to fail to perform any obligation within the time required or permitted by this Agreement.)

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

    **16.18**  **Independent Provisions**.  The provisions of this Agreement are deemed to be severable.  In other words, the parties agree that each provision of this Agreement will be construed as independent of any other provision of this Agreement.

17.    <u>NOTICES AND PAYMENTS.</u>

    All written notices, reports and payments permitted or required under this Agreement or by the Regional Developer Manual will be deemed delivered: (i) at the time delivered by hand; (ii) one (1) business day after transmission by telecopy, facsimile or other electronic system; (iii) one (1) business day after being placed in the hands of a reputable commercial courier service for next business day delivery; or (iv) three (3) business days after placed in the U.S. mail by Registered or Certified Mail, Return Receipt Requested, postage prepaid; and addressed to the party to be notified or paid at its most current principal business address of which the notifying party has been advised, or to any other place designated by either party.  Any required notice, payment or report which we do not actually receive during regular business hours on the date due (or postmarked by postal authorities at least two (2) days before it is due) will be deemed delinquent.  Notice shall be sent to the following addresses or facsimile numbers:

| To us: Wayne Evans | Copy to: H. Michael Drumm |
|---|---|
| Massage Heights Corporate LLC | Moye White LLC |
| 13750 U S Hwy 281 N, Suite 230 | 1400 16th Street |
| San Antonio, Tx 78232 | Denver, Co 80202 |

To you: Steven McFadden      Copy to:_____
       Relax Investments, L.L.C.   _____
       1703 Burr Oaks Drive      _____
       West Des Moines, Iowa 50266  _____

18.    <u>**INDEPENDENT PROFESSIONAL JUDGMENT OF YOU AND YOUR CLINIC DIRECTOR.**</u>

    The parties acknowledge and agree that the specifications, standards and operating procedures related to the services and products offered by the Regional Developer Franchise and Pilot Clinic are not intended to limit or replace your or your Clinic Director's (if any) professional judgment in supervising and performing your duties under this Agreement.  The specifications, standards and operating procedures represent only the minimum standards, and

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

you and your Clinic Director (if any) are solely responsible for ensuring that the Regional Developer Franchise performs its duties in accordance with all applicable requirements and standards of care. Nothing in this Agreement shall obligate you or your Clinic Director (if any) to perform any act that is contrary to your or his or her professional judgment; provided, however, that you or your Clinic Director (if any) must notify us immediately upon your or your Clinic Director's (if any) determination that any specification, standard or operating procedure is contrary to your or his or her professional judgment.

19.     **ENTIRE AGREEMENT; MODIFICATION.**

This Agreement, together with the introduction and exhibits to it, constitutes the entire agreement between us, and there are no other oral or written understandings or agreements between us concerning the subject matter of this agreement. This Agreement may be modified only by written agreement signed by both you and us, except that we may modify the Regional Developer Manual and/or Operations Manual for your Pilot Clinic at any time as provided herein or the Franchise Agreement for your Pilot Clinic.

The parties to this Agreement now execute and deliver this Agreement in multiple counterparts as of the Agreement Date.

MASSAGE HEIGHTS® CORPORATE, LLC

By: _____
Title: _____
        PRESIDENT

FRANCHISE OWNER
RELAX INVESTMENTS, L.L.C.

By: _____
     Steven McFadden, Manager

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### EXHIBIT 1 TO THE MASSAGE HEIGHTS® CORPORATE, LLC

### REGIONAL DEVELOPER AGREEMENT

### REGIONAL TERRITORY

1-2    **Regional Territory**.  The Regional Territory referred to in Section 2.3 of this Agreement shall be the following geographic area:  DMA #32 consisting of Iowa / Omaha, NE

_____

_____

_____

_____

_____

_____

_____

_____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## EXHIBIT 2 TO THE MASSAGE HEIGHTS® CORPORATE, LLC

### REGIONAL DEVELOPER AGREEMENT

### OWNERSHIP INTERESTS IN FRANCHISE OWNER

2-1.    Full name and address of the owners of, and a description of the type of, all currently held Interests in Franchise Owner:

2-2.    Minimum individual and aggregate Principal Owner ownership percentage required at all times during the term of this Agreement:

2-2.1    During the term of this Agreement, the Principal Owners together must have a "controlling interest," (i.e., a 51 percent "ownership interest" of the equity, voting control and profits) in Franchise Owner.

2-2.2    Unless otherwise permitted, the required minimum "ownership interest" of each Principal Owner during the term of this Agreement is:

| Name | Ownership Percentage |
| --- | --- |
| Steven McFadden | 51% |
| Trisha McFadden | 49% |
|  |  |

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## OWNER'S GUARANTY AND ASSUMPTION OF OBLIGATIONS

In consideration of, and as an inducement to, the execution of the foregoing Regional Developer Agreement dated _JULY 9TH_, 20_07_ ("Agreement") by Massage Heights® Corporate, LLC, a Texas limited liability company ("us"), and Relax Investments, L.L.C. as Owner, each of the undersigned owners of the Franchise Owner and their respective spouses ("you", for purposes of this Guaranty only), hereby personally and unconditionally (1) guarantees to us and our successors and assigns that the Franchise Owner will punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and (2) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, including without limitation, monetary obligations, the obligations to take or refrain from taking certain actions and arbitration of disputes.

Each of you waives (1) protest and notice of default, demand for payment or nonperformance of any obligations guaranteed by this Guaranty; (2) any right you may have to require that an action be brought against Franchise Owner or any other person as a condition of your liability; (3) all right to payment or reimbursement from, or subrogation against, the Franchise Owner which you may have arising out of your guaranty of the Franchise Owner's obligations; and (4) any and all other notices and legal or equitable defenses to which you may be entitled in your capacity as guarantor.

Each of you consents and agrees that (1) your direct and immediate liability under this Guaranty shall be joint and several; (2) you will make any payment or render any performance required under the Agreement on demand if Franchise Owner fails or refuses to do so when required; (3) your liability will not be contingent or conditioned on our pursuit of any remedies against Franchise Owner or any other person; (4) your liability will not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which we may from time to time grant to Franchise Owner or to any other person, including without limitation, the acceptance of any partial payment or performance, or the compromise or release of any claims; and (5) this Guaranty will continue and be irrevocable during the term of the Agreement and afterward for so long as the Franchise Owner has any obligations under the Agreement.

If we are required to enforce this Guaranty in a judicial or arbitration proceeding, and prevail in such proceeding, we will be entitled to reimbursement of our costs and expenses,

Ex. 4, Pls.' State Petition and Exhibits

including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators' and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, whether incurred prior to, in preparation for or in contemplation of the filing of any such proceeding.  If we are required to engage legal counsel in connection with any failure by you to comply with this Guaranty, you agree to reimburse us for any of the above-listed costs and expenses incurred by us.

This Guaranty is now executed as of the Agreement Date.

OWNER:                                                    OWNER'S SPOUSE:

_____                    _____
Steven McFadden                                      Trisha McFadden
OWNER:                                                    OWNER'S SPOUSE:

_____                    _____

OWNER:                                                    OWNER'S SPOUSE:

_____                    _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

<u>EXHIBIT D</u>

OPERATIONS MANUAL TABLE OF CONTENTS

Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits



|  |  |
|---|---|
| | Massage Heights® Corporate, LLC<br>a Texas limited liability company<br>13750 U. S. Hwy. 281 North, Suite 230<br>San Antonio, TX  78232<br>(210) 402-0777<br>www.massageheights.com |

MASSAGE HEIGHTS

## Franchise Operations Manual Table of Contents

The following table is a listing of the topics covered in the Franchise Operations Manual. We reserve the right to add topics to the table at our discretion.

**INTRODUCTION TO THE MANUAL**
　　Purpose of the Manual
　　Ownership of the Manual
　　Importance of Confidentiality
　　Keeping the Manual Current
　　Submitting Suggestions
　　Disclaimer

**INTRODUCTION TO YOUR FRANCHISE SYSTEM**
　　Welcome Letter
　　History of the Company
　　Who to Call
　　Overview of Services Provided to Franchisees
　　Overview of Your Responsibilities
　　Visits from Us

**PRE-OPENING PROCEDURES**
　　Establishment of Business Form
　　Site Selection Process
　　Licenses, Permits and Taxes
　　Training
　　Setting Up Your Clinic
　　POS and Computer Systems
　　Sign Requirements
　　List of Approved Suppliers
　　Initial Inventory and Supplies
　　Required Items
　　Utilities / Services
　　Uniforms
　　Bank Accounts

Ex. 4, Pls.' State Petition and Exhibits

Insurance Coverage
Grand Opening
The First Company Meeting
Pre-Opening Checklist

**PERSONNEL**
Employment Law Basics
Preparing to Hire Your First Employee
Job Responsibilities and Ideal Employee Profiles
Job Descriptions
Recruiting Employees
Requirements to Advertise Open Positions
Job Applications
Interviewing Job Applicants
Background Checks on Job Applicants
Pre-Employment Testing
Miscellaneous Hiring Issues
New Employee Paperwork
Additional Steps in Hiring Process
New Employee Orientation
New Employee Training
Personnel Policies
Employee Management Forms
Employee Morale / Motivation
Performance Evaluations
Resignation / Termination
Post-Separation Procedures
Summary of Good Employee Management Practices
Getting Legal Help with Employment Law Issues

**DAILY OPERATING PROCEDURES**
Required Days / Hours of Operation
Customer Service Procedures
Miscellaneous Customer Services
Administrative Procedures
Chain of Command
Suggestive Selling Techniques
Merchandising Procedures
Treatment Room Preparation Procedures
Opening / Closing Checklists
Transacting Sales
Gift Certificates
Inventory Management
Operational and Financial Reporting
Franchise Fees and Reporting Requirements
Loss Prevention Techniques

Ex. 4, Pls.' State Petition and Exhibits

Required Cleaning and Maintenance
Safety Procedures

**SALES PROCEDURES**
The Sales Process
Understanding Your Competition
Competitive Advantages

**MARKETING**
Promoting Your Business in Your Area
Required Marketing Expenditures
Local Marketing
Public Relations / Community Involvement
Obtaining Marketing Approval

**ADDITIONAL RESOURCES**
Web Sites for Small Businesses
Web Sites for Organizations
Web Sites for Employment Laws
Web Site for Tax Information

**MANAGEMENT DOCUMENTS**

Total Pages: 215

Ex. 4, Pls.' State Petition and Exhibits

## EXHIBIT E

REGIONAL DEVELOPER MANUAL TABLE OF CONTENTS

Ex. 4, Pls.' State Petition and Exhibits



MASSAGE HEIGHTS

Massage Heights® Corporate, LLC
a Texas limited liability company
13750 U. S. Hwy. 281 North, Suite 230
San Antonio, TX  78232
(210) 402-0777
www.massageheights.com

# Regional Developer's Operations Manual

The following table is a listing of the topics covered in the Regional Developer's Operations Manual. We reserve the right to add topics to the table at our discretion.

SECTION I: INTRODUCTION
A.      Mission Statement
B.      Values & Philosophies
C.      Selling the Massage Heights™ Franchise
D.      The Regional Office
E.      Staffing
F.      Insurance

SECTION II: REGIONAL RESPONSIBILITIES
A.      Responsibilities
B.      Regional Developer's Obligations

SECTION III: FRANCHISE MARKETING
A.      Understanding the Industry
B.      Marketing Groups
C.      Marketing Development Plan
D.      Legal Requirements
E.      Franchise Sales Process

SECTION IV: FRANCHISE ADVERTISING
A.      National Advertising
B.      Regional & Local Funds
C.      Advertising Agency

SECTION V: FRANCHISE ADMINISTRATION
A.      Franchise Agreement
B.      UFOC
C.      Franchise Application & Approval
D.      Administrative Procedures
E.      Regional Communication
F.      Monthly Activity Report

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

SECTION VI: BUSINESS DEVELOPMENT & TRAINING
A.      Start-Up Services
B.      Field Services
C.      Training

SECTION VII: FRANCHISE RELATIONS
A.      Franchise Owners Advisory Council (FOAC)
B.      Sample FOAC Agenda
C.      National Advisory Council (NAC)

SECTION VIII: ACCOUNTING
A.      Tax Reporting Summary
B.      Fees and Commissions
C.      Files and Records
D.      Collections
E.      Accounting to Massage Heights™

SECTION IX: TECHNOLOGY
A.      Hardware
B.      Software

SECTION X: TROUBLESHOOTING GUIDE
A.      20 Common Mistakes in the Sales Process

SECTION XI: APPENDICES
A.      The Business Success Checklist
B.      How to Keep Yourself Motivated
C.      How to Successfully Deal With People

Total Pages: 171

Ex. 4, Pls.' State Petition and Exhibits

## EXHIBIT F

### LIST OF MASSAGE HEIGHTS® FRANCHISEES

**Clinic Franchisees**

We currently have the following Clinic franchises:

Samantha Aguirre
Medical Center
(Huebner Square)
9386 Huebner Road, Suite 104
San Antonio, TX 78240
(210) 877-9014
saguirre@massageheights.com

Mike and Trish Laramie
Lakeline/Plaza Volente Shopping Center
11521 North FM 620, Suite 925
Austin, TX 78726
(512) 331-6004
mlaramie@massageheights.com
tlaramie@massageheights.com

George and Margaret Herrmann
Vintage Plaza
2711 La Frontera Blvd., Suite 240
Round Rock, TX 78681
(215) 844-2558
gherrmann@massageheights.com
mherrmann@massageheights.com

Don and Christine Wright
The Plaza at Avery Ranch
14900 Avery Ranch Blvd., Suite A-20
Austin, Texas 78717
(512) 716-1303
dwright@massageheights.com
cwright@massageheights.com

Don and Christine Wright
Wolf Ranch
1013 West University Ave., Suite 150
Georgetown, Texas  78626
(512) 930-0888
dwright@massageheights.com

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

cwright@massageheights.com

Bret Franson
Phillip Campbell
Bob Duncan
The Oaks at Green Valley
3820 FM 3009, Suite 120
Schertz, Texas 78154
(210) 658-5689
bfranson@massageheights.com

Clay Hancock
Anna Segura
Bandera at 1604
H.E.B. Center
11654 Bandera Road
Suite 1001
San Antonio, Texas 78250
(210) 681-7091
asegura@massageheights.com
chancock@massgeheights.com

Clay Hancock
Anna Segura
The Arbor at Thousand Oaks
3030 Thousand Oaks
San Antonio, Texas 78247
(210) 494-7359
asegura@massageheights.com
chancock@massgeheights.com

Clay Hancock
Anna Segura
The Rim Shopping Center
I.H. 10 W. at La Cantera
San Antonio, Texas 78250
chancock@massageheights.com
asegura@massageheights.com

Clay Hancock
Anna Segura
The Collection
7959 Broadway, Suite 508
San Antonio, Texas 78209
chancock@massageheights.com
asegura@massageheights.com

Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Marx Lim
Nacogdoches Crossing
6826 N. Loop 1604 East
San Antonio, Texas 78247
(210) 655-7529
mlim@massageheights.com

Marx Lim
The Village at Stone Oak
Hwy 281 at Stone Oak Pkwy
San Antonio, Texas 78258
mlim@massageheights.com

## Regional Developers

We currently have no Regional Developers.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### EXHIBIT G

### FINANCIAL STATEMENTS



Transmittal Letter

Massage Heights Corporate, LLC
13750 US Highway 281 North, Suite 230
San Antonio, Texas 78232

We have compiled the accompanying Opening Statement of Assets, Liabilities and Capital of
Massage Heights Corporate, LLC as of January 10, 2007 in accordance with Statement on
Standards for Accounting and Review Services issued by the American Institute of Certified
Public Accountants.

A compilation is limited to presenting in the form of financial statements information that is the
representation of management and members. We have not audited or reviewed the
accompanying financial statement and, accordingly, do not express an opinion or any form of
assurance on it

Management has elected to omit substantially all of the disclosures required by the generally
accepted accounting principles. If the omitted disclosures were included in the financial
statement they might influenced the user's conclusions about the company's financial position.
Accordingly this financial statement is not designed for those not informed about these matters.

Cordially,

*Padgett Business Services of San Antonio*
Padgett Business Services of San Antonio
January 10, 2007

05-Franchise Exhibits G                                                         Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## EXHIBIT H

### GENERAL RELEASE AGREEMENT

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## MASSAGE HEIGHTS® CORPORATE, LLC
## GENERAL RELEASE AGREEMENT
### (for Regional Developer Franchises)

THIS GENERAL RELEASE AGREEMENT ("Release") is made and entered into this _____ day of _____, 200__, by and between Massage Heights® Corporate, LLC, a Texas limited liability company ("**Franchisor**"), and _____, a _____ corporation/limited liability company/partnership (circle one) ("**Franchisee**"), and each shareholder/member/partner of Franchisee and his or her spouse (individually, an "**Owner**," and collectively, the "**Owners**") (collectively, Franchisor, Franchisee, and the Owners are referred to hereinafter as the "**Parties**").

WITNESSETH

WHEREAS, the Parties previously entered into that certain Regional Developer Agreement dated _____, 20__ (the "**Agreement**"), granting Franchisee a single Regional Developer franchise of Franchisor for a specific Term (as defined in the Agreement); and

WHEREAS, Franchisee desires to renew the Agreement for an additional Term (as defined in the Agreement); and

WHEREAS, Section 2.4(d) of the Agreement requires Franchisee and each of its Owners and their respective spouses to execute, in favor of Franchisor and its officers, directors, agents, and employees, and Franchisor's affiliates and their officers, directors, agents, and employees, as a condition to renew the Agreement, a general release from liability of all claims that Franchisee, its Owners, and their respective spouses may have against Franchisor and/or its officers, directors, employees, and agents, and/or Franchisor's affiliates and/or their respective officers, directors, employees, and agents; and

WHEREAS, the Parties desire to enter into this Release to comply with the requirements of the Agreement and preserve Franchisee's eligibility to renew the Agreement.

NOW, THEREFORE, in consideration of the mutual agreements contained herein and other valuable consideration, the Parties hereby agree as follows:

1.    Recitals.  The foregoing Recitals are incorporated into and made part of this Release.

2.    Release.  Franchisee, each Owner and his or her spouse, and their present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

through them (the **"Releasing Entities"**), hereby fully release Franchisor and its present or former officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, and Franchisor's affiliates and their respective present or former officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through Franchisor (the **"Released Entities"**) from any and all liabilities, claims, demands, debts, damages, obligations and causes of action of any nature or kind, whether presently known or unknown, which the Releasing Entities may have against the Released Entities as of the date this Agreement is executed

3. Miscellaneous.

A. This Release contains the entire agreement and representations between the Parties hereto with respect to the subject matter hereof. This Release supersedes and cancels any prior understanding or agreement between the parties hereto whether written or oral, express or implied. No modifications or amendments to this Release shall be effective unless in writing, signed by all Parties.

B. In the event any provision hereof, or any portion of any provision hereof shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality, or unenforceability shall not affect the remaining portion of any provision, or of any other provision hereof, and each provision of this Agreement shall be deemed severable from all other provisions hereof.

C. This Release shall be governed by the laws of the State of Texas. Any litigation or court action arising under or related to this Release shall be filed in state or federal court in Bexar County, Texas.

D. In the event a court action is brought to enforce or interpret this Release, the prevailing Party in that proceeding or action shall be entitled to reimbursement of all of its legal expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred. The prevailing Party shall be entitled to reimbursement of all such expenses both in the initial proceeding or action and on any appeal therefrom.

E. This Release is binding on the Parties hereto and their respective successors, heirs, beneficiaries, agents, legal representatives, and assigns, and on any other persons claiming a right or interest through the Parties.

F. This Release may be executed in any number of counterparts, all of which shall be deemed to constitute one and the same instrument, and each counterpart shall be deemed an original.

IN WITNESS WHEREOF, the Parties hereto affix their signatures and execute this Release as of the day and year first above written.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**FRANCHISOR:**

**MASSAGE HEIGHTS® CORPORATE, LLC**
**a Texas limited liability company**

By:_____
Its:_____

**FRANCHISEE:**

By:_____
Title:_____

**OWNERS:**

| | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____% |
| | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date:_____, 200 | |

[The remainder of this page is intentionally left blank]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

|  | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
| | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200_ | |

|  | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
| | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200_ | |

[The remainder of this page is intentionally left blank]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

| | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
| | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200__ | |

| | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
| | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200__ | |

[The remainder of this page is intentionally left blank]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

| | Owner's Residential Address: | Owner's %<br>Ownership: |
|---|---|---|
| _____<br>Signature of Owner | _____ | |
| _____<br>Printed/Typed Name of Owner | _____ | _____ % |
| | Owner's Title/Position with Franchisee: | |
| _____<br>Signature of Owner's Spouse | _____ | |
| _____<br>Printed/Typed Name of Spouse | Date: _____, 200___ | |

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

MASSAGE HEIGHTS® CORPORATE, LLC

GENERAL RELEASE AGREEMENT
(for Clinic Franchises)

THIS GENERAL RELEASE AGREEMENT ("Release") is made and entered into this _____ day of _____, 200__, by and between Massage Heights® Corporate, LLC, a Texas limited liability company ("Franchisor"), and _____, a _____ corporation/limited liability company/partnership (circle one) ("Franchisee"), and each shareholder/member/partner of Franchisee and his or her spouse (individually, an "Owner," and collectively, the "Owners") (collectively, Franchisor, Franchisee, and the Owners are referred to hereinafter as the "Parties").

WITNESSETH

WHEREAS, the Parties previously entered into that certain Franchise Agreement dated _____, 20___ (the "Agreement") granting Franchisee a single Business franchise of Franchisor for a specific Term (as defined in the Agreement); and

WHEREAS, Franchisee desires to renew the Agreement for an additional Term (as defined in the Agreement); and

WHEREAS, Section 2.4(c) of the Agreement requires Franchisee and each of its Owners and their respective spouses to execute, in favor of Franchisor and its officers, directors, agents, and employees, and Franchisor's affiliates and their officers, directors, agents, and employees, as a condition to renew the Agreement, a general release from liability of all claims that Franchisee, its Owners, and their respective spouses may have against Franchisor and/or its officers, directors, employees, and agents, and/or Franchisor's affiliates and/or their respective officers, directors, employees, and agents; and

WHEREAS, the Parties desire to enter into this Release to comply with the requirements of the Agreement and preserve Franchisee's eligibility to renew the Agreement.

NOW, THEREFORE, in consideration of the mutual agreements contained herein and other valuable consideration, the Parties hereby agree as follows:

1.    Recitals.  The foregoing Recitals are incorporated into and made part of this Release.

2.    Release.  Franchisee, each Owner, and their present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through them (the

Ex. 4, Pls.' State Petition and Exhibits

"**Releasing Entities**"), hereby fully release Franchisor and its present or former officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, and Franchisor's affiliates and their respective present or former officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through Franchisor (the "**Released Entities**") from any and all liabilities, claims, demands, debts, damages, obligations and causes of action of any nature or kind, whether presently known or unknown, which the Releasing Entities may have against the Released Entities as of the date this Agreement is executed.

3.    Miscellaneous.

A.    This Release contains the entire agreement and representations between the Parties hereto with respect to the subject matter hereof. This Release supersedes and cancels any prior understanding or agreement between the parties hereto whether written or oral, express or implied. No modifications or amendments to this Release shall be effective unless in writing, signed by all Parties.

B.    In the event any provision hereof, or any portion of any provision hereof shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality, or unenforceability shall not affect the remaining portion of any provision, or of any other provision hereof, and each provision of this Agreement shall be deemed severable from all other provisions hereof.

C.    This Release shall be governed by the laws of the State of Texas. Any litigation or court action arising under or related to this Release shall be filed in state or federal court in Bexar County, Texas.

D.    In the event a court action is brought to enforce or interpret this Release, the prevailing Party in that proceeding or action shall be entitled to reimbursement of all of its legal expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred. The prevailing Party shall be entitled to reimbursement of all such expenses both in the initial proceeding or action and on any appeal therefrom.

E.    This Release is binding on the Parties hereto and their respective successors, heirs, beneficiaries, agents, legal representatives, and assigns, and on any other persons claiming a right or interest through the Parties.

F.    This Release may be executed in any number of counterparts, all of which shall be deemed to constitute one and the same instrument, and each counterpart shall be deemed an original.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the Parties hereto affix their signatures and execute this Release as of the day and year first above written.

FRANCHISOR:

**MASSAGE HEIGHTS® CORPORATE, LLC**
**a Texas limited liability company**

By: _____
Its: _____

FRANCHISEE:

By: _____
Title: _____

OWNERS:

| | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ <br> Signature of Owner | _____ | |
| _____ <br> Printed/Typed Name of Owner | _____ | ____ % |
| | Owner's Title/Position with Franchisee: | |
| _____ <br> Signature of Owner's Spouse | _____ | |
| _____ <br> Printed/Typed Name of Spouse | Date: _____ , 200 | |

[The remainder of this page is intentionally left blank]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

|  | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ |  |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
|  | Owner's Title/Position with Franchisee: |  |
| _____ Signature of Owner's Spouse | _____ |  |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200__ |  |

|  | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ |  |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
|  | Owner's Title/Position with Franchisee: |  |
| _____ Signature of Owner's Spouse | _____ |  |
| _____ Printed/Typed Name of Spouse | Date: _____ , 200__ |  |

[The remainder of this page is intentionally left blank]

06-Franchise Exhibits H-L & Receipts                    Massage Heights® Corporate, LLC
GENERAL RELEASE AGREEMENT
PAGE 4

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Owner's Residential Address:  Owner's %
Ownership:

_____    _____

Signature of Owner

_____    _____  _____ %

Printed/Typed Name of Owner

Owner's Title/Position with Franchise:

_____    _____

Signature of Owner's Spouse

_____    Date: _____ , 200__

Printed/Typed Name of Spouse

---

Owner's Residential Address:  Owner's %
Ownership:

_____    _____

Signature of Owner

_____    _____  _____ %

Printed/Typed Name of Owner

Owner's Title/Position with Franchise:

_____    _____

Signature of Owner's Spouse

_____    Date: _____ , 200__

Printed/Typed Name of Spouse

**[The remainder of this page is intentionally left blank]**

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

|  | Owner's Residential Address: | Owner's % Ownership: |
|---|---|---|
| _____ Signature of Owner | _____ | |
| _____ Printed/Typed Name of Owner | _____ | _____ % |
|  | Owner's Title/Position with Franchisee: | |
| _____ Signature of Owner's Spouse | _____ | |
| _____ Printed/Typed Name of Spouse | Date: _____, 200__ | |

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

EXHIBIT I

TRANSFER AGREEMENT

Ex. 4, Pls.' State Petition and Exhibits

### MASSAGE HEIGHTS® CORPORATE, LLC

### TRANSFER AGREEMENT
### (for Regional Developer Franchises)

THIS TRANSFER AGREEMENT ("**Agreement**") is made and entered into this _____ day of _____, 200__, by and between Massage Heights® Corporate, LLC, a Texas limited liability company ("**Franchisor**"), and _____, a _____ corporation/limited liability company/partnership (circle one) ("**Franchisee**"), and each undersigned shareholder/member/partner of Franchisee and his or her spouse (individually, an "**Owner**," and collectively, the "**Owners**"), and _____, a _____ corporation/limited liability company/partnership (circle one) ("**Assignee**") (collectively, Franchisor, Franchisee, the Owners, and Assignee are referred to hereinafter as the "**Parties**").

### WITNESSETH:

WHEREAS, Franchisor and Franchisee previously entered into that certain Regional Developer Agreement dated _____, 20__ (the "**RDA**"), granting to Franchisee that certain Massage Heights® Regional Developer franchise located at _____ _____ (the "**Franchise**");

WHEREAS, the RDA provides as follows with respect to the Transfer (as defined below) of the RDA or any Interest (as defined below) in the RDA and/or the Franchise:

     a.     Section 14.4 states that any Transfer of the RDA or any Interest in the RDA and/or the Franchise must be approved by Franchisor in writing before such Transfer may be made or become effective;

     b.     Section 14.4 of the RDA defines as a Transfer any voluntary, involuntary, direct or indirect assignment, sale, gift, exchange, grant of a security interest, or occurrence of any event that would or might change the ownership of any Interest (as defined in the RDA and restated below), and includes without limitation (i) the Transfer of ownership of capital stock, partnership interest or other ownership interest; (ii) merger or consolidation, or issuance of additional securities representing an ownership interest in Franchisee; (iii) sale of common stock of Franchisee sold pursuant to a private placement or registered public offering; (iv) Transfer of an Interest in a divorce proceeding or otherwise by operation of law; or (v) Transfer of an Interest by will, declaration of or transfer in trust, or under the laws of intestate succession;

     c.     Section 14.2 of the RDA defines as an Interest (i) any shares, membership interests, or partnership interests of Franchisee and any other equitable or legal right in any of Owner's stock, revenues, profits, rights, or assets of Franchisee; and (ii) with respect to Franchisee, the RDA, and Franchisee's rights under and interest in the RDA,

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

any Massage Heights® franchise, or the revenues, profits, or assets of any Massage Heights® franchise;

   d. Section 14.5 of the RDA sets forth certain terms and conditions that must be complied with, or that Franchisor may require be complied with, before any Transfer may be made or become effective; and

   WHEREAS, Franchisee and/or each undersigned Owner wish(es) to Transfer (as defined in Section 14.4 of the RDA) to Assignee the following Interest (the "**Transferred Interest**"):___

_____

_____

_____

_____

_____;

   WHEREAS, Franchisor is willing to consent to the above Transfer of the Transferred Interest, and the Parties desire that the Transfer be made in accordance with the following terms and conditions;

   NOW, THEREFORE, in consideration of the mutual agreements, covenants and undertakings herein contained and other valuable consideration, the adequacy of which is acknowledged by all Parties, the Parties hereby agree as follows:

   1. <u>Recitals</u>. The above Recitals and sections of the RDA referred therein are hereby incorporated into and made part of this Agreement.

   2. <u>Consent to Transfer</u>. Franchisor hereby consents to the Transfer of the Transferred Interest as described in the Recitals.

   3. <u>Conditions for Approval of Transfer</u>. Franchisee and/or each undersigned Owner and Assignee each hereby represent and warrant that the conditions for approval of Transfer as set forth in Section 14.5 of the RDA, to the extent such conditions are not specifically addressed or resolved under this Agreement, have been fully and completely satisfied as provided in such Section 14.5 and to Franchisor's satisfaction.

   4. <u>Release</u>. Franchisee and/or each undersigned Owner and their present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through them (the "**Releasing Entities**"), hereby fully release Franchisor and its present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through it (the "**Released Entities**") from any and all liabilities, claims, demands, debts, damages, obligations and causes of action of any nature or kind, whether presently known or

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

unknown, which the Releasing Entities may have against the Released Entities as of the date this Agreement is executed.

5.   Non-Competition; Non-Soliciation; Confidentiality.

A.   Definitions.   Wherever used in this Section 5, the term "Franchisor" shall refer to Franchisor and any affiliate, subsidiary, or any successor or assign of Franchisor. Wherever used in this Section, the phrase "directly or indirectly" includes, but is not limited to, acting, either personally or as principal, owner, shareholder, employee, independent contractor, agent, manager, partner, joint venturer, consultant, or in any other capacity or by means of any corporate or other device, or acting through the spouse, children, parents, brothers, sisters, or any other relatives, friends, trustees, agents, or associates of any of the undersigned parties. Wherever used in this Agreement, the term "employees" shall refer to employees of Franchisor; any affiliate, subsidiary, or any successor or assign of Franchisor; and any franchisee of Franchisor existing as of the date of this Agreement and, to the extent allowable by law, any other person that has been an employee (as defined above) in the twelve (12) months preceding the date of this Agreement.   Whenever used in this Section, the term "Confidential Information" shall be defined as provided in Section 9.1 of the RDA, which provisions are hereby incorporated by reference.

B.   Consideration.   The undersigned Parties acknowledge that consideration for this Agreement has been provided and is adequate.   The consideration includes, but is not limited to, the granting of the Franchise to Franchisee and/or each undersigned Owner, and Franchisor's consent to the Transfer of the Transferred Interest as provided in this Agreement.

C.   Need for this Agreement.   The undersigned Parties recognize that in the highly competitive business in which Franchisor and its affiliates and franchisees are engaged, preservation of Confidential Information is crucial and personal contact is important in securing new franchisees and employees, and retaining the goodwill of present franchisees, employees, customers, and suppliers.   Personal contact is a valuable asset and is an integral part of protecting the business of Franchisor.   Franchisee and/or each undersigned Owner recognizes that it has had substantial contact with Franchisor's employees, customers, and suppliers and Confidential Information.   For that reason, Franchisee and/or each undersigned Owner may be in a position to take for his or her benefit the Confidential Information and goodwill Franchisor has with its employees and Confidential Information now or in the future.   If Franchisee and/or each undersigned Owner, after the Transfer of the Transferred Interest as provided in this Agreement, takes advantage of such Confidential Information or goodwill for Franchisee's and/or each undersigned Owner's own benefit, then the competitive advantage that Franchisor has created through its efforts and investment will be irreparably harmed.

D.   Non-Competition with Franchisor.   Franchisee and/or each undersigned Owner of Franchisee agrees that for one (1) year after the date of this Agreement, it will not directly or indirectly compete with the business of Franchisor within a radius of fifteen (15) miles of the Franchise or any Massage Heights® franchise in existence or for which a site is approved as of the date of this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

E.    <u>Non-Solicitation of Franchisor's Employees</u>.  Franchisee and/or each undersigned Owner agrees that for twelve (12) months after the date of this Agreement, it will not directly or indirectly: (a) induce, canvas, solicit, or request or advise any employees of Franchisor, the Franchise, or any Massage Heights® franchise to accept employment with any person, firm, or business that competes with any business of Franchisor, the Franchise, or any Massage Heights® franchise; or (b) induce, request, or advise any employee of Franchisor, the Franchise, or any Massage Heights® franchise to terminate such employee's relationship with Franchisor, the Franchise, or any Massage Heights® franchise; or (c) disclose to any other person, firm, partnership, corporation or other entity, the names, addresses or telephone numbers of any of the employees of Franchisor, the Franchise, or any Massage Heights® franchise, except as required by law.

F.    <u>Non-Solicitation of Franchisor's Customers</u>.  Franchisee and/or each undersigned Owner agrees that for twelve (12) months after the date of this Agreement, it will not directly or indirectly: (a) induce, canvas, solicit, or request or advise any customers of Franchisor, the Franchise, or any Massage Heights® franchise to become customers of any person, firm, or business that competes with any business of Franchisor, the Franchise, or any Massage Heights® franchise; or (b) induce, request or advise any customer of Franchisor, the Franchise, or any Massage Heights® franchise to terminate or decrease such customer's relationship with Franchisor, the Franchise, or any Massage Heights® franchise; or (c) disclose to any other person, firm, partnership, corporation or other entity, the names, addresses or telephone numbers of any of the customers of Franchisor, the Franchise, or any Massage Heights® franchise, except as required by law.

G.    <u>Confidential Information</u>.  Franchisee and/or each undersigned Owner agrees at all times following the date of this Agreement, to hold the Confidential Information in the strictest confidence and not to use such Confidential Information for Franchisee's and/or each undersigned Owner's personal benefit, or the benefit of any other person or entity other than Franchisor, or disclose it directly or indirectly to any person or entity without Franchisor's express authorization or written consent.  Franchisee and each undersigned Owner fully understand the need to protect the Confidential Information and all other confidential materials and agrees to use all reasonable care to prevent unauthorized persons from obtaining access to Confidential Information at any time.

6.    <u>Subordination</u>.  Franchisee and/or each undersigned Owner and Assignee each agrees that all of Assignee's obligations to make any installment payments to or for the benefit of Franchisee and/or an undersigned Owner in connection with the Transfer of the Transferred Interest as provided under this Agreement shall be subordinate to Assignee's obligations under the RDA or any New RDA (as defined below) to pay to us or our affiliates any Continuing Franchise Fees, Advertising Fees, and other fees and payments provided for therein.

7.    <u>New RDA</u>.  Assignee agrees that in connection with the Transfer of the Transferred Interest to it, Assignee shall sign at Franchisor's request the form of Regional Developer Agreement currently used by Franchisor in selling and offering franchises like the Franchise (the **"New RDA"**).

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

8.      Guaranty of Obligations.  In consideration of, and as an inducement to, the execution of this Agreement by Franchisor, each undersigned Owner hereby personally and unconditionally (a) guarantees to Franchisor us and its successors and assigns that the Owner will punctually pay and perform each and every undertaking, agreement and covenant of Assignee set forth in the RDA or any New RDA; and (b) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the RDA or any New RDA, including without limitation, monetary obligations, the obligations to take or refrain from taking certain actions and arbitration of disputes.  Each undersigned Owner waives (1) protest and notice of default, demand for payment or nonperformance of any obligations guaranteed by this Section 8; (2) any right the Owner may have to require that an action be brought against Franchisor or any other person as a condition of the Owner's liability; (3) all right to payment or reimbursement from, or subrogation against, Franchisor which Owner may have arising out of this guaranty of Assignee's; and (4) any and all other notices and legal or equitable defenses to which Owner may be entitled in its capacity as guarantor.  Each undersigned Owner consents and agrees that (i) its direct and immediate liability under this Section shall be joint and several; (ii) it will make any payment or render any performance required under the RDA or any New RDA on demand if Assignee fails or refuses to do so when required; (iii) its liability will not be contingent or conditioned on our pursuit of any remedies against Assignee or any other person; (iv) its liability will not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which Franchisor may from time to time grant to Assignee or to any other person, including without limitation, the acceptance of any partial payment or performance, or the compromise or release of any claims; and (v) the guaranty under this Section will continue and be irrevocable during the term of the RDA or any New RDA and afterward for so long as Assignee has any obligations under the RDA or any New RDA.  If Franchisor is required to enforce the guaranty provided for under this Section in a judicial or arbitration proceeding, and prevail in such proceeding, then each undersigned Owner agrees that Franchisor will be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators' and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, whether incurred prior to, in preparation for or in contemplation of the filing of any such proceeding.  If Franchisor is required to engage legal counsel in connection with any failure by any undersigned Owner to comply with the guaranty provisions of this Section, then the Owner shall reimburse Franchisor for any of the above-listed costs and expenses incurred by Franchisor.

9.      Breach.  The Parties hereby agree that each of the matters stated herein are important, material, and confidential, and substantially affect the effective and successful conduct of the business of Franchisor and its reputation, and goodwill.  Any breach of the terms of this Agreement is a material breach of this Agreement, which will result in substantial and irreparable injury to Franchisor, for which the breaching party may be preliminarily and permanently enjoined and for which the breaching party shall also pay to Franchisor all damages (including, but not limited to, compensatory, incidental, consequential and lost profits damages) which arise from the breach, together with interest, costs and Franchisor's reasonable attorneys' fees (through final unappealable judgment) to enforce this Agreement.  This Agreement does not limit any other remedies available at law or in equity available to Franchisor.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

10.    <u>No Waiver</u>. Franchisor may waive a provision of this Agreement only in writing executed by an authorized representative. No party shall rely upon any oral representations as to a waiver of any provision of this Agreement. No waiver by a party of a breach by another party of any provision of this Agreement shall operate or be construed as a waiver of any subsequent breach by the breaching party.

11.    <u>Assignment</u>. This Agreement is fully transferable by Franchisor. Franchisee and/or each undersigned Owner and Assignee shall not assign, convey, sell, delegate, otherwise transfer this Agreement or any right or duty hereunder without obtaining Franchisor's prior written consent.

12.    <u>Binding Agreement</u>. This Agreement shall be binding upon the Parties' heirs, successors, assigns, and legal representatives. This Agreement shall be enforceable by the successors and assigns of Franchisor, any person or entity which purchases substantially all of the assets of Franchisor, and any subsidiary, affiliate or operation division of Franchisor.

13.    <u>Tolling</u>. To ensure that Franchisor will receive the full benefit of this Agreement, the provisions of this Agreement will not run, for purposes of the prohibitions on any competition and solicitation, statute of limitations, or for laches, at any time that a party to this Agreement is actually acting in any way in contravention to this Agreement.

14.    <u>Headings</u>. The paragraph headings of this Agreement are not a substantive part of this Agreement and shall not limit or restrict this Agreement in any way.

15.    <u>Choice of Law and Venue</u>. This Agreement shall be construed in accordance with and governed for all purposes by the laws of Texas. If any action or proceeding shall be instituted by any Party, or any representative thereof, all Parties and their representatives hereby consent and will submit to the jurisdiction of, and agree that venue is proper in Bexar County, Texas.

16.    <u>Severance and Reformation</u>. In case any one or more of the provisions or restrictions contained in this Agreement, or any part thereof, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not effect any other provisions or restrictions of this Agreement. In case any one or more of the provisions or restrictions contained in this Agreement shall, for any reason, be held to be unreasonable, improper, overbroad or unenforceable in any manner, it is agreed that they are divisible and separable and should be valid and enforceable to the extent allowed by law. The intention of the parties is that Franchisor shall be given the broadest protection allowed by law with respect to this Agreement.

17.    <u>Entire Agreement</u>. No change, addition, deletion or amendment of this Agreement shall be valid or binding upon either party unless in writing and signed by the parties. Insofar as matters within the scope of this Agreement are concerned, this Agreement is the entire Agreement between the Parties and replaces and supersedes all prior agreements and understandings pertaining to the matters addressed in this Agreement. There are no oral or other agreements or understandings between the Parties affecting this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

18.    Counterparts.  This Agreement may be executed in any number of counterparts, all of which shall be deemed to constitute one and the same instrument, and each counterpart shall be deemed an original

19.    Opportunity to Seek Independent Advice.  The undersigned individuals recognize that this Agreement is an important document that affects their legal rights.  For this reason, the Parties may wish to seek independent legal advice before accepting the terms stated herein.  The undersigned Parties acknowledge that they have had an opportunity to seek such independent legal advice.  They acknowledge that they have read and understand the provisions contained herein and acknowledge receipt of a copy of this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

IN WITNESS WHEREOF, the parties hereto affix their signatures and execute this Agreement as of the day and year first above written.

**FRANCHISOR:**
**MASSAGE HEIGHTS® CORPORATE, LLC**
**a Texas limited liability company**

By:_____
Its:_____

**FRANCHISEE:**

_____

By:_____
Its:_____

**OWNER AND OWNER'S SPOUSE:**

By:_____    By:_____

By:_____    By:_____

By:_____    By:_____

By:_____    By:_____

By:_____    By:_____

By:_____    By:_____

**ASSIGNEE:**

_____

By:_____
Its:_____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## MASSAGE HEIGHTS® CORPORATE, LLC

### TRANSFER AGREEMENT
### (for Clinic Franchises)

THIS TRANSFER AGREEMENT (**"Agreement"**) is made and entered into this _____ day of _____, 200\_\_, by and between Massage Heights® Corporate, LLC, a Texas limited liability company (**"Franchisor"**), and _____, a _____ corporation/limited liability company/partnership (circle one) (**"Franchisee"**), and each undersigned shareholder/member/partner of Franchisee and his or her spouse (individually, an **"Owner,"** and collectively, the **"Owners"**), and _____, a _____ corporation/limited liability company/partnership (circle one) (**"Assignee"**) (collectively, Franchisor, Franchisee, the Owners, and Assignee are referred to hereinafter as the **"Parties"**).

### WITNESSETH:

WHEREAS, Franchisor and Franchisee previously entered into that certain Franchise Agreement dated _____, 20\_\_ (the **"Franchise Agreement"**), granting to Franchisee that certain Massage Heights® Clinic franchise located at _____

_____
_____
(the **"Franchise"**);

WHEREAS, the Franchise Agreement provides as follows with respect to the Transfer (as defined below) of the Franchise Agreement or any Interest (as defined below) in the Franchise Agreement and/or Franchise:

      a.    Section 14.4 states that any Transfer of the Franchise Agreement or any Interest in the Franchise Agreement and/or Franchise must be approved by Franchisor in writing before such Transfer may be made or become effective;

      b.    Section 14.4 of the Franchise Agreement defines as a Transfer any voluntary, involuntary, direct or indirect assignment, sale, gift, exchange, grant of a security interest, or occurrence of any event that would or might change the ownership of any Interest (as defined in the Franchise Agreement and restated below), and includes without limitation (i) the Transfer of ownership of capital stock, partnership interest or other ownership interest; (ii) merger or consolidation, or issuance of additional securities representing an ownership interest in Franchisee; (iii) sale of common stock of Franchisee sold pursuant to a private placement or registered public offering; (iv) Transfer of an Interest in a divorce proceeding or otherwise by operation of law; or (v) Transfer of an Interest by will, declaration of or transfer in trust, or under the laws of intestate succession;

      c.    Section 14.2 of the Franchise Agreement defines as an Interest (i) any shares, membership interests, or partnership interests of Franchisee and any other

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

equitable or legal right in any of Owner's stock, revenues, profits, rights, or assets of Franchisee; and (ii) with respect to Franchisee, the Franchise Agreement, and Franchisee's rights under and interest in the Franchise Agreement, any Massage Heights® franchise, or the revenues, profits, or assets of any Massage Heights® franchise;

        d.     Section 14.5 of the Franchise Agreement sets forth certain terms and conditions that must be complied with, or that Franchisor may require be complied with, before any Transfer may be made or become effective; and

WHEREAS, Franchisee and/or each undersigned Owner wish(es) to Transfer (as defined in Section 14.4 of the Franchise Agreement) to Assignee the following Interest (the "Transferred Interest"):_____

_____

_____

_____;

WHEREAS, Franchisor is willing to consent to the above Transfer of the Transferred Interest, and the Parties desire that the Transfer be made in accordance with the following terms and conditions;

NOW, THEREFORE, in consideration of the mutual agreements, covenants and undertakings herein contained and other valuable consideration, the adequacy of which is acknowledged by all Parties, the Parties hereby agree as follows:

        1.     <u>Recitals</u>.  The above Recitals and sections of the Franchise Agreement referred therein are hereby incorporated into and made part of this Agreement.

        2.     <u>Consent to Transfer</u>.  Franchisor hereby consents to the Transfer of the Transferred Interest as described in the Recitals.

        3.     <u>Conditions for Approval of Transfer</u>.  Franchisee and/or each undersigned Owner and Assignee each hereby represent and warrant that the conditions for approval of Transfer as set forth in Section 14.5 of the Franchise Agreement, to the extent such conditions are not specifically addressed or resolved under this Agreement, have been fully and completely satisfied as provided in such Section 14.5 and to Franchisor's satisfaction.

        4.     <u>Release</u>.  Franchisee and/or each undersigned Owner and their present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited liability companies, associations or partnerships or other affiliated entities claiming by or through them (the "**Releasing Entities**"), hereby fully release Franchisor and its present or former affiliated entities, officers, directors, shareholders, partners, members, employees, contractors, agents, predecessors, successors, assigns, attorneys, representatives, heirs, personal representatives and any spouses of each, as well as all other persons, firms, corporations, limited

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

liability companies, associations or partnerships or other affiliated entities claiming by or through it (the **"Released Entities"**) from any and all liabilities, claims, demands, debts, damages, obligations and causes of action of any nature or kind, whether presently known or unknown, which the Releasing Entities may have against the Released Entities as of the date this Agreement is executed.

    5.    <u>Non-Competition; Non-Soliciation; Confidentiality</u>.

        a.    <u>Definitions</u>.  Wherever used in this Section 5, the term "Franchisor" shall refer to Franchisor and any affiliate, subsidiary, or any successor or assign of Franchisor. Wherever used in this Section, the phrase "directly or indirectly" includes, but is not limited to, acting, either personally or as principal, owner, shareholder, employee, independent contractor, agent, manager, partner, joint venturer, consultant, or in any other capacity or by means of any corporate or other device, or acting through the spouse, children, parents, brothers, sisters, or any other relatives, friends, trustees, agents, or associates of any of the undersigned parties. Wherever used in this Agreement, the term "employees" shall refer to employees of Franchisor; any affiliate, subsidiary, or any successor or assign of Franchisor; and any franchisee of Franchisor existing as of the date of this Agreement and, to the extent allowable by law, any other person that has been an employee (as defined above) in the twelve (12) months preceding the date of this Agreement.  Whenever used in this Section, the term "Confidential Information" shall be defined as provided in Section 9.1 of the Franchise Agreement, which provisions are hereby incorporated by reference.

        b.    <u>Consideration</u>.  The undersigned parties acknowledge that consideration for this Agreement has been provided and is adequate.  The consideration includes, but is not limited to, the granting of the Franchise to Franchisee and/or each undersigned Owner, and Franchisor's consent to the Transfer of the Transferred Interest as provided in this Agreement.

        c.    <u>Need for this Agreement</u>.  The undersigned Parties recognize that in the highly competitive business in which Franchisor and its affiliates and franchisees are engaged, preservation of Confidential Information is crucial and personal contact is important in securing new franchisees and employees, and retaining the goodwill of present franchisees, employees, customers, and suppliers.  Personal contact is a valuable asset and is an integral part of protecting the business of Franchisor.  Franchisee and/or each undersigned Owner recognizes that it has had substantial contact with Franchisor's employees, customers, and suppliers and Confidential Information.  For that reason, Franchisee and/or each undersigned Owner may be in a position to take for his or her benefit the Confidential Information and goodwill Franchisor has with its employees and Confidential Information now or in the future.  If Franchisee and/or each undersigned Owner, after the Transfer of the Transferred Interest as provided in this Agreement, takes advantage of such Confidential Information or goodwill for Franchisee's and/or each undersigned Owner's own benefit, then the competitive advantage that Franchisor has created through its efforts and investment will be irreparably harmed.

        d.    <u>Non-Competition with Franchisor</u>.  Franchisee and/or each undersigned Owner of Franchisee agrees that for one (1) year after the date of this Agreement, it will not directly or indirectly compete with the business of Franchisor within a radius of fifteen (15)

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

miles of the Franchise, or of any Massage Heights® Clinic franchise in existence or for which a site is approved as of the date of this Agreement.

        e.    <u>Non-Solicitation of Franchisor's Employees</u>.   Franchisee and/or each undersigned Owner agrees that for twelve (12) months after the date of this Agreement, it will not directly or indirectly: (a) induce, canvas, solicit, or request or advise any employees of Franchisor, the Franchise, or any Massage Heights® franchisee to accept employment with any person, firm, or business that competes with any business of Franchisor, the Franchise, or any Massage Heights® franchisee; or (b) induce, request, or advise any employee of Franchisor, the Franchise, or any Massage Heights® franchisee to terminate such employee's relationship with Franchisor, the Franchise, or any Massage Heights® franchisee; or (c) disclose to any other person, firm, partnership, corporation or other entity, the names, addresses or telephone numbers of any of the employees of Franchisor, the Franchise, or any Massage Heights® franchisee, except as required by law.

        f.    <u>Non-Solicitation of Franchisor's Customers</u>.   Franchisee and/or each undersigned Owner agrees that for twelve (12) months after the date of this Agreement, it will not directly or indirectly: (a) induce, canvas, solicit, or request or advise any customers of Franchisor, the Franchise, or any Massage Heights® franchise to become customers of any person, firm, or business that competes with any business of Franchisor, the Franchise, or any Massage Heights® franchise; or (b) induce, request or advise any customer of Franchisor, the Franchise, or any Massage Heights® franchise to terminate or decrease such customer's relationship with Franchisor, the Franchise, or any Massage Heights® franchise; or (c) disclose to any other person, firm, partnership, corporation or other entity, the names, addresses or telephone numbers of any of the customers of Franchisor, the Franchise, or any Massage Heights® franchise, except as required by law.

        g.    <u>Confidential Information</u>.   Franchisee and/or each undersigned Owner agrees at all times following the date of this Agreement, to hold the Confidential Information in the strictest confidence and not to use such Confidential Information for Franchisee's and/or each undersigned Owner's personal benefit, or the benefit of any other person or entity other than Franchisor, or disclose it directly or indirectly to any person or entity without Franchisor's express authorization or written consent.   Franchisee and each undersigned Owner fully understand the need to protect the Confidential Information and all other confidential materials and agrees to use all reasonable care to prevent unauthorized persons from obtaining access to Confidential Information at any time.

      6.    <u>Subordination</u>. Franchisee and/or each undersigned Owner and Assignee each agrees that all of Assignee's obligations to make any installment payments to or for the benefit of Franchisee and/or an undersigned Owner in connection with the Transfer of the Transferred Interest as provided under this Agreement shall be subordinate to Assignee's obligations under the Franchise Agreement or New Franchise Agreement (as defined below) to pay to us or our affiliates any Continuing Franchise Fees, Advertising Fees, and other fees and payments provided for therein.

Ex. 4, Pls.' State Petition and Exhibits

7.    New Franchise Agreement.  Assignee agrees that in connection with the Transfer of the Transferred Interest to it, Assignee shall sign at Franchisor's request the form of Franchise Agreement currently used by Franchisor in selling and offering franchises like the Franchise (the "**New Franchise Agreement**").

8.    Guaranty of Obligations.  In consideration of, and as an inducement to, the execution of this Agreement by Franchisor, each undersigned Owner hereby personally and unconditionally (a) guarantees to Franchisor us and its successors and assigns that the Owner will punctually pay and perform each and every undertaking, agreement and covenant of Assignee set forth in the Franchise Agreement or any New Franchise Agreement; and (b) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement or any New Franchise Agreement, including without limitation, monetary obligations, the obligations to take or refrain from taking certain actions and arbitration of disputes.  Each undersigned Owner waives (1) protest and notice of default, demand for payment or nonperformance of any obligations guaranteed by this Section 8; (2) any right the Owner may have to require that an action be brought against Franchisor or any other person as a condition of the Owner's liability; (3) all right to payment or reimbursement from, or subrogation against, Franchisor which Owner may have arising out of this guaranty of Assignee's; and (4) any and all other notices and legal or equitable defenses to which Owner may be entitled in its capacity as guarantor.  Each undersigned Owner consents and agrees that (i) its direct and immediate liability under this Section shall be joint and several; (ii) it will make any payment or render any performance required under the Franchise Agreement or any New Franchise Agreement on demand if Assignee fails or refuses to do so when required; (iii) its liability will not be contingent or conditioned on our pursuit of any remedies against Assignee or any other person; (iv) its liability will not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which Franchisor may from time to time grant to Assignee or to any other person, including without limitation, the acceptance of any partial payment or performance, or the compromise or release of any claims; and (v) the guaranty under this Section will continue and be irrevocable during the term of the Franchise Agreement or any New Franchise Agreement and afterward for so long as Assignee has any obligations under the Franchise Agreement or any New Franchise Agreement.  If Franchisor is required to enforce the guaranty provided for under this Section in a judicial or arbitration proceeding, and prevail in such proceeding, then each undersigned Owner agrees that Franchisor will be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators' and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, whether incurred prior to, in preparation for or in contemplation of the filing of any such proceeding.  If Franchisor is required to engage legal counsel in connection with any failure by any undersigned Owner to comply with the guaranty provisions of this Section, then the Owner shall reimburse Franchisor for any of the above-listed costs and expenses incurred by Franchisor.

9.    Breach.  The Parties hereby agree that each of the matters stated herein are important, material, and confidential, and substantially affect the effective and successful conduct of the business of Franchisor and its reputation, and goodwill.  Any breach of the terms of this Agreement is a material breach of this Agreement, which will result in substantial and irreparable injury to Franchisor, for which the breaching party may be preliminarily and

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

permanently enjoined and for which the breaching party shall also pay to Franchisor all damages (including, but not limited to, compensatory, incidental, consequential and lost profits damages) which arise from the breach, together with interest, costs and Franchisor's reasonable attorneys' fees (through final unappealable judgment) to enforce this Agreement.  This Agreement does not limit any other remedies available at law or in equity available to Franchisor.

10.     No Waiver.  Franchisor may waive a provision of this Agreement only in writing executed by an authorized representative.  No party shall rely upon any oral representations as to a waiver of any provision of this Agreement.  No waiver by a party of a breach by another party of any provision of this Agreement shall operate or be construed as a waiver of any subsequent breach by the breaching party.

11.     Assignment.  This Agreement is fully transferable by Franchisor.  Franchisee and/or each undersigned Owner and Assignee shall not assign, convey, sell, delegate, otherwise transfer this Agreement or any right or duty hereunder without obtaining Franchisor's prior written consent.

12.     Binding Agreement.  This Agreement shall be binding upon the Parties' heirs, successors, assigns, and legal representatives.  This Agreement shall be enforceable by the successors and assigns of Franchisor, any person or entity which purchases substantially all of the assets of Franchisor, and any subsidiary, affiliate or operation division of Franchisor.

13.     Tolling.  To ensure that Franchisor will receive the full benefit of this Agreement, the provisions of this Agreement will not run, for purposes of the prohibitions on any competition and solicitation, statute of limitations, or for laches, at any time that a party to this Agreement is actually acting in any way in contravention to this Agreement.

14.     Headings.  The paragraph headings of this Agreement are not a substantive part of this Agreement and shall not limit or restrict this Agreement in any way.

15.     Choice of Law and Venue.  This Agreement shall be construed in accordance with and governed for all purposes by the laws of Texas.  If any action or proceeding shall be instituted by any Party, or any representative thereof, all Parties and their representatives hereby consent and will submit to the jurisdiction of, and agree that venue is proper in Bexar County, Texas.

16.     Severance and Reformation.  In case any one or more of the provisions or restrictions contained in this Agreement, or any part thereof, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not effect any other provisions or restrictions of this Agreement.  In case any one or more of the provisions or restrictions contained in this Agreement shall, for any reason, be held to be unreasonable, improper, overbroad or unenforceable in any manner, it is agreed that they are divisible and separable and should be valid and enforceable to the extent allowed by law.  The intention of the Parties is that Franchisor shall be given the broadest protection allowed by law with respect to this Agreement.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

17.    Entire Agreement.  No change, addition, deletion or amendment of this Agreement shall be valid or binding upon either party unless in writing and signed by the parties. Insofar as matters within the scope of this Agreement are concerned, this Agreement is the entire Agreement between the Parties and replaces and supersedes all prior agreements and understandings pertaining to the matters addressed in this Agreement.  There are no oral or other agreements or understandings between the Parties affecting this Agreement.

18.    Counterparts.  This Agreement may be executed in any number of counterparts, all of which shall be deemed to constitute one and the same instrument, and each counterpart shall be deemed an original

19.    Opportunity to Seek Independent Advice.  The undersigned individuals recognize that this Agreement is an important document that affects their legal rights.  For this reason, the Parties may wish to seek independent legal advice before accepting the terms stated herein.  The undersigned Parties acknowledge that they have had an opportunity to seek such independent legal advice.  They acknowledge that they have read and understand the provisions contained herein and acknowledge receipt of a copy of this Agreement.

IN WITNESS WHEREOF, the parties hereto affix their signatures and execute this Agreement as of the day and year first above written.


FRANCHISOR:
**MASSAGE HEIGHTS® CORPORATE, LLC**


a Texas limited liability company


By:_____
Its:_____

FRANCHISEE:

_____



_____
By:_____
Its:_____


Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**OWNER AND OWNER'S SPOUSE:**

By:_____          By:_____

By:_____          By:_____

By:_____          By:_____

By:_____          By:_____

By:_____          By:_____

By:_____          By:_____

**ASSIGNEE:**

_____

By:_____
Its:_____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**EXHIBIT J**

FORM OF UCC-1 FINANCING STATEMENT

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|

| B. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|

Massage Heights® Corporate, LLC
13750 U. S. Hwy. 281 North, Suite 230
San Antonio, TX  78232

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | TOWN | STATE | POSTAL CODE | COUNTRY USA |
| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION Arizona | 1g. ORGANIZATIONAL ID #, if any  □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | TOWN | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  □ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  Error! Unknown document property name. | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS  13750 U. S. Hwy. 281 North, Suite 230 | TOWN  San Antonio | STATE  TX | POSTAL CODE  78232 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:  All of Debtor's inventory, equipment, furnishings, fixtures, and supplies now owned or after-acquired; all of Debtor's accounts now existing or subsequently arising, together with all interest of Debtor, now existing or subsequently arising, together with all chattel paper, documents, and instruments relating to such accounts; all of Debtor's contract rights, now existing or subsequently arising; and all of Debtor's general intangibles, now owned or existing, or after-acquired or subsequently arising.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | □ LESSEE/LESSOR | □ CONSIGNEE/CONSIGNOR | □ BAILEE/BAILOR | □ SELLER/BUYER | □ AG. LIEN | □ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)  [ADDITIONAL FEE]  [optional]  □ All Debtors  □ Debtor 1  □ Debtor 2 |
|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICER COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

06-Franchise Exhibits H-L & Receipts

Massage Heights® Corporate, LLC

J-2
UCC-1 FINANCING STATEMENT

Ex. 4, Pls.' State Petition and Exhibits

### Instructions for National UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read all Instructions, especially Instruction 1; correct Debtor name is crucial. Follow Instructions completely.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. Filing office cannot give legal advice.

Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

When properly completed, send Filing Office Copy, with required fee, to filing office. If you want an acknowledgment, complete item 8 and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy; otherwise detach. If you want to make a search request, complete item 7 (after reading instruction 7 below) and send Search Report Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, use 8-1/2 X 11 inch sheets and put at the top of each sheet the name of the first Debtor, formatted exactly as it appears in item 1 of this form; you are encouraged to use Addendum (Form UCC1Ad).

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. Complete item B if you want an acknowledgment sent to you. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

---

1. Debtor name: Enter only one Debtor name in item 1, an organization's name (1a) or an individual's name (1b). Enter Debtor's exact full legal name. Don't abbreviate.

1a. Organization Debtor. "Organization" means an entity having a legal identity separate from its owner. A partnership is an organization; a sole proprietorship is not an organization, even if it does business under a trade name. If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine Debtor's correct name, organization type, and jurisdiction of organization.

1b. Individual Debtor. "Individual" means a natural person; this includes a sole proprietorship, whether or not operating under a trade name. Don't use prefixes (Mr., Mrs., Ms.). Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.). Use married woman's personal name (Mary Smith, not Mrs. John Smith). Enter individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box.

For both organization and individual Debtors: Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended).

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Debtor's taxpayer identification number (tax ID #) – social security number or employer identification number – may be required in some states.

1e,f,g. "Additional information re organization Debtor" is always required. Type of organization and jurisdiction of organization as well as Debtor's exact legal name can be determined from Debtor's current filed charter document. Organizational ID #, if any, is assigned by the agency where the charter document was filed; this is different from taxpayer ID #; this should be entered preceded by the 2-character U.S. Postal identification of state of organization if one of the United States (e.g., CA12345, for a California corporation whose organizational ID # is 12345); if agency does not assign organizational ID #, check box in item 1g indicating "none."

*Note:* If Debtor is a trust or a trustee acting with respect to property held in trust, enter Debtor's name in item 1 and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a decedent's estate, enter name of deceased individual in item 1b and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a transmitting utility or this Financing Statement is filed in connection with a Manufactured-Home Transaction or a Public-Finance Transaction as defined in

applicable Commercial Code, attach Addendum (Form UCC1Ad) and check appropriate box in item 18.

2. If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. To include further additional Debtors, or one or more additional Secured Parties, attach either Addendum (Form UCC1Ad) or other additional page(s), using correct name format. Follow Instruction 1 for determining and formatting additional names.

3. Enter information for Secured Party or Total Assignee, determined and formatted per Instruction 1. If there is more than one Secured Party, see Instruction 2. If there has been a total assignment of the Secured Party's interest prior to filing this form, you may either (1) enter Assignor S/P's name and address in item 3 and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Total Assignee's name and address in item 3 and, if you wish, also attaching Addendum (Form UCC1Ad) giving Assignor S/P's name and address in item 12.

4. Use item 4 to indicate the collateral covered by this Financing Statement. If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5. If filer desires (at filer's option) to use titles of lessee and lessor, or consignee and consignor, or seller and buyer (in the case of accounts or chattel paper), or bailee and bailor instead of Debtor and Secured Party, check the appropriate box in item 5. If this is an agricultural lien (as defined in applicable Commercial Code) filing or is otherwise not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 5, complete items 1-7 as applicable and attach any other items required under other law.

6. If this Financing Statement is filed as a fixture filing or if the collateral consists of timber to be cut or as-extracted collateral, complete items 1-5, check the box in item 6, and complete the required information (items 13, 14 and/or 15 on Addendum (Form UCC1Ad)).

7. This item is optional. Check appropriate box in item 7 to request Search Report(s) on all or some of the Debtors named in this Financing Statement. The Report will list all Financing Statements on file against the designated Debtor on the date of the Report, including this Financing Statement. There is an additional fee for each Report. If you have checked a box in item 7, file Search Report Copy together with Filing Officer Copy (and Acknowledgment Copy). Note: Not all states do searches and not all states will honor a search request made via this form; some states require a separate request form.

8. This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 8 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

06-Franchise Exhibits H-L & Receipts                    Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 9a. ORGANIZATION'S NAME | | |
| OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) – do not abbreviate or combine names

| 11a. ORGANIZATIONS' NAME | | | | | |
|---|---|---|---|---|---|
| OR  11b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS | TOWN | | STATE | POSTAL CODE | COUNTRY |
| 11d. TAX ID #; SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 12c. MAILING ADDRESS | TOWN | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years
☐ Filed in connection with a Public-Finance Transaction – effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

06-Franchise Exhibits H-L & Receipts                    Massage Heights® Corporate, LLC

J-4

UCC-1 FINANCING STATEMENT

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### Instructions for National UCC Financing Statement Addendum (Form UCC1Ad)

9.   Insert name of first Debtor shown on Financing Statement to which this Addendum is related, exactly as shown in item 1 of Financing Statement.

10.  Miscellaneous:  Under certain circumstances, additional information not provided on Financing Statement may be required.  Also, some states have non-uniform requirements.  Use this space to provide such additional information or to comply with such requirements; otherwise, leave blank.

11.  If this Addendum adds an additional Debtor, complete item 11 in accordance with Instruction 1 on Financing Statement.  To add more than one additional Debtor, either use an additional Addendum form for each additional Debtor or replicate for each additional Debtor the formatting of Financing Statement item 1 on an 8-1/2 X 11 inch sheet (showing at the top of the sheet the name of the first Debtor shown on the Financing Statement), and in either case give complete information for each additional Debtor in accordance with Instruction 1 on Financing Statement.  All additional Debtor information, especially the name, must be presented in proper format exactly identical to the format of item 1 of Financing Statement

12.  If this Addendum adds an additional Secured Party, complete item 12 in accordance with Instruction 3 on Financing Statement.  In the case of a total assignment of the Secured Party's interest before the filing of this Financing Statement, if filer has given the name and address of the Total Assignee in item 3 of the Financing Statement, filer may give the Assignor S/P's name and address in item 12.

13-15.  If collateral is timber to be cut or as-extracted collateral, or if this Financing Statement is filed as a fixture filing, check appropriate box in item 13; provide description of real estate in item 14; and, if Debtor is not a record owner of the described real estate, also provide, in item 15, the name and address of a record owner.  Also provide collateral description in item 4 of Financing Statement.  Also check box 6 on Financing Statement.  Description of real estate must be sufficient under the applicable law of the jurisdiction where the real estate is located.

16.  Use this space to provide continued description of collateral, if you cannot complete description in item 4 of Financing Statement.

17.  If Debtor is a trust or a trustee acting with respect to property held in trust or is a decedent's estate, check the appropriate box.

18.  If Debtor is a transmitting utility or if the Financing Statement relates to a Manufactured-Home Transaction or a Public-Finance Transaction as defined in the applicable Commercial Code, check the appropriate box.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

<u>EXHIBIT K</u>

STATE ADDENDA AND RIDERS

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### ADDITIONAL DISCLOSURES FOR THE
### MULTI-STATE FRANCHISE OFFERING CIRCULAR OF
### MASSAGE HEIGHTS CORPORATE, LLC

The following are additional disclosures for the Franchise Offering Circular of MASSAGE HEIGHTS CORPORATE, LLC required by various state franchise laws. These provisions shall be effective only to the extent that the jurisdictional requirements of the state applicable to the provisions are met independent of these additional disclosures This Rider shall have no force or effect if such jurisdictional requirements are not met without reference to these additional disclosures.

### CALIFORNIA

1. The following is added at the end of the chart in Item 3 of the Offering Circular:

None of the person identified in Item 2 are subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities Act of 1934, 15 U.S.C.A. 78a, et. Seq., suspending or expelling the person from membership in that association or exchange.

2. THE CALIFORNIA FRANCHISE INVESTMENT LAW REQUIRES THAT A COPY OF ALL PROPOSED AGREEMENTS RELATING TO THE SALE OF THE FRANCHISE BE DELIVERED TOGETHER WITH THE OFFERING CIRCULAR.

3. OUR WEBSITE, WWW.MASSAGEHEIGHTS.COM HAS NOT BEEN REVIEWED OR APPROVED BY THE CALIFORNIA DEPARTMENT OF CORPORATIONS.  ANY COMPLAINTS CONCERNING THE CONTENT OF THE WEBSITE MAY BE DIRECTED TO THE CALIFORNIA DEPARTMENT OF CORPORATIONS AT WWW.CORP.CA.GOV.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

A. Any provision in the Offering Circular and accompanying documents restricting venue to a forum outside the State of California is void with respect to any claim arising under or relating to a Franchise Agreement or Regional Developer Agreement involving a franchise business operating within the State of California.

B. The Franchise Agreement and Regional Developer Agreement provide for termination upon bankruptcy.  This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

C. The Franchise Agreement and Regional Developer Agreement contain a covenant not to compete which extends beyond the termination of the franchise. California Law restricts the Franchisor's ability to enforce covenants not to compete upon termination of the franchise relationship with the Franchisee or Regional Developer.  This covenant not to compete contained it the Franchise

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Agreement and Regional Developer Agreement is hereby amended to comply with California Law.

D. California Law provides rights to Franchisees or Regional Developers concerning termination or non-renewal of a franchise. To the extent provisions of the Franchise Agreement or Regional Developer Agreement are inconsistent with California Law, these provisions are hereby amended to be in compliance with California Law.

E. The Franchise Agreement and Regional Developer Agreement require application of the laws of Texas. This provision may not be enforceable under California Law and is hereby amended to comply with California Law.

## ILLINOIS

1. The following is added at the end of the chart in Item 17 of the Offering Circular:

A. The laws of the State of Illinois supersede any provisions of the Offering Circular and accompanying documents. If any provisions are in conflict with Illinois law, Illinois law prevails.

B. Any provision contained in this Offering Circular and accompanying documents that designates jurisdiction or venue in a forum outside of the State of Illinois is void, provided that the arbitration clause requiring a forum outside of the State of Illinois is valid and the terms of that clause remain applicable.

C. Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Illinois Franchise Disclosure Act or any other law of the State of Illinois is void. This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Illinois Franchise Disclosure Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code. However, this Section shall not waive compliance with any provision of the Illinois Franchise Disclosure Act or any other Illinois law (as long as the jurisdictional requirements of the Illinois Franchise Disclosure Act are met).

D. No action shall be maintained under Section 26 of the Illinois Franchise Disclosure Act to enforce any liability created by this Illinois Franchise Disclosure Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Illinois Franchise Disclosure Act, or 90 days after delivery to the Franchisee or Regional Developer of a written notice disclosing the violation, whichever shall first expire. No cause of action barred under existing law on the effective date of this Illinois Franchise Disclosure Act shall be revived by this Illinois

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

Franchise Disclosure Act. Every cause of action under this Illinois Franchise Disclosure Act survives the death of any person who might have been a plaintiff or defendant.

E.  The Franchisee or Regional Developer must sign a general release to renew or transfer the franchise.  This release is subject to the provisions of the Illinois Franchise Disclosure Act.

### INDIANA

The following is added at the end of the chart in Item 17 of the Offering Circular:

Indiana law prohibits any provision requiring the Franchisee or Regional Developer to prospectively assent to a release, assignment, novation, waiver, or estoppel which purports to relieve any person from liability to be imposed by the Indiana Franchises Practices Act (the "Act") or requiring any controversy between the Franchisee or Regional Developer and the Franchisor to be referred to any person, if referral would be binding on the Franchisee or Franchisor. This does not apply to arbitration before an independent arbitrator.  The Franchise Agreement and Regional Developer Agreement shall be deemed amended to the extent necessary to comply with the Act.

### MARYLAND

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  The Franchisee and Regional Developer must sign a general release to renew or transfer the franchise.  To the extent required by Maryland Franchise Registration and Disclosure Law, this provision will not apply to Franchisees and Regional Developer subject to Maryland law.  Additionally, any provision contained in the Franchise Agreement or Regional Developer Agreement that requires the franchisee to agree to assignment, novation, waiver or estoppel which would relieve the Franchisor of liability under Maryland law is hereby void.

B.  Any action arising under the Maryland Franchise Registration and Disclosure Law, specifically Section 14-227, must be brought within three years after the initial grant of the franchise.

C.  To the extent not pre-empted by the Federal Arbitration Act, the Franchisee and Regional Developer shall have the right to bring legal proceedings against the Franchisor to the extent required by the Maryland Franchise Registration and Disclosure Law.

D.  The Franchise Agreement and Regional Developer Agreement provide for termination upon bankruptcy. This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## MICHIGAN

1. The following is added to the cover page of the Offering Circular:

THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN FRANCHISE DOCUMENTS. IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.

THE FACT THAT THERE IS A NOTICE OF THIS OFFERING ON FILE WITH THE ATTORNEY GENERAL DOES NOT CONSTITUTE APPROVAL, RECOMMENDATION, OR ENDORSEMENT BY THE ATTORNEY GENERAL.

ANY QUESTIONS REGARDING THE NOTICE SHOULD BE DIRECTED TO THE DEPARTMENT LISTED IN EXHIBIT A OF THIS OFFERING CIRCULAR.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

A. Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:

(a) A prohibition on the right of a Franchisee or Regional Developer to join an association of franchisees.

(b) A requirement that a Franchisee or Regional Developer assent to a release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this act. This shall not preclude a Franchisee or Regional Developer, after entering into a Franchise Agreement or Regional Developer Agreement, from settling any and all claims.

(c) A provision that permits a Franchisor to terminate a franchise prior to the expiration of its term except for good cause. Good cause shall include the failure of the Franchisee to comply with any lawful provision of the Franchise Agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure.

(d) A provision that permits a Franchisor to refuse to renew a franchise without fairly compensating the Franchisee or Regional Developer by repurchase or other means for the fair market value at the time of expiration of the Franchisee's or Regional Developer's inventory, supplies, equipment, fixtures, and furnishings. Personalized materials which have no value to the Franchisor and inventory, supplies, equipment, fixtures, and furnishings not reasonably required in the conduct of the franchise business are not subject to compensation. This applies only if: (i) The term of the franchise is less than 5 years and (ii) the Franchisee or Regional Developer is prohibited by the franchise or other agreement from continuing to conduct substantially the same business under another trademark, service mark, trade name, logotype, advertising, or other

Ex. 4, Pls.' State Petition and Exhibits

commercial symbol in the same area subsequent to the expiration of the franchise or the Franchisee or Regional Developer does not receive at least 6 months advance notice of Franchisor's intent not to renew the franchise.

(e)  A provision that permits the Franchisor to refuse to renew a franchise on terms generally available to other Franchisees or Regional Developers of the same class or type under similar circumstances.

(f)  A provision requiring that arbitration or litigation be conducted outside the State of Michigan. This shall not preclude the Franchisee or Regional Developer from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

(g)  A provision which permits a Franchisor to refuse to permit a transfer of ownership of a franchise, except for good cause. This subdivision does not prevent a Franchisor from exercising a right of first refusal to purchase the franchise. Good cause shall include, but is not limited to:

(i)  The failure of the proposed transferee to meet the Franchisor's then current reasonable qualifications or standards.

(ii)  The fact that the proposed transferee is a competitor of the Franchisor or subfranchisor.

(iii)  The unwillingness of the proposed transferee to agree in writing to comply with all lawful obligations.

(iv)  The failure of the Franchisee or Regional Developer or proposed transferee to pay any sums owing to the Franchisor or to cure any default in the Franchise Agreement existing at the time of the proposed transfer.

(h)  A provision that requires the Franchisee or Regional Developer to resell to the Franchisor items that are not uniquely identified with the Franchisor. This subdivision does not prohibit a provision that grants to a Franchisor a right of first refusal to purchase the assets of a franchise on the same terms and conditions as a bona fide third party willing and able to purchase those assets, nor does this subdivision prohibit a provision that grants the Franchisor the right to acquire the assets of a franchise for the market or appraised value of such assets if the Franchisee has breached the lawful provisions of the Franchise Agreement and has failed to cure the breach in the manner provided in subdivision (c).

(i)  A provision which permits the Franchisor to directly or indirectly convey, assign, or otherwise transfer its obligations to fulfill contractual obligations to the Franchisee or Regional Developer unless provision has been made for providing the required contractual services.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

MINNESOTA

1. The following is added at the end of the chart in Item 13 of the Offering Circular:

    A. Notwithstanding anything to the contrary in the Franchise Agreement or Regional Developer Agreement, the Franchisor shall protect the Franchisee or Regional Developer's right to use the trademarks, service marks, trade names, logos or other symbols associated with the franchise. The Franchisor shall indemnify the Franchisee or Regional Developer from any loss, costs or expenses arising out of any claim, suit or demand regarding the above.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

    A. The Franchisee or Regional Developer must sign a general release to renew or transfer the franchise. Minnesota Rule 2860.4400D prohibits Franchisors from requiring Franchisee or Regional Developers to assent to general releases. Therefore, those provisions of the Franchise Agreement or Regional Developer Agreement that require the Franchisee or Regional Developer to assent to a general release are not valid and do not apply to Franchisee or Regional Developers subject to Minnesota law.

    B. Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of Minnesota, or, in the case of a partnership or corporation, organized or incorporated under the laws of Minnesota, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder contained in the Franchise Agreement or Regional Developer Agreement is void. Additionally, any provision contained in the Franchise Agreement or Regional Developer Agreement that requires a Franchisee or Regional Developer to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes shall be void as applicable to Franchisee or Regional Developers subject to Minnesota law. This provision shall not bar the exclusive arbitration clause contained in the Franchise Agreement or Regional Developer Agreement.

    C. Minnesota law provides a Franchisee or Regional Developer with certain termination and nonrenewal rights. Minn. Stat. Sec. 80C.14 Subd. 3, 4 and 5 require, except in certain specified cases, that a Franchisee or Regional Developer be given 90 days' notice of termination (with 60 days to cure) and 180 days' notice for nonrenewal of this Agreement. If applicable, the Franchise Agreement or Regional Developer Agreement is hereby amended as to Franchisee or Regional Developers subject to Minnesota law in compliance with this statute.

    D. Pursuant to Minn. Stat. § 80C.21 and Minn. Rule Part 2860.4400J, the Franchise Agreement or Regional Developer Agreement shall not in any way

Ex. 4, Pls.' State Petition and Exhibits

E-FILED 2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

abrogate or reduce the Franchisee or Regional Developer's rights as provided for in Minnesota Statutes 1984, Chapter 80C.

    E.  Pursuant to the Minnesota Franchise Act, any claims between the parties must be commenced within three years from the occurrence of the facts giving rise to such claim, or such claim shall be barred.

## NEW YORK

1. The following paragraph is inserted in place of the response to Item 3 of the Offering Circular:

    A.  Neither the Franchisor, its predecessor, nor any person identified in Item 2, or an affiliate offering franchises under the Franchisor's principal trademark:

    (a) Has an administrative, criminal or civil action pending against that person alleging: a felony, a violation of a franchise, antitrust or securities law, fraud, embezzlement, fraudulent conversion, misappropriation of property, unfair or deceptive practices or comparable civil or misdemeanor allegations. There are no pending actions which are significant in the context of the number of franchisees and the size, nature or financial condition of the franchise system or its business operations.

    (b) Has been convicted of a felony or pleaded nolo contendere to a felony charge or, within the ten-year period immediately preceding the application for registration, has been convicted of or pleaded nolo contendere to a misdemeanor charge or has been the subject of a civil action alleging: violation of a franchise, antifraud or securities law, fraud, embezzlement, fraudulent conversion or misappropriation of property, or unfair or deceptive practices or comparable allegations.

    (c) Is subject to a currently effective injunctive or restrictive order or decree relating to the franchise, or under a Federal, State or Canadian franchise, securities, antitrust, trade regulation or trade practice law, resulting from a concluded or pending action or proceeding brought by a public agency, or is subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities and Exchange Act of 1934, suspending or expelling such person from membership in such association or exchange; or is subject to a currently effective injunctive or restrictive order relating to any other business activity as a result of an action brought by a public agency or department, including, without limitation, actions affecting a license as a real estate broker or sales agent.

2. The following paragraph is inserted in place of the response to Item 4 of the Offering Circular:

Ex. 4, Pls.' State Petition and Exhibits

Neither the Franchisor, nor its affiliate, its predecessor, officers, or general partner during the 10-year period immediately before the date of the Offering Circular; (a) filed as debtor {or had filed against it) a petition to start an action under the U.S. Bankruptcy Code; (b) obtained a discharge of its debts under the bankruptcy code; or (c) was a principal officer of a company or a general partner in a partnership that either filed as a debtor (or had filed against it) a petition to start an action under the U.S. Bankruptcy Code or that obtained a discharge of its debts under the U.S. Bankruptcy Code during or within 1 year after the officer or general partner of the Franchisor held this position in the company or partnership.

3.  The following paragraph is added to the end of Item 17 of the Offering Circular:

The laws of the State of New York supersede any provisions of the Franchise Agreement and Regional Developer Agreement.  If such provisions in the Franchise Agreement are in conflict with New York law, New York law prevails.  Pursuant to Section 687 of Article 33 of the General Business Law of the State of New York, any condition, stipulation, or provision purporting to bind a franchisee acquiring a franchise to waive compliance with any provision of he General Business Law of the State of New York, or any rule promulgated thereunder, shall be void.  Additionally, any provision requiring a Franchisee or Regional Developer to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by Article 33 of the General Business Law of the State of New York shall be void.

### RHODE ISLAND

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  Pursuant to the Franchise Investment Act,, any provision in a Franchise Agreement or Regional Developer Agreement restricting jurisdiction or venue to a forum outside the State of Rhode Island or requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under the Franchise Investment Act.

### WASHINGTON

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  If any of the provisions of the Franchise Agreement and Regional Developer Agreement is inconsistent with the relationship provisions of RCW 19.100.180 or other requirements of the Washington Franchise Investment Protection Act (the "Act"), the provisions of the Act will prevail over the inconsistent provisions with regard to any franchise sold in Washington.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

### EXHIBIT K

### STATE ADDENDA AND RIDERS

### ADDITIONAL DISCLOSURES FOR THE
### MULTI-STATE FRANCHISE OFFERING CIRCULAR OF
### MASSAGE HEIGHTS CORPORATE, LLC

The following are additional disclosures for the Franchise Offering Circular of MASSAGE HEIGHTS CORPORATE, LLC required by various state franchise laws. These provisions shall be effective only to the extent that the jurisdictional requirements of the state applicable to the provisions are met independent of these additional disclosures. This Rider shall have no force or effect if such jurisdictional requirements are not met without reference to these additional disclosures.

### CALIFORNIA

1. The following is added at the end of the chart in Item 3 of the Offering Circular:

None of the person identified in Item 2 are subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities Act of 1934, 15 U.S.C.A. 78a, et. Seq., suspending or expelling the person from membership in that association or exchange.

2. THE CALIFORNIA FRANCHISE INVESTMENT LAW REQUIRES THAT A COPY OF ALL PROPOSED AGREEMENTS RELATING TO THE SALE OF THE FRANCHISE BE DELIVERED TOGETHER WITH THE OFFERING CIRCULAR.

3. OUR WEBSITE, WWW.MASSAGEHEIGHTS.COM HAS NOT BEEN REVIEWED OR APPROVED BY THE CALIFORNIA DEPARTMENT OF CORPORATIONS.  ANY COMPLAINTS CONCERNING THE CONTENT OF THE WEBSITE MAY BE DIRECTED TO THE CALIFORNIA DEPARTMENT OF CORPORATIONS AT WWW.CORP.CA.GOV.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

    A. Any provision in the Offering Circular and accompanying documents restricting venue to a forum outside the State of California is void with respect to any claim arising under or relating to a Franchise Agreement or Regional Developer Agreement involving a franchise business operating within the State of California.

    B. The Franchise Agreement and Regional Developer Agreement provide for termination upon bankruptcy.  This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

    C. The Franchise Agreement and Regional Developer Agreement contain a covenant not to compete which extends beyond the termination of the franchise. California Law restricts the Franchisor's ability to enforce covenants not to

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

compete upon termination of the franchise relationship with the Franchisee or Regional Developer.  This covenant not to compete contained it the Franchise Agreement and Regional Developer Agreement is hereby amended  to comply with California Law.

D.  California Law provides rights to Franchisees or Regional Developers concerning termination or non-renewal of a franchise.  To the extent provisions of the Franchise Agreement or Regional Developer Agreement are inconsistent with California Law, these provisions are hereby amended to be in compliance with California Law.

E.  The Franchise Agreement and Regional Developer Agreement require application of the laws of Texas.  This provision may not be enforceable under California Law and is hereby amended to comply with California Law.

**ILLINOIS**

1.  The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  The laws of the State of Illinois supersede any provisions of the Offering Circular and accompanying documents.  If any provisions are in conflict with Illinois law, Illinois law prevails.

B.  Any provision contained in this Offering Circular and accompanying documents that designates jurisdiction or venue in a forum outside of the State of Illinois is void, provided that the arbitration clause requiring a  forum outside of the State of Illinois is valid and the terms of that clause remain applicable.

C.  Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Illinois Franchise Disclosure Act or any other law of the State of Illinois is void.  This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Illinois Franchise Disclosure Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code.  However, this Section shall not waive compliance with any provision of the Illinois Franchise Disclosure Act or any other Illinois law (as long as the jurisdictional requirements of the Illinois Franchise Disclosure Act are met).

D.  No action shall be maintained under Section 26 of the Illinois Franchise Disclosure Act to enforce any liability created by this Illinois Franchise Disclosure Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Illinois Franchise Disclosure Act, or 90 days after delivery to the Franchisee or Regional Developer of a written notice disclosing the violation, whichever

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

shall first expire. No cause of action barred under existing law on the effective date of this Illinois Franchise Disclosure Act shall be revived by this Illinois Franchise Disclosure Act. Every cause of action under this Illinois Franchise Disclosure Act survives the death of any person who might have been a plaintiff or defendant.

E.  The Franchisee or Regional Developer must sign a general release to renew or transfer the franchise.  This release is subject to the provisions of the Illinois Franchise Disclosure Act.

**INDIANA**

The following is added at the end of the chart in Item 17 of the Offering Circular:

Indiana law prohibits any provision requiring the Franchisee or Regional Developer to prospectively assent to a release, assignment, novation, waiver, or estoppel which purports to relieve any person from liability to be imposed by the Indiana Franchises Practices Act (the "Act") or requiring any controversy between the Franchisee or Regional Developer and the Franchisor to be referred to any person, if referral would be binding on the Franchisee or Franchisor. This does not apply to arbitration before an independent arbitrator.  The Franchise Agreement and Regional Developer Agreement shall be deemed amended to the extent necessary to comply with the Act.

**MARYLAND**

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  The Franchisee and Regional Developer must sign a general release to renew or transfer the franchise.  To the extent required by Maryland Franchise Registration and Disclosure Law, this provision will not apply to Franchisees and Regional Developer subject to Maryland law.  Additionally, any provision contained in the Franchise Agreement or Regional Developer Agreement that requires the franchisee to agree to assignment, novation, waiver or estoppel which would relieve the Franchisor of liability under Maryland law is hereby void.

B.  Any action arising under the Maryland Franchise Registration and Disclosure Law, specifically Section 14-227, must be brought within three years after the initial grant of the franchise.

C.  To the extent not pre-empted by the Federal Arbitration Act, the Franchisee and Regional Developer shall have the right to bring legal proceedings against the Franchisor to the extent required by the Maryland Franchise Registration and Disclosure Law.

D.  The Franchise Agreement and Regional Developer Agreement provide for termination upon bankruptcy.  This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

## MICHIGAN

1. The following is added to the cover page of the Offering Circular:

THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN FRANCHISE DOCUMENTS. IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.

THE FACT THAT THERE IS A NOTICE OF THIS OFFERING ON FILE WITH THE ATTORNEY GENERAL DOES NOT CONSTITUTE APPROVAL, RECOMMENDATION, OR ENDORSEMENT BY THE ATTORNEY GENERAL.

ANY QUESTIONS REGARDING THE NOTICE SHOULD BE DIRECTED TO THE DEPARTMENT LISTED IN EXHIBIT A OF THIS OFFERING CIRCULAR.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

A. Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:

(a) A prohibition on the right of a Franchisee or Regional Developer to join an association of franchisees.

(b) A requirement that a Franchisee or Regional Developer assent to a release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this act. This shall not preclude a Franchisee or Regional Developer, after entering into a Franchise Agreement or Regional Developer Agreement, from settling any and all claims.

(c) A provision that permits a Franchisor to terminate a franchise prior to the expiration of its term except for good cause. Good cause shall include the failure of the Franchisee to comply with any lawful provision of the Franchise Agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure.

(d) A provision that permits a Franchisor to refuse to renew a franchise without fairly compensating the Franchisee or Regional Developer by repurchase or other means for the fair market value at the time of expiration of the Franchisee's or Regional Developer's inventory, supplies, equipment, fixtures, and furnishings. Personalized materials which have no value to the Franchisor and inventory, supplies, equipment, fixtures, and furnishings not reasonably required in the conduct of the franchise business are not subject to compensation. This applies only if: (i) The term of the franchise is less than 5 years and (ii) the Franchisee or Regional Developer is prohibited by the franchise or other agreement from continuing to conduct substantially the same business under another trademark, service mark, trade name, logotype, advertising, or other commercial symbol in the same area subsequent to the expiration of the franchise

Ex. 4, Pls.' State Petition and Exhibits

or the Franchisee or Regional Developer does not receive at least 6 months advance notice of Franchisor's intent not to renew the franchise.

(e)  A provision that permits the Franchisor to refuse to renew a franchise on terms generally available to other Franchisees or Regional Developers of the same class or type under similar circumstances.

(f)  A provision requiring that arbitration or litigation be conducted outside the State of Michigan. This shall not preclude the Franchisee or Regional Developer from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

(g)  A provision which permits a Franchisor to refuse to permit a transfer of ownership of a franchise, except for good cause. This subdivision does not prevent a Franchisor from exercising a right of first refusal to purchase the franchise. Good cause shall include, but is not limited to:

(i)  The failure of the proposed transferee to meet the Franchisor's then current reasonable qualifications or standards.

(ii)  The fact that the proposed transferee is a competitor of the Franchisor or subfranchisor.

(iii)  The unwillingness of the proposed transferee to agree in writing to comply with all lawful obligations.

(iv)  The failure of the Franchisee or Regional Developer or proposed transferee to pay any sums owing to the Franchisor or to cure any default in the Franchise Agreement existing at the time of the proposed transfer.

(h)  A provision that requires the Franchisee or Regional Developer to resell to the Franchisor items that are not uniquely identified with the Franchisor. This subdivision does not prohibit a provision that grants to a Franchisor a right of first refusal to purchase the assets of a franchise on the same terms and conditions as a bona fide third party willing and able to purchase those assets, nor does this subdivision prohibit a provision that grants the Franchisor the right to acquire the assets of a franchise for the market or appraised value of such assets if the Franchisee has breached the lawful provisions of the Franchise Agreement and has failed to cure the breach in the manner provided in subdivision (c).

(i)  A provision which permits the Franchisor to directly or indirectly convey, assign, or otherwise transfer its obligations to fulfill contractual obligations to the Franchisee or Regional Developer unless provision has been made for providing the required contractual services.

Ex. 4, Pls.' State Petition and Exhibits

## MINNESOTA

1. The following is added at the end of the chart in Item 13 of the Offering Circular:

   A. Notwithstanding anything to the contrary in the Franchise Agreement or Regional Developer Agreement, the Franchisor shall protect the Franchisee or Regional Developer's right to use the trademarks, service marks, trade names, logos or other symbols associated with the franchise. The Franchisor shall indemnify the Franchisee or Regional Developer from any loss, costs or expenses arising out of any claim, suit or demand regarding the above.

2. The following is added at the end of the chart in Item 17 of the Offering Circular:

   A. The Franchisee or Regional Developer must sign a general release to renew or transfer the franchise. Minnesota Rule 2860.4400D prohibits Franchisors from requiring Franchisee or Regional Developers to assent to general releases. Therefore, those provisions of the Franchise Agreement or Regional Developer Agreement that require the Franchisee or Regional Developer to assent to a general release are not valid and do not apply to Franchisee or Regional Developers subject to Minnesota law.

   B. Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of Minnesota, or, in the case of a partnership or corporation, organized or incorporated under the laws of Minnesota, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder contained in the Franchise Agreement or Regional Developer Agreement is void. Additionally, any provision contained in the Franchise Agreement or Regional Developer Agreement that requires a Franchisee or Regional Developer to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes shall be void as applicable to Franchisee or Regional Developers subject to Minnesota law. This provision shall not bar the exclusive arbitration clause contained in the Franchise Agreement or Regional Developer Agreement.

   C. Minnesota law provides a Franchisee or Regional Developer with certain termination and nonrenewal rights. Minn. Stat. Sec. 80C.14 Subd. 3, 4 and 5 require, except in certain specified cases, that a Franchisee or Regional Developer be given 90 days' notice of termination (with 60 days to cure) and 180 days' notice for nonrenewal of this Agreement. If applicable, the Franchise Agreement or Regional Developer Agreement is hereby amended as to Franchisee or Regional Developers subject to Minnesota law in compliance with this statute.

   D. Pursuant to Minn. Stat. § 80C.21 and Minn. Rule Part 2860.4400J, the Franchise Agreement or Regional Developer Agreement shall not in any way

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

abrogate or reduce the Franchisee or Regional Developer's rights as provided for in Minnesota Statutes 1984, Chapter 80C.

E.   Pursuant to the Minnesota Franchise Act, any claims between the parties must be commenced within three years from the occurrence of the facts giving rise to such claim, or such claim shall be barred.

## NEW YORK

1.   The following paragraph is inserted in place of the response to Item 3 of the Offering Circular:

A.   Neither the Franchisor, its predecessor, nor any person identified in Item 2, or an affiliate offering franchises under the Franchisor's principal trademark:

(a)   Has an administrative, criminal or civil action pending against that person alleging: a felony, a violation of a franchise, antitrust or securities law, fraud, embezzlement, fraudulent conversion, misappropriation of property, unfair or deceptive practices or comparable civil or misdemeanor allegations. There are no pending actions which are significant in the context of the number of franchisees and the size, nature or financial condition of the franchise system or its business operations.

(b)   Has been convicted of a felony or pleaded nolo contendere to a felony charge or, within the ten-year period immediately preceding the application for registration, has been convicted of or pleaded nolo contendere to a misdemeanor charge or has been the subject of a civil action alleging: violation of a franchise, antifraud or securities law, fraud, embezzlement, fraudulent conversion or misappropriation of property, or unfair or deceptive practices or comparable allegations.

(c)   Is subject to a currently effective injunctive or restrictive order or decree relating to the franchise, or under a Federal, State or Canadian franchise, securities, antitrust, trade regulation or trade practice law, resulting from a concluded or pending action or proceeding brought by a public agency, or is subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities and Exchange Act of 1934, suspending or expelling such person from membership in such association or exchange; or is subject to a currently effective injunctive or restrictive order relating to any other business activity as a result of an action brought by a public agency or department, including, without limitation, actions affecting a license as a real estate broker or sales agent.

2. The following paragraph is inserted in place of the response to Item 4 of the Offering Circular:

06-Franchise Exhibits H-L & Receipts                                    Massage Heights® Corporate, LLC

Ex. 4, Pls.' State Petition and Exhibits

Neither the Franchisor, nor its affiliate, its predecessor, officers, or general partner during the 10-year period immediately before the date of the Offering Circular; (a) filed as debtor (or had filed against it) a petition to start an action under the U.S. Bankruptcy Code; (b) obtained a discharge of its debts under the bankruptcy code; or (c) was a principal officer of a company or a general partner in a partnership that either filed as a debtor (or had filed against it) a petition to start an action under the U.S. Bankruptcy Code or that obtained a discharge of its debts under the U.S. Bankruptcy Code during or within 1 year after the officer or general partner of the Franchisor held this position in the company or partnership.

3.  The following paragraph is added to the end of Item 17 of the Offering Circular:

The laws of the State of New York supersede any provisions of the Franchise Agreement and Regional Developer Agreement.  If such provisions in the Franchise Agreement are in conflict with New York law, New York law prevails.  Pursuant to Section 687 of Article 33 of the General Business Law of the State of New York, any condition, stipulation, or provision purporting to bind a franchisee acquiring a franchise to waive compliance with any provision of he General Business Law of the State of New York, or any rule promulgated thereunder, shall be void.  Additionally, any provision requiring a Franchisee or Regional Developer to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by Article 33 of the General Business Law of the State of New York shall be void.

**RHODE ISLAND**

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  Pursuant to the Franchise Investment Act,, any provision in a Franchise Agreement or Regional Developer Agreement restricting jurisdiction or venue to a forum outside the State of Rhode Island or requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under the Franchise Investment Act.

**WASHINGTON**

The following is added at the end of the chart in Item 17 of the Offering Circular:

A.  If any of the provisions of the Franchise Agreement and Regional Developer Agreement is inconsistent with the relationship provisions of RCW 19.100.180 or other requirements of the Washington Franchise Investment Protection Act (the "Act"), the provisions of the Act will prevail over the inconsistent provisions with regard to any franchise sold in Washington.

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**CALIFORNIA RIDER TO**
**MASSAGE HEIGHTS CORPORATE, LLC**
**FRANCHISE AGREEMENT**
**BETWEEN**
**MASSAGE HEIGHTS CORPORATE LLC**
**AND**

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20__.

1.      Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in California and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the California Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.      **California Law.** Pursuant to the California Franchise Investment Law, CAL. CORP. CODE Section 31000 et seq., and the California Franchise Relations Act, CAL. BUS. & PROF. CODE Section 20000 et seq., ("California Law") certain provisions of the Franchise Agreement need to be amended to be consistent with California Law. The Franchise Agreement is hereby amended as follows:

i.      Any provision in the Franchise Agreement restricting venue to a forum outside the State of California is void with respect to any claim arising under or relating to a Franchise Agreement involving a franchise business operating within the State of California.

ii.     The Franchise Agreement provides for termination upon bankruptcy. This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

iii.    The Franchise Agreement contains a covenant not to compete which extends beyond the termination of the franchise. California Law restricts the Franchisor's ability to enforce covenants not to compete upon termination of the franchise relationship with the franchisee. This covenant not to compete contained it the Franchise Agreement is hereby amended to comply with California Law.

iv.     **General Release.** Upon Renewal or Transfer of the Franchise Agreement, the Franchise Agreement requires you to sign a general release of claims upon renewal or transfer of the Franchise Agreement. California Corporations Code Section 31512 provides that any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of that law or any rule or order is void. Section 31512 voids a waiver of your rights under the Franchise Investment Law (California Corporations Code Section 31000-31516). Business and Professions Code Section 20010 voids a waiver of your rights under the Franchise Relations Act (Business and Professions Code Sections 20000-20043).

v.      The Franchise Agreement requires application of the laws of Texas. This provision may not be enforceable under California Law and is hereby amended to comply with California Law.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

B.      The URL address for the Massage Heights Corporate, LLC website is www.massageheights.com. OUR WEBSITE HAS NOT BEEN REVIEWED OR APPROVED BY THE CALIFORNIA DEPARTMENT OF CORPORATIONS. ANY COMPLAINTS CONCERNING THE CONTENT OF THIS WEBSITE MAY BE DIRECTED TO THE CALIFORNIA DEPARTMENT OF CORPORATIONS AT www.corp.ca.gov.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

**MASSAGE HEIGHTS CORPORATE, LLC**

By: _____

Title: _____

Date: _____

**FRANCHISEE:**

Sign here if you are taking the franchise as an
      **INDIVIDUAL(S)**
      **COMPANY OR PARTNERSHIP**

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY**

_____
      Print Name of Legal Entity

_____
      **Signature**

By: _____
          **Signature**

Print Name: _____
Date: _____

Print Name: _____
Title: _____
Date: _____

_____
      **Signature**

Print Name: _____
Date: _____

_____
      **Signature**

Print Name: _____
Date: _____

_____
      **Signature**

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

ILLINOIS RIDER TO
MASSAGE HEIGHTS CORPORATE LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE LLC
AND

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the _____ day of _____ 20__.

1.       Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Illinois and Franchisor.  These provisions shall be effective only to the extent that the jurisdictional requirements of the Illinois Law applicable to the provisions are met independent of this Rider.  This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.   **Illinois Law.**  The laws of the State of Illinois supersede any provisions of the Franchise Agreement.  If such provisions in the Franchise Agreement are in conflict with Illinois law, Illinois law prevails.

B.   **Venue.**  Any provision in the Franchise Agreement that designates jurisdiction or venue or choice of law in a forum outside of the State of Illinois is void, provided that the arbitration clause requiring a forum outside of the State of Illinois is valid and the terms of that clause remain applicable.

C.   **Waivers.**  Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Illinois Franchise Disclosure Act or any other law of the State is void.  This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Illinois Franchise Disclosure Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code.  However, this Section shall not waive compliance with any provision of the Illinois Franchise Disclosure Act or any other Illinois law (as long as the jurisdictional requirements of the Illinois Franchise Disclosure Act are met).

D.   **Limitations.**  No action shall be maintained under Section 26 of the Illinois Franchise Disclosure Act to enforce any liability created by this Illinois Franchise Disclosure Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Illinois Franchise Disclosure Act, or 90 days after delivery to the Franchisee of a written notice disclosing the violation, whichever shall first expire.  No cause of action barred under existing law on the effective date of this Illinois Franchise Disclosure Act shall be revived by this Illinois Franchise Disclosure Act.  Every cause of action under this Illinois Franchise Disclosure Act survives the death of any person who might have been a plaintiff or defendant.

E.   **Release.**   The Franchisee must sign a general release to renew or transfer the franchise.  This release is subject to the provisions of the Illinois Franchise Disclosure Act.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
           INDIVIDUAL(S)
           COMPANY OR PARTNERSHIP

Sign here if you are taking the franchise as a
CORPORATION, LIMITED LIABILITY

_____
      Print Name of Legal Entity

_____
       Signature

By: _____
          Signature

Print Name: _____
Date: _____

Print Name: _____
Title: _____
Date: _____

_____
       Signature

Print Name: _____
Date: _____

_____
       Signature

Print Name: _____
Date: _____

_____
       Signature

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

INDIANA RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE LLC
AND
_____

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the _____ day of _____ 20__.

    1.    Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Indiana and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the Indiana Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

    A. **Indiana Law** The laws of the State of Indiana supersede any provisions of the Franchise Agreement. If such provisions in the Franchise Agreement are in conflict with Indiana Law, Indiana Law prevails.

    B. **Waiver.** If any of the provisions in the Franchise Agreement require the Franchisee to prospectively assent to a release, assignment, novation, waiver, or estoppel which purports to relieve any person from liability to be imposed by this chapter or requiring any controversy between the Franchisee and the Franchisor to be referred to any person, if referral would be binding on the Franchisee. This does not apply to any required arbitration before an independent arbitrator.

    C.   **Covenant Not to Compete.** The Indiana Franchises Practices Act (the "Act") prohibits the Franchisor from requiring a Franchisee to enter into a covenant not to compete with the Franchisor for a period longer than three (3) years or in an area greater than the exclusive area granted by the Franchise Agreement or, in absence of such a provision in the agreement, an area of reasonable size, upon termination of or failure to renew the franchise. The covenant not to compete contained in the Franchise Agreement is hereby amended to comply with the Act.

    D. **Venue.** Any provision in the Franchise Agreement which designates jurisdiction or venue, or requires the Franchisee to agree to jurisdiction or venue, in a forum outside of Indiana, is void from any Franchise Agreement issued in the State of Indiana.

    E. **Litigation.** Any provision in the Franchise Agreement limiting litigation brought for breach of the Franchise Agreement is hereby amended to comply with the Act.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
        **INDIVIDUAL(S)**
        **COMPANY OR PARTNERSHIP**

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY**

_____
Print Name of Legal Entity

_____
        Signature

Print Name: _____
Date: _____

By: _____
        Signature

Print Name: _____
Title: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

MARYLAND RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE, LLC
AND

_____

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20___.

    1.       Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Maryland and Franchisor.  These provisions shall be effective only to the extent that the jurisdictional requirements of the Maryland Law applicable to the provisions are met independent of this Rider.  This Rider shall have no force or effect if such jurisdictional requirements are not met.

    A.   **Release.**  The Franchisee must sign a general release to renew or transfer the franchise.  To the extent required by Maryland Franchise Registration and Disclosure Law, this provision will not apply to Franchisees subject to Maryland Law.  Additionally, any provision contained in the Franchise Agreement that requires the Franchisee to agree to assignment, novation, waiver or estoppel which would relieve the Franchisor of liability under Maryland Law is hereby void.

    B.   **Limitations.**  Any action arising under the Maryland Franchise Registration and Disclosure Law, specifically Section 14-227, must be brought within three years after the initial grant of the franchise.

    C.   **Venue.**  To the extent not pre-empted by the Federal Arbitration Act, the Franchisee shall have the right to bring legal proceedings against the Franchisor in the State of Maryland to the extent required by the Maryland Franchise Registration and Disclosure Law.

    D.   **Termination.**  The Franchise Agreement provides for termination upon bankruptcy.  This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
**INDIVIDUAL(S)**
**COMPANY OR PARTNERSHIP**

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY**

_____
Print Name of Legal Entity

_____
Signature

By: _____
Signature

Print Name: _____
Date: _____

Print Name: _____
Title: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

MICHIGAN RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE LLC
AND
_____

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20__.

1.      Notwithstanding anything to the contrary contained in the Franchisor Agreement, the following shall govern the relationship between every Franchisee in Michigan and Franchisor.  These provisions shall be effective only to the extent that the jurisdictional requirements of the Michigan Law applicable to the provisions are met independent of this Rider.  This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.  **Michigan Law**   The laws of the State of Michigan supersede any provisions of the Franchise Agreement.  If such provisions in the Franchise Agreement are in conflict with Michigan law, Michigan law prevails.

B.  **Void Provisions.**  Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:

(a)  A prohibition on the right of a Franchisee to join an association of Franchisees.

(b)  A requirement that a Franchisee assent to a release, assignment, novation, waiver, or estoppel which deprives a Franchisee of rights and protections provided in this act. This shall not preclude a Franchisee, after entering into a Franchise Agreement, from settling any and all claims.

(c)  A provision that permits a Franchisor to terminate a franchise prior to the expiration of its term except for good cause. Good cause shall include the failure of the Franchisee to comply with any lawful provision of the Franchise Agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure.

(d)  A provision that permits a Franchisor to refuse to renew a franchise without fairly compensating the Franchisee by repurchase or other means for the fair market value at the time of expiration of the Franchisee's inventory, supplies, equipment, fixtures, and furnishings. Personalized materials which have no value to the Franchisor and inventory, supplies, equipment, fixtures, and furnishings not reasonably required in the conduct of the franchise business are not subject to compensation. This subsection applies only if: (i) The term of the franchise is less than 5 years and (ii) the Franchisee is prohibited by the Franchisor or other agreement from continuing to conduct substantially the same business under another trademark, service mark, trade name, logotype, advertising, or other commercial symbol in the same area subsequent to the expiration of the franchise or the Franchisee does not receive at least 6 months advance notice of Franchisor's intent not to renew the franchise.

(e)  A provision that permits the Franchisor to refuse to renew a franchise on terms generally available to other Franchisees of the same class or type under similar circumstances.

(f)  A provision requiring that arbitration or litigation be conducted outside Michigan. This shall not preclude the Franchisee from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

(g)  A provision which permits a Franchisor to refuse to permit a transfer of ownership of a franchise, except for good cause. This subdivision does not prevent a Franchisor from exercising a right of first refusal to purchase the franchise. Good cause shall include, but is not limited to:

(i)  The failure of the proposed transferee to meet the Franchisor's then current reasonable qualifications or standards.

(ii)  The fact that the proposed transferee is a competitor of the Franchisor or subfranchisor.

(iii)  The unwillingness of the proposed transferee to agree in writing to comply with all lawful obligations.

(iv)  The failure of the Franchisee or proposed transferee to pay any sums owing to the Franchisor or to cure any default in the Franchise Agreement existing at the time of the proposed transfer.

(h)  A provision that requires the Franchisee to resell to the Franchisor items that are not uniquely identified with the Franchisor. This subdivision does not prohibit a provision that grants to a Franchisor a right of first refusal to purchase the assets of a franchise on the same terms and conditions as a bona fide third party willing and able to purchase those assets, nor does this subdivision prohibit a provision that grants the Franchisor the right to acquire the assets of a franchise for the market or appraised value of such assets if the Franchisee has breached the lawful provisions of the Franchise Agreement and has failed to cure the breach in the manner provided in subdivision (c).

(i)  A provision which permits the Franchisor to directly or indirectly convey, assign, or otherwise transfer its obligations to fulfill contractual obligations to the Franchisee unless provision has been made for providing the required contractual services.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

**MASSAGE HEIGHTS CORPORATE, LLC**

By: _____

Title: _____

Date: _____

**FRANCHISEE:**

Sign here if you are taking the franchise as an
**INDIVIDUAL(S)
COMPANY OR PARTNERSHIP**

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY**

_____
Print Name of Legal Entity

By: _____
Signature

Print Name: _____
Title: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

MINNESOTA RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE, LLC
AND

_____

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20__.

1.      Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Minnesota and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the Minnesota Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.   **Release.**   The Franchisee must sign a general release to renew or transfer the franchise. Minnesota Rule 2860.4400D prohibits Franchisors from requiring Franchisees to assent to general releases. Therefore, those provisions of the Franchise Agreement that require the Franchisee to assent to a general release are not valid and do not apply to Franchisees subject to Minnesota Law.

B.   **Waiver.**   Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of Minnesota, or, in the case of a partnership or corporation, organized or incorporated under the laws of Minnesota, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder contained in the Franchise Agreement is void. Additionally, any provision contained in the Franchise Agreement that requires a Franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes shall be void as applicable to Franchisees subject to Minnesota Law.   This provision shall not bar the exclusive arbitration clause contained in the Franchise Agreement.

C.   **Notice.**   Minnesota Law provides a Franchisee with certain termination and nonrenewal rights.  Minn. Stat. Sec. 80C.14 Subd. 3, 4 and 5 require, except in certain specified cases, that a Franchisee be given 90 days' notice of termination (with 60 days to cure) and 180 days' notice for nonrenewal of this Agreement.  If applicable, the Franchise Agreement is hereby amended as to Franchisees subject to Minnesota Law in compliance with this statute.

D.   **Rights.**   Pursuant to Minn. Stat. § 80C.21 and Minn. Rule Part 2860.4400J, the Franchise Agreement shall not in any way abrogate or reduce the Franchisee's rights as provided for in Minnesota Statutes 1984, Chapter 80C.

E.   **Claims.**   Pursuant to the Minnesota Franchise Act, any claims between the parties must be commenced within three years from the occurrence of the facts giving rise to such claim, or such claim shall be barred.

F.   **Trademarks.**   Notwithstanding anything to the contrary in the Franchise Agreement, the Franchisor shall protect the Franchisee's right to use the trademarks, service marks, trade names, logos or other symbols associated with the franchise. The Franchisor shall indemnify the Franchisee from any loss, costs or expenses arising out of any claim, suit or demand regarding the above.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

**MASSAGE HEIGHTS CORPORATE, LLC**

By: _____

Title: _____

Date: _____

**FRANCHISEE:**

Sign here if you are taking the franchise as an

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP**

_____
Print Name of Legal Entity

_____
**Signature**

By: _____
         **Signature**

Print Name: _____
Date: _____

Print Name: _____
Title: _____
Date: _____

_____
**Signature**

Print Name: _____
Date: _____

_____
**Signature**

Print Name: _____
Date: _____

_____
**Signature**

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

NEW YORK RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE LLC
AND

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the _____ day of _____ 20___.

1.     Notwithstanding anything to the contrary contained in the Franchisor Agreement, the following shall govern the relationship between every Franchisee in New York and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the New York Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.    **New York Law.**  The laws of the State of New York supersede any provisions of the Franchise Agreement. If such provisions in the Franchise Agreement are in conflict with New York Law, New York Law prevails.

B.    **Waiver.**  Pursuant to Section 687 of Article 33 of the General Business Law of the State of New York, any condition, stipulation, or provision contained in the Franchise Agreement purporting to bind a Franchisee acquiring a franchise to waive compliance with any provision of he General Business Law of the State of New York, or any rule promulgated thereunder, shall be void. Additionally, any provision contained in the Franchise Agreement requiring a Franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by Article 33 of the General Business Law of the State of New York shall be void.

C.    **Indemnification.**  Whereas the Franchise Agreement requires, in certain situations, that the Franchisee indemnify the Franchisor, the Franchise Agreement is hereby amended as follows:
Franchisee shall not be required to indemnify Franchisor for any liabilities which arise as a result of Franchisor's breach of this agreement or other civil wrongs committed by Franchisor.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
      INDIVIDUAL(S)
      COMPANY OR PARTNERSHIP

_____
      **Signature**

Print Name: _____
Date: _____


_____
      **Signature**

Print Name: _____
Date: _____


_____
      **Signature**

Print Name: _____
Date: _____


_____
      **Signature**

Print Name: _____
Date: _____

Sign here if you are taking the franchise as a
CORPORATION, LIMITED LIABILITY

_____
    Print Name of Legal Entity

By: _____
      **Signature**

Print Name: _____
Title: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**RHODE ISLAND RIDER TO**
**MASSAGE HEIGHTS CORPORATE, LLC**
**FRANCHISE AGREEMENT**
**BETWEEN**
**MASSAGE HEIGHTS CORPORATE LLC**
**AND**
_____

THIS RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20__.

    1.    Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Rhode Island and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the Rhode Island Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

    A.    **Rhode Island Law.**  If any of the provisions in the Franchise Agreement are inconsistent with the provisions of Rhode Island Law, including the Franchise Investment Act, R.I. Gen. Law, tit. 19 chap 28.1, et. Seq, (the "Act"), the provisions of the Act will prevail over the inconsistent provisions of the Franchise Agreement with regard to any franchise sold in Rhode Island.

    B.    **Choice of Law and Venue.**  Pursuant to the Act, any provision in a Franchise Agreement restricting jurisdiction or venue to a forum outside the State of Rhode Island or requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under the Act.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

**IN WITNESS WHEREOF,** the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
**INDIVIDUAL(S)
COMPANY OR PARTNERSHIP**

Sign here if you are taking the franchise as a
**CORPORATION, LIMITED LIABILITY**

_____
Print Name of Legal Entity

_____
Signature

By: _____
Signature

Print Name: _____
Date: _____

Print Name: _____
Title: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

_____
Signature

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

WASHINGTON RIDER TO
MASSAGE HEIGHTS CORPORATE, LLC
FRANCHISE AGREEMENT
BETWEEN
MASSAGE HEIGHTS CORPORATE LLC
AND
_____

This RIDER is entered into by Massage Heights Corporate, LLC (the "Franchisor") and the undersigned (the "Franchisee") as of the ____ day of _____ 20__.

1.     Notwithstanding anything to the contrary contained in the Franchise Agreement, the following shall govern the relationship between every Franchisee in Washington and Franchisor. These provisions shall be effective only to the extent that the jurisdictional requirements of the Washington Law applicable to the provisions are met independent of this Rider. This Rider shall have no force or effect if such jurisdictional requirements are not met.

A.  **Washington Law.**  If any of the provisions in the Franchise Agreement are inconsistent with the relationship provisions of RCW 19.100.180 or other requirements of the Washington Franchise Investment Protection Act (the "Act"), the provisions of the Act will prevail over the inconsistent provisions of the Franchise Agreement with regard to any franchise sold in Washington.

In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either in Washington or in a place as mutually agreed upon at the time of the arbitration, or as determined by the arbitrator.

Washington may have court decisions that may supersede the Franchise Agreement in the relationship between the Franchisor and the Franchisee including the areas of termination and renewal of the franchise. To the extent that these decisions are inconsistent with the provisions of the Franchise Agreement, the court decisions will supersede the provisions of Franchise Agreement.

Any transfer fees imposed under the Franchise Agreement are collectable to the extent that they reflect the Franchisor's reasonable estimate or actual costs in effecting the transfer.

A release or waiver of rights executed by a Franchisee shall not include rights under the Act except when executed pursuant to a negotiated settlement after the agreement is in effect and where the parties are represented by independent counsel. Provisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, rights or remedies under the Act such as a right of jury trial may not be enforceable.

[Signatures on Following Page]

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties have executed this Rider as of the Effective Date shown on the first page hereof.

MASSAGE HEIGHTS CORPORATE, LLC

By: _____

Title: _____

Date: _____

FRANCHISEE:

Sign here if you are taking the franchise as an
              INDIVIDUAL(S)
         COMPANY OR PARTNERSHIP

Sign here if you are taking the franchise as a
CORPORATION, LIMITED LIABILITY

_____
Print Name of Legal Entity

_____
        Signature

Print Name: _____
Date: _____

By: _____
        Signature

Print Name: _____
Title: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

_____
        Signature

Print Name: _____
Date: _____

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## EXHIBIT L

## USE AND LICENSE AGREEMENT

This Use and License Agreement ("Agreement"), dated ___, 2007, is made by and between Massage Heights Corporate, LLC, a Texas limited liability company ("Licensor"), with offices at _____ San Antonio, Texas, and Therapy Investments, L.L.C. ("Licensee").

## RECITALS

A.      Licensor is the franchisor of the Massage Heights franchises and, as such, has purchased a master license for the use of software used in the operation of Massage Heights Clinics (the "Software"); and

B.      Licensee has entered into a franchise agreement to operate a Massage Heights franchise (the "Franchise Agreement"); and

C.      The Software is required for the operation of a Massage Heights franchise; and

C.      Pursuant to the Franchise Agreement, Licensee is required to execute this Agreement and obtain a license to use the Software; and

D.      Licensor wishes to grant certain rights and licenses to Licensee with respect to the Software, and Licensee wishes to obtain such rights and licenses with respect to the Software, on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Services.** Licensor hereby grants a worldwide, non-exclusive, non-transferable, revocable, non-sublicenseable license to use the Software exclusively for the internal operations of a Massage Heights franchise and for no other purpose unless Licensee has received prior written consent from Licensor for such purpose. Licensor shall provide all documentation for the operation of the Software.

2.      **Term.** This Agreement shall begin on the date first listed above and shall continue in effect until the termination, expiration or transfer of the Franchise Agreement, unless this Agreement is earlier terminated pursuant to the terms of this Agreement.

3.      **Technical Requirements.** Licensee agrees to comply with the applicable hardware, software and other technical and pre-setup requirements for Licensee's use of the Software as the Licensor may establish from time to time during the Term.

Ex. 4, Pls.' State Petition and Exhibits

4.      **Software Support**. Licensor shall provide technical support for the Software during normal business hours Monday through Friday.  If additional support is needed during non business hours, Licensor may provide such support at an additional fee to Licensee, availability permitting.

5.      **Payment**.

(a)      It is the express understanding of the parties that the Licensor shall sublicense the software to its franchisees.  As compensation for the successful performance of the work and services to be performed hereunder, it is agreed that Licensees shall directly pay a monthly fee of $200.00 to Licensor for use of the Software (the "Monthly Maintenance Fee"). This Monthly Maintenance Fee will increase by a minimum of 3% per clinic location on the one-year anniversary of the operations of the Massage Heights franchise and will again increase by a minimum of 3% on subsequent one-year anniversaries per franchise location for the term of this Agreement.

(b)      It is agreed that the Licensee shall pay directly to Licensor a one-time Secure Socket Layer (SSL) and installation fee of $350.00 per clinic location. This SSL fee is due within fifteen (15) days of the sale/award of the franchise license to the franchisee.

(c)      It is agreed that Licensee shall pay directly to Licensor a one-time activation fee of $300.00 per sale/award of each Regional Developer License (RDL). This one-time RDL Activation Fee is due within fifteen (15) days of the sale/award of the RDL.

(d)      All applicable fees are to be paid to Licensor via an ACH bank transfer, due on the 15th of each month or by the morning of the next business day.  Any fees not received will be assed a late fee penalty of $5.00 per day, per clinic until said fees are paid in full.

6.      **Licensee Training**. Licensor shall conduct training session pursuant to the guidelines set forth in the Franchise Agreement and/or Regional Development Agreement.  In addition, Licensee shall attend mandatory ongoing training sessions, at times and at such locations as Licensor shall establish.

7.      **Ownership**. Licensee acknowledges that Licensor has the sole right to license and control Licensee's use of the Software.  Licensee further acknowledges that it does not acquire any right, title or interest in the Software except as set forth herein.

8.      **Restrictions on Use.** Licensee may not decompile, reverse compile, reverse engineer, reverse assemble or otherwise derive a source code equivalent for the Software.  In addition, Licensee may not copy the Software without the Licensor's written consent.  Licensee may not download any portion of the Software except as the Licensor may expressly permit or instruct. Licensee may not permit any third party access to the Software, and may use the Software only on computers for which Licensee controls access to the Software.  Licensee may not assign, transfer, sell license, sublicense, or grant any rights to or interests in the Software to any corporation, partnership or other business entity or any other person.  Except for creation and use of the Licensor's Content by Licensee on the Licensor's Website as may be permitted hereunder, Licensee may not, at any time, use or exploit or authorize any third party to use or exploit, any of Licensor's Content which embodies Software or which was created or developed using Software. Licensee will comply with all terms and conditions packaged or accompanying any third party software furnished to Licensee under this Agreement.

06-Franchise Exhibits H-L & Receipts                                        Massage Heights® Corporate, LLC

L-2

USE AND LICENSE AGREEMENT

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

9.   **Exclusion of Warranties.**  Except as specifically set forth herein, Licensor does not make any representations or warranties of any kind, express or implied, with respect to the Software, or the functionality, performance or results of use thereof.  Without limiting the foregoing, except as specifically set forth herein, Licensor does not give and hereby disclaims any implied warranty, including, without limitation, any implied warranty of merchantability, of fitness for any particular purpose or arising by usage of trade, course of dealing or course of performance.

10.   **Limitation of Liability.**  The parties acknowledge and agree that the loss which the Licensee may sustain arising from a Software defect or failure may likely be difficult to prove, and that the Licensee and Licensor desire in advance to avoid such uncertainty.  Accordingly, Licensor's entire liability and Licensee's exclusive remedy for any damages caused by any Software or defect or failure, or for other claims arising in connection with this Agreement, shall be limited to the amount of Monthly Maintenance Fee paid to Licensor for the portion of the Service that performed improperly or failed to perform; provided, however, that in no event shall Licensor be liable for any defect or failure beyond its reasonable control.

11.   **Confidentiality; Non-Disclosure.**  Licensee agrees that the Software contains valuable proprietary information and that, except for those rights conveyed in this Agreement, Licensee retains no ownership rights in the Software.  During the term of this Agreement, Licensee shall maintain the confidentiality of this information and not disclose the same to any third party or use it except as authorized by this Agreement.  Licensee shall have no obligation of confidentiality or non-use with regard to information which (i) is or becomes a part of the public domain through no act or omission of Licensee, (ii) was in the Licensee's lawful possession prior to the disclosure thereto and had not been obtained by Licensee either directly or indirectly from Licensor, (iii) is lawfully disclosed to Licensee by a third party without restrictions on disclosure, (iv) is independently developed by Licensee, or (v) is required to be disclosed by law.

12.   **Termination.**  This Agreement shall automatically terminate upon the termination or expiration of the Franchise Agreement.  The Licensor may terminate this Agreement: (a) without notice at any time if Licensee is in default of the Franchise Agreement or Regional Developer Agreement; (b) if Licensee fails to pay the Monthly Maintenance Fee when due and such failure continues unremedied for five (5) days; (c) upon ten (10) days written notice of Licensee's failure to comply with any other term of this Agreement if such failure is not remedied within ten (10) days following such notice.  The Licensor may also terminate this Agreement upon thirty (30) days notice to the Licensee if the Licensor no longer uses the Software for the operation of the Massage Heights franchises and instead utilizes a different software program provided that Licensor offers a license to such software to Licensee.  In the event of termination, and without limiting Licensor's remedies hereunder, Licensee shall be responsible for payment of all past due Monthly Maintenance Fees and charges up to the date of such termination.

13.   **Restriction on Assignment.**  Licensee may not assign its rights or delegate its duties under this Agreement without the prior written consent of Licensor, which may be withheld in its sole and absolute discretion.  Licensor reserves the right to assign its rights and obligations under this Agreement to a third party.

14.   **Jurisdiction; Applicable Law.**  This Agreement shall be construed in accordance with the laws of the state of Texas.  Any controversy or claim arising out of this Agreement will be settled by arbitration in San Antonio, Texas, pursuant to the Commercial Arbitration rules of the

Ex. 4, Pls.' State Petition and Exhibits

American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

15.     **Notices.** All notices required to be given under this Agreement shall be in writing and shall be transmitted either by personal delivery, reliable overnight courier (such as Federal Express), or through the facilities of the United States Post Office, postage prepaid, certified or registered mail, return receipt requested, or by confirmed facsimile transmission. Any such notice shall be effective upon delivery, if delivered by confirmed facsimile transmission or by personal delivery or overnight courier, and 72 hours after dispatch, if mailed in accordance with the above. Notices to the respective parties shall be sent to the following addresses unless written notice of a change of address has been previously given pursuant hereto:

                        To Licensor:

with copy to:          H. Michael Drumm
                        c/o Moye White LLP
                        1400 16th St, Denver, CO 80202

To Buyer:              Steven McFadden
                        Therapy Investments, L.L.C.
                        1703 Burr Oaks Drive
                        West Des Moines, Iowa 50266

16.     **Waiver.** No waiver or breach of any provision of this Agreement by Licensor will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of Licensor.

17.     **Entire Agreement.** This Agreement and exhibits or addenda, contain the entire understanding of the parties with respect to the transactions and matters contemplated hereby and this Agreement supercedes all previous agreements concerning the subject matter. This Agreement cannot be amended except by a writing signed by both parties.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the date first above written.

                    LICENSOR

                    MASSAGE HEIGHTS CORPORATE, LLC

                    _____By:

                    LICENSEE
                    THERAPY INVESTMENTS, L.L.C.
                    By: _____
                    Steven McFadden, Manager

06-Franchise Exhibits H-L & Receipts                    Massage Heights® Corporate, LLC

                        L-4
                USE AND LICENSE AGREEMENT

**Ex. 4, Pls.' State Petition and Exhibits**

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## RECEIPT

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT, AND OTHER INFORMATION IN PLAIN LANGUAGE.  READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF MASSAGE HEIGHTS® CORPORATE, LLC ("MASSAGE HEIGHTS® ") OFFERS YOU A FRANCHISE, IT PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

1.    THE FIRST PERSONAL MEETING TO DISCUSS AN MASSAGE HEIGHTS® FRANCHISE; OR
2.    TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
3.    TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO MASSAGE HEIGHTS® .

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF MASSAGE HEIGHTS® DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME, OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT OR A MATERIAL OMISSION, THEN A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT A.

Massage Heights® authorizes the agent listed in Exhibit A to receive service of process for Massage Heights®.  Once Massage Heights® registers its Franchise Offering Circular in the states identified in Exhibit A, Massage Heights® will authorize the respective state agencies identified on Exhibit A to receive service of process for Massage Heights® in the particular state.

I have received an Massage Heights® Uniform Franchise Offering Circular issued on 3 2     , 2007 and effective in the franchise registration states on the dates noted in Exhibit A.  This Offering Circular included the following Exhibits:

| | |
|---|---|
| Exhibit A | State Administrators/Agents for Service of Process/State Registration Effective Dates |
| Exhibit B | Franchise Agreement |
| Exhibit C | Regional Developer Agreement |
| Exhibit D | Operations Manual Table of Contents (for Location Franchises) |
| Exhibit E | Regional Developer Manual Table of Contents |
| Exhibit F | List of Massage Heights® Franchisees |
| Exhibit G | Financial Statements |
| Exhibit H | General Release Agreement |
| Exhibit I | Transfer Agreement |
| Exhibit J | Form of UCC-1 Financing Statement |
| Exhibit K | State Addenda and Agreement Riders |
| Exhibit L | Use and License Agreement |

THERAPY INVESTMENTS, Inc.

By: _____

_____    Franchisee Steven McFadden, Manager
Date

Ex. 4, Pls.' State Petition and Exhibits

## RECEIPT

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE.   READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF MASSAGE HEIGHTS® CORPORATE, LLC, ("MASSAGE HEIGHTS® ") OFFERS YOU A FRANCHISE, IT MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

1.    THE FIRST PERSONAL MEETING TO DISCUSS AN MASSAGE HEIGHTS® FRANCHISE; OR
2.    TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
3.    TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO MASSAGE HEIGHTS® .

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF MASSAGE HEIGHTS® DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME, OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT OR A MATERIAL OMISSION, THEN A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT A.

Massage Heights® authorizes the agent listed in Exhibit A to receive service of process for Massage Heights®.  Once Massage Heights® registers its Franchise Offering Circular in the states identified in Exhibit A, Massage Heights® will authorize the respective state agencies identified on Exhibit A to receive service of process for Massage Heights® in the particular state.

I have received a Uniform Franchise Offering Circular issued on 3-2- , 2007 and effective in the franchise registration states on the dates noted in Exhibit A.  This Offering Circular included the following Exhibits:

| | |
|---|---|
| Exhibit A | State Administrators/Agents for Service of Process/State Registration Effective Dates |
| Exhibit B | Franchise Agreement |
| Exhibit C | Regional Developer Agreement |
| Exhibit D | Operations Manual Table of Contents (for Business Franchises) |
| Exhibit E | Regional Developer Manual Table of Contents |
| Exhibit F | List of Massage Heights® Franchisees |
| Exhibit G | Financial Statements |
| Exhibit H | General Release Agreement |
| Exhibit I | Transfer Agreement |
| Exhibit J | Form of UCC-1 Financing Statement |
| Exhibit K | State Addenda and Agreement Riders |
| Exhibit L | Use and License Agreement |

THERAPY INVESTMENTS, L.L.C.

By: _____

_____
Date

Franchisee  Steven McFadden, Manager

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

# EXHIBIT "B"

Ex. 4, Pls.' State Petition and Exhibits

## Crouch, Amanda

| | |
|---|---|
| **From:** | Shanna Schulze <sschulze@massageheightsfranchising.com> |
| **Sent:** | Wednesday, November 2, 2016 9:07 AM |
| **To:** | Steve McFadden; Trisha McFadden |
| **Cc:** | Shane L. Evans |
| **Subject:** | Legal: Developer Agreement - McFadden |
| **Attachments:** | FDD-2016-MH-AR-A-FINAL.pdf; DEV-McFadden-ES-DEFAULT-20161102.pdf; DEV-McFadden-Renewal-APP.pdf |

Good morning Steven and Trisha,

Due to recent correspondence by you both, we are under the impression that you desire to either transfer your RDA or renew your RDA for a successor term. In order for a transfer or renewal to be approved or granted, you must cure any outstanding defaults and remain in good standing until the respective transaction takes place. As you are aware, you are currently in default of your minimum development obligations. Please see the attached Notice of Default.

Further regarding a transfer, among other things, any prospective transferees you consider must complete our application process and be qualified through our franchise development department. Please let us know if you would like to pursue this path once you have cured your default and we will send all necessary steps to complete the process.

Regarding a successor term, should you wish to apply for a renewal of your RDA, the following steps must be taken:

1. You must complete the attached successor term application;
2. You must have substantially complied with the terms of your RDA (and any other agreement with us, including FA) and be in good standing at the time of the expiration of your initial term;
3. You must update your Pilot retreat to current specifications and standards, if necessary;
4. You must execute our current Area Representative Agreement (ARA) (formerly Regional Developer Agreement) prior to, but effective on the expiration of your initial term (current ARA FDD is attached);
5. You must pay a renewal fee of $3,000 for each Massage Heights Business operating in your Regional Territory; and
6. You must execute a general release of liability.

Please let me know if you have questions regarding this process. Shane Evans will be reaching out to you to discuss and assist you with any development and operational strategies to achieve your goals and protect the Massage Heights brand.

Have a blessed week.

Shanna Schulze
Corporate Counsel
Massage Heights Franchising, LLC
13750 U S Hwy 281 North, Suite 230
San Antonio, Texas 78232
210.402.0777

CONFIDENTIALITY NOTICE: THIS EMAIL TRANSMISSION, INCLUDING ANY DOCUMENTS ACCOMPANYING IT, MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER THAT IS PROTECTED BY PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE

Ex. 4, Pls.' State Petition and Exhibits

INTENDED RECIPIENT, YOU ARE NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT (210) 402-0777, OR FAX AT (210) 402-3228, TO ARRANGE FOR RETURN OF THE DOCUMENTS. THANK YOU FOR YOUR ASSISTANCE.

**From:** Trisha McFadden
**Sent:** Monday, October 31, 2016 9:14 PM
**To:** Shanna Schulze <sschulze@massageheightsfranchising.com>
**Cc:** Bret Franson <Bfranson@MassageHeightsFranchising.com>
**Subject:** Developer Renewal

Shanna,

Hello, I hope all is well with you! I am inquiring on what must be done to officially apply for my Developer Agreement (Relax Investments) renewal. What steps must be taken to begin this process? I am coming up to the end of my initial term and intend to exercise my right to renew if possible at this time. Please advise. Thanks so much.

Best regards,

Trisha McFadden
Massage Heights Regional Developer, Iowa & Nebraska
Cell: 515.778.3862

Regional Office:
1312 Locust St. Suite 204
Des Moines, IA 50309
www.massageheightsdsm.com
tmcfadden@massageheights.com

Pilot Retreat:
Massage Heights Ingersoll
3708 Ingersoll Ave.
Des Moines, IA 50321
Ph:515.255-7529
ingersoll@massageheights.com

Massage Heights Fox Business Interview http://video.foxbusiness.com/v/4131807/company-looks-to-rub-you-the-right-way/?playlist_id=87185

Become a Massage Heights Fan http://www.facebook.com/pages/Massage-Heights/68934806248

Take the Retreat Virtual Tour http://www.massageheights.com/mhc_360/index.php

Massage Heights FAQ and Information http://www.massageheights.com/franchisebrochure.pdf

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

# EXHIBIT "C"

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT



**MASSAGE HEIGHTS.**

13750 US Hwy 281 N Ste. 230
San Antonio, Texas 78232
(210) 402-0777, Ext. 31
sschulze@massageheightsfranchising.com

November 2, 2016

**VIA FEDEX**
**U.S.P.S. Certified Mail/Return Receipt Requested**
**Email: SMcFadden@MassageHeights.com; TMcFadden@MassageHeights.com**

Relax Investments, LLC
ATTN: Steven & Trisha McFadden
301 Turnberry Drive
Norwalk, IA 50211-9614

RE:     Legal Notice of Default – Massage Heights Regional Developer Agreement

Dear Steve and Trisha:

Effective on July 9th, 2007, you entered into a Massage Heights Regional Developer Agreement ("RDA") with Massage Heights Franchising, LLC. Due to your failure to comply with your minimum development obligations, your development scheduled was extended by amendments on April 13, 2012 and May 1, 2015, respectively. As of May 1, 2016, you are once again in breach of your minimum development obligations. This is a breach of your RDA ("Default").

*Any undefined terms herein shall have the same definitions given in the RDA.*

Section 10.3(a) of the RDA states:

Regional Developer shall satisfy the following cumulative development quotas by the last day of each Development Period during the Initial Term of this Agreement:

| Date Development Period Begins | Date Development Period Ends | Massage Heights Businesses Sold in the Regional Territory During Development Period | Total Massage Heights Businesses Open and Operating in the Regional Territory |
|---|---|---|---|
| July 9, 2007 | May 1, 2012 | 5 | 5 |
| May 2, 2012 | May 1, 2013 | 2 | 7 |
| May 2, 2013 | May 1, 2014 | 1 | 8 |
| May 2, 2014 | May 1, 2015 | 1 | 9 |

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

| Date Development Period Begins | Date Development Period Ends | Massage Heights Businesses Sold in the Regional Territory During Development Period | Total Massage Heights Businesses Open and Operating in the Regional Territory |
|---|---|---|---|
| May 2, 2015 | May 1, 2016 | 2 | 11 |
| May 2, 2016 | May 1, 2017 | 1 | 12 |

To date, you only have 10 Massage Heights Businesses open and operating in your Regional Territory.

Section 14.9 of the RDA states:

"We have the right to terminate this Agreement effective upon delivery of notice of termination to you, if: (i) you do not develop or open the Regional Developer Franchise as provided in this Agreement;"

You are hereby notified ("Notice of Default") that you are in breach of the RDA as the result of the Default. To cure this Default, you must complete your minimum development obligations by opening 2 more Massage Heights Businesses (for a cumulative total of 12) in the Regional Territory by May 1, 2017 (the "Correction Period"). Should you fail to cure this Default within the Correction Period, we shall have the right to exercise any and all default remedies as set forth in the RDA, such as termination or non-renewal of the RDA.

Please contact me should you have any questions regarding this Notice of Default.

Sincerely,

Shanna Schulze, Esq.
Corporate Counsel

cc:  Shane Evans, President

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 13 4:22 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TRISHA MCFADDEN and RELAX INVESTMENTS, LLC, | CASE NO. _____ |
| Plaintiff<br><br>vs.<br><br>MASSAGE HEIGHTS FRANCHISING, LLC,<br><br>Defendant. | **ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT(S):  Massage Heights Franchising, LLC
         13750 U.S. Highway 281 North, Ste. 230
         San Antonio, TX 78232

     You are notified that a Petition at Law and Jury Demand has been filed in the office of the clerk of this court on August 13, 2018, naming you as the defendant(s) in this action.  A copy of the Petition at Law and Jury Demand is attached to this notice. The names and address of the attorneys for the plaintiff(s) are Michael J. Carroll of Coppola, McConville, Carroll, Hockenberg & Flynn, P.C., 2100 Westown Parkway, Suite 210, West Des Moines, Iowa 50265.  The attorneys' phone number is 515-453-1055; facsimile number:  515-453-1059.

     You must serve a motion or answer within 20 days after service of this original notice upon you, and within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County, Polk County Courthouse, 500 Mulberry Street, #212, Des Moines, Iowa, 50309.  That must be filed electronically as set out below.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.  **YOU MUST ELECTRONICALLY FILE** an Appearance and Answer using the Iowa Judicial Branch Electronic Document Management System (EDMS) at https://www.iowacourts.state.ia.us/EFile, unless you obtain from the Court an exemption from electronic filing requirements. If your Appearance and Answer is filed within 20 days and you deny the claim, you will receive electronic notification through EDMS of the place and time of the hearing on this matter. If you electronically file an Appearance and Answer, EDMS will serve a copy of the form on the Plaintiff, unless Plaintiff is exempt from electronic filing, or on the attorney for Plaintiff. The Notice of Electronic Filing will indicate if you must mail a copy of your Appearance and Answer to Plaintiff. You must also notify the Clerk's Office of any address change.

     If you require the assistance of auxiliary aids or services to participate in court because of disability, immediately call your district ADA coordinator at (515) 286-3770.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)

**IMPORTANT:** YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS

Ex. 4, Pls.' State Petition and Exhibits

E-FILED  2018 AUG 14 10:04 AM POLK - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* CVCV056818

*County* Polk

*Case Title* TRISHA MCFADDEN ET AL VS MASSAGE HEIGHTS

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

---

*Scheduled Hearing:*

---

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394**  . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 08/14/2018 10:04:39 AM



*District Clerk of* Polk          *County*

/s/ Jennifer Ewers

Ex. 4, Pls.' State Petition and Exhibits